**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:24-cv-00710-LCB-JLW**

**UNITED STATES OF AMERICA; STATE
OF NORTH CAROLINA; STATE OF
CALIFORNIA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
MINNESOTA; STATE OF OREGON;
STATE OF TENNESSEE; and STATE OF
WASHINGTON,**

      **Plaintiffs,**

      **v.**

**REALPAGE, INC.,**

      **Defendant.**

**BRIEF IN SUPPORT OF DEFENDANT REALPAGE, INC.'S MOTION TO
TRANSFER UNDER 28 U.S.C § 1404(a)**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  QUESTIONS PRESENTED ................................................................... 3

III. BACKGROUND ................................................................................ 3

    A.   RealPage Offers Revenue Management Software From Its Home in Texas For Nearly Two Decades ............................................................................ 3

    B.   The DOJ Opens and Closes an Investigation into RealPage's Revenue Management Software ............................................................................. 4

    C.   The DOJ Participates in Private Antitrust Litigation Regarding RealPage's Revenue Management Software ....................................................... 4

    D.   Judge Crenshaw Considers DOJ Positions and Efficiently Manages the Private Litigation ..................................................................................... 5

    E.   The DOJ Seeks a Clean Slate in a New Forum ......................................... 6

IV.  LEGAL STANDARD ......................................................................... 8

V.   ARGUMENT ..................................................................................... 9

    A.   Plaintiffs' Choice of Forum Does Not Preclude Transfer ........................ 10

        1.   This District Has Little Connection to the Action ...................... 10

        2.   Plaintiffs Seek to Avoid Unfavorable Rulings in the MDL ..................... 13

    B.   The Remaining Section 1404(a) Factors Favor Transfer to the Middle District of Tennessee ............................................................................... 14

        1.   The Interest of Justice Factors Favor Transfer ....................... 14

        2.   Party and Witness Convenience Favors Transfer ....................... 16

        3.   *United States v. Google, Inc.* Is Distinguishable on Multiple Grounds ..................................................................................... 18

    C.   Alternatively, the Remaining Section 1404(a) Factors Favor Transfer to the Northern District of Texas .................................................................. 19

        1.   Local Interests and Convenience Favor Transfer ..................... 19

        2.   Court Congestion Favors Transfer ........................................ 21

VI.  CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acterna, LLC v. Adtech, Inc.*,
    129 F. Supp. 2d 936 (E.D. Va. 2001) ........................................................... 14

*Bluestone Innovations, LLC v. LG Elecs., Inc.*,
    940 F. Supp. 2d 310 (E.D. Va. 2013) ........................................................... 16

*Brown v. Wells Fargo, N/A*,
    2011 WL 13228266 (M.D.N.C. Nov. 3, 2011) ........................................... 14

*Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*,
    150 F. Supp. 3d 501 (E.D. Pa. 2015) ........................................................... 13

*Cree, Inc. v. Watchfire Signs, LLC*,
    2020 WL 7043868 (M.D.N.C. Dec. 1, 2020) ............................................... 9

*Davis v. Stadion Money Mgmt., LLC*,
    2019 WL 7037426 (M.D.N.C. Dec. 20, 2019) ........................................... 13

*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*,
    273 U.S. 359 (1927) ...................................................................................... 10

*Foster v. Nationwide Mut. Ins. Co.*,
    2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ........................................... 13

*FTC v. Cephalon, Inc.*,
    No. 08-cv-02141-MSG (E.D. Pa.) ............................................... 9, 11, 12, 15

*FTC v. Graco Inc.*,
    2012 WL 3584683 (D.D.C. Jan. 26, 2012) ........................................... 19, 22

*FTC v. HCA Healthcare, Inc.*,
    2023 WL 11872582 (D.D.C. May 23, 2023) ............................................... 9

*FTC v. Illumina, Inc.*,
    2021 WL 1546542 (D.D.C. Apr. 20, 2021) ....................................... 9, 11, 12, 21

*FTC v. Neora, LLC*,
    2020 WL 4282753 (D.N.J. July 27, 2020) ................................................. 10

*Gen. Tire & Rubber Co. v. Watkins*,
    373 F.2d 361 (4th Cir. 1967) ....................................................................... 16

*Greer Laboratories, Inc. v. Lincoln Diagnostics, Inc.*,
    2015 WL 9094844 (W.D.N.C. Dec. 16, 2015) ............................................. 8

*Jubilee House Cmty., Inc. v. Coker Int'l, Inc.*,
    2013 WL 1232900 (M.D.N.C. Mar. 26, 2013) ..................................... 11, 20

*Kempton v. Life for Relief & Dev. Inc.*,
   2019 WL 5188750 (D. Ariz. Oct. 15, 2019) ........................................................ 13, 14

*Kolla v. Mayorkas*,
   2021 WL 1090758 (M.D.N.C. Mar. 22, 2021) ..................................................... 14

*La Casa Real Estate & Inv., LLC v. KB Home of S.C., Inc.*,
   2010 WL 2649867 (M.D.N.C. June 30, 2010) ..................................................... 11, 20

*Lucas v. Family Dollar Stores of N.C., Inc.*,
   2014 WL 12884104 (M.D.N.C. Apr. 24, 2014) ................................................... 12, 20

*Martin v. Global Tel*Link Corp.*,
   2015 WL 2124379 (N.D. Cal. May 6, 2015) ........................................................ 13

*Norwood v. Kirkpatrick*,
   349 U.S. 29 (1955) ............................................................................................ 10

*Oldham v. Penn. State Univ.*,
   507 F. Supp. 3d 637 (M.D.N.C. 2020) ............................................................... 19

*Parham v. Weave Corp.*,
   323 F. Supp. 2d 670 (M.D.N.C. 2004) ............................................................... 11

*Progressive Casualty Ins. Co. v. Future Van Lines, LLC*,
   2021 WL 4413319 (M.D.N.C. Sept. 27, 2021) ..................................... 8, 9, 10, 11

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
   No. 23-md-3071 (J.P.M.L. Jan. 9, 2023) ............................................................ 7

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
   No. 23-md-3071 (J.P.M.L. Mar. 23, 2023) ......................................................... 18

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
   No. 23-md-3071 (M.D. Tenn. Apr. 12, 2023) ..................................................... 5

*RHH L.L.C. v. Innisfree Hotels, Inc.*,
   2021 WL 1146979 (M.D.N.C. Mar. 25, 2021) ................................................... 14

*Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*,
   567 F. Supp. 2d 799 (M.D.N.C. 2008) ......................................................... 16, 19, 21

*Sturdivant v. Arc of Haywood Cnty., Inc.*,
   2018 WL 11674624 (M.D.N.C. 2018) ............................................................... 20

*Triad Int'l Maint. Corp. v. Aim Aviation, Inc.*,
   473 F. Supp. 2d 666 (M.D.N.C. 2006) ............................................................... 10

*United States v. Gen. Motors Corp.*,
   183 F. Supp. 858 (S.D.N.Y. 1960) ..................................................................... 17

*United States v. Google LLC*,
   661 F. Supp. 3d 480 (E.D. Va. 2023) ........................................................ 19, 20, 24

*United States v. Microsemi Corp.*,
  2009 WL 577491 (E.D. Va. Mar. 4, 2009) ...................................................... 18, 19, 22

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ...................................................................................................... 8

*Weishaupt v. Boston College*,
  2012 WL 1439030 (M.D.N.C. Apr. 24, 2012) ............................................................ 12

**Statutes**

15 U.S.C. § 22 ................................................................................................................ 10

28 U.S.C. § 1404(a) ................................................................................................... 3, 8

28 U.S.C. § 1407(g) ................................................................................................... 2, 17

**Other Authorities**

U.S. Dep't of Justice, Justice Manual § 4-2.200 ................................................. 15, 16, 21

*United States District Courts – National Judicial Caseload Profile*, UNITED
  STATES COURTS (June 30, 2024),
  https://www.uscourts.gov/file/78871/download ........................................................ 22

## I.  PRELIMINARY STATEMENT

Plaintiffs come to this forum even though their lawsuit has minimal connections to this District, and while another federal court has been diligently advancing similar antitrust claims involving the same defendant and the same software products for nearly two years in another—and more appropriate—district.  Since last fall, the U.S. Department of Justice ("DOJ") has been participating in private antitrust litigation pending against Defendant RealPage, Inc. ("RealPage") in the Middle District of Tennessee, where Judge Waverly D. Crenshaw, Jr. is efficiently managing multidistrict litigation challenging the same products and alleged conduct at issue in the present action.  The DOJ filed a Statement of Interest and appeared at oral argument in opposition to RealPage's motion to dismiss there, endorsing antitrust theories predicated on erroneous allegations about RealPage's products. The Tennessee District Court rejected theories advanced by the DOJ, and the DOJ is no longer pursuing many of the claims and allegations the DOJ relied on in its Statement of Interest, which Defendant argued to be false.  Rather than bringing this case before the court to which DOJ first availed itself—a court that is already engaged with the substantive and procedural issues at hand—Plaintiffs instead have filed a new lawsuit in a new district with little connection to the action.

Plaintiffs have chosen to pursue this new action in the Middle District of North Carolina even though neither the DOJ nor RealPage is based in this District, none of the dozens of current or former RealPage employees who were designated as document custodians and/or deposed during the DOJ's and Plaintiffs States' investigations is in the District, no anticipated third parties are based in this District, and the software was

developed and is maintained outside this District. Nothing about this District distinguishes it from most other districts around the country in terms of a meaningful connection to this lawsuit, whereas, as set forth below, there are districts where this lawsuit belongs.

RealPage is eager for its day in court, to rebut Plaintiffs' allegations and address false narratives that have impacted its business. But rather than dedicate valuable judicial resources to litigating very similar issues in parallel, the best and most logical way to promptly resolve this action is to transfer to the Middle District of Tennessee, where the DOJ has already appeared and argued. In evaluating several districts across the country, the U.S. Judicial Panel on Multidistrict Litigation ("JPML") has already found it a convenient forum, and the Middle District of Tennessee is—after nearly 18 months overseeing the MDL—steeped in the relevant factual and antitrust issues.[1] Transfer to the Middle District of Tennessee will avoid the possibility of inconsistent judgments and maximize efficiency by allowing that Court to leverage its considerable experience with the overlapping issues.

In the alternative, should the Court find it inappropriate to transfer this action to the district where the private litigation is already pending, the Court should transfer it to the Northern District of Texas. RealPage and many of the key third parties in this case are there, many of the likely witnesses reside there, the DOJ conducted most of its pre-suit depositions there, and the software code base was developed and is maintained in large part there. The relative caseload statistics, including those that DOJ has cited in other similar

---

[1] RealPage does not and cannot seek consolidation of this case with the MDL. *See* 28 U.S.C § 1407(g).

transfer motions, also favor transfer to the Northern District of Texas as a forum more likely to facilitate expeditious resolution of this dispute.

## II.   QUESTIONS PRESENTED

1.   As to the Middle District of Tennessee:  Whether transfer under 28 U.S.C. § 1404(a) is appropriate where the existing forum has limited connection to the subject matter of the litigation, very similar claims are pending in the proposed transferee forum, and the plaintiff has already appeared in the transferee forum.

2.   Alternatively, as to the Northern District of Texas:  Whether transfer under 28 U.S.C. § 1404(a) is appropriate where the existing forum has limited connection to the subject matter of the litigation, and the proposed transferee forum has a lighter docket and deep and meaningful connections to the subject matter of the litigation.

## III.   BACKGROUND

### A.   RealPage Offers Revenue Management Software From Its Home in Texas For Nearly Two Decades

RealPage is a Richardson, Texas-based technology company that provides software products to the real estate industry.  ECF No. 1, Compl. ¶ 218.  Among other products, RealPage develops and licenses revenue management software that enables landlords to more accurately forecast supply and demand and provides recommendations on optimal competitive rental prices to achieve each customer's unique business objectives.  *Id*. ¶¶ 40–41, 46.  This software has been used for nearly two decades in substantially the same form. RealPage introduced YieldStar in 2005, and launched a successor product built off of YieldStar, AI Revenue Management ("AIRM"), in 2020.  Declaration of Amy Dreyfuss in

Support of Motion to Transfer ("Dreyfuss Decl.") ¶ 4. The software code base for YieldStar and AIRM was developed and is maintained in large part at RealPage's facilities in Richardson. *Id*. Only 12 of RealPage's 3,298 U.S. employees work remotely from a residence in the Middle District of North Carolina. *Id*. ¶ 3.

### B. The DOJ Opens and Closes an Investigation into RealPage's Revenue Management Software

RealPage's revenue management software was scrutinized by the Technology and Digital Platforms Section of the DOJ Antitrust Division almost seven years ago, in 2017 and early 2018. Declaration of Michael J. Perry in Support of Motion to Transfer ("Perry Decl.") ¶ 2. The DOJ deposed eight RealPage witnesses, with seven of those depositions proceeding in the Northern District of Texas. *Id.* None were in the Middle District of North Carolina. *Id.* In early 2018, the DOJ told RealPage it had no further questions and closed the investigation. *Id.*

### C. The DOJ Participates in Private Antitrust Litigation Regarding RealPage's Revenue Management Software

Years later, in October 2022, a series of private plaintiffs began filing complaints in various jurisdictions around the country asserting antitrust claims based on the same RealPage revenue management software at issue in this action. Lawsuits were filed in over a dozen federal districts (though none were filed in this District). On April 10, 2023, the JPML centralized the private cases in a multidistrict litigation in the Middle District of Tennessee, determining it would be most convenient for the parties and witnesses. *In re RealPage, Inc.*, *Rental Software Antitrust Litig. (No. II)*, No. 23-md-3071 (M.D. Tenn. Apr. 12, 2023) [hereinafter "MDL"], ECF No. 1 at 2.

The MDL defendants moved to dismiss the consolidated MDL claims on October 9, 2023. MDL ECF Nos. 588, 593. Three days later, on October 12, 2023, the DOJ appeared in the MDL, MDL ECF No. 598, and on November 15, 2023, the DOJ filed a Statement of Interest and a 23-page memorandum supporting legal theories advanced by the MDL plaintiffs. MDL ECF Nos. 627, 628. The DOJ characterized RealPage's software as effectuating a "prototypical" horizontal price-fixing scheme that was *per se* illegal under the antitrust laws, with competitors relying on the software as a "common pricing agent" and "landlords using RealPage adopt[ing] RealPage's recommendations 80–90% of the time." MDL ECF No. 628 at 2–3 (citing MDL complaint). The DOJ also presented argument at the hearing on the MDL defendants' motions to dismiss. *See* MDL ECF No. 661.

### D. Judge Crenshaw Considers DOJ Positions and Efficiently Manages the Private Litigation

On December 28, 2023, Judge Crenshaw issued a decision on the motions to dismiss in the MDL, rejecting DOJ positions on key antitrust issues and finding that "the conspiracy alleged is not the straightforward form of horizontal price-fixing conspiracy for which courts apply the *per se* standard." MDL ECF No. 690 at 45–46. Instead, Judge Crenshaw agreed with RealPage's characterization of its agreements with customers as vertical, *id.* at 19, rejected the "*per se*" standard, *id.* at 45–48, applied the "rule of reason" standard, *id.* at 48, 61, and dismissed one of plaintiffs' complaints in its entirety for failing to adequately plead direct evidence of anticompetitive effects from the alleged conspiracy, *id.* at 70.

Since then, the MDL has proceeded efficiently. Judge Crenshaw has entered an

expert discovery order, an ESI order, a deposition protocol, a case management order, an order pursuant to Federal Rule of Evidence 502, and a stipulated protective order, among other decisions. MDL ECF Nos. 814–16, 818, 822, 828. The case is now well into discovery, with the parties having exchanged Rule 26 disclosures (identifying hundreds of witnesses), signed on to the protective order, identified hundreds of document custodians, negotiated many of the parameters of structured data production, and begun producing documents, data, and source code. Perry Decl. ¶ 6. The current deadline for completion of document production is March 28, 2025. MDL ECF No. 818 at 3.

RealPage's Rule 26 disclosures in the MDL identified three individual witnesses, one of whom resides in the Northern District of Texas and two of whom reside in the Northern District of Illinois. Of the more than 60 entities who were named as co-defendants in the MDL (many of which may be witnesses in this case), approximately 35 have operations and/or own property in the Northern District of Texas,[2] no federal judicial district encompasses the headquarters of more of those entities than does the Northern District of Texas, and at least 14 of those entities are headquartered in the State of Texas.[3]

### E.     The DOJ Seeks a Clean Slate in a New Forum

In 2022, the DOJ opened a new investigation into RealPage's revenue management

---

[2] *See* Mem. of L. In Support of Def.'s Mot. for Transfer & Centralization Pursuant to 28 U.S.C. § 1407 at 15, *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, No. 23-md-3071 (J.P.M.L. Jan. 9, 2023), ECF No. 2-1 [hereinafter "Def.'s 1407 Mot."]. Some of these entities have since been dismissed from the MDL.

[3] *See* Def.'s 1407 Mot. at 14, *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 23-md-3071 (J.P.M.L. Jan. 9, 2023), ECF No. 2-1.

software.  States opened their own investigations, and RealPage agreed that the DOJ may share information with them, subject to state confidentiality protections.  In the course of this second investigation (the "Second Investigation"), RealPage ultimately produced 827,639 documents to the DOJ from 33 document custodians, with at least seven of the 33 document custodians residing or working in the Northern District of Texas and none in the Middle District of North Carolina.  Perry Decl. ¶ 3.  RealPage also produced documents to the Washington Attorney General's Office from 34 document custodians, with at least six residing or working in the Northern District of Texas and none in the Middle District of North Carolina.  *Id.* ¶ 4.  Plaintiffs deposed eight former or current RealPage employees— five were conducted in the Northern District of Texas, and none were conducted in the Middle District of North Carolina.  *Id*. ¶ 3.

As the Complaint now effectively concedes, the DOJ and Plaintiff States' investigation confirmed that many of the central allegations levied against RealPage in the MDL—including those cited in the DOJ's Statement of Interest in the MDL—were false. As one example, in its Statement of Interest in the MDL, the DOJ relied on the MDL plaintiffs' allegation that RealPage's recommendations are adopted "80–90% of the time" to argue that use of RealPage's software equated to a "prototypical" horizontal price-fixing scheme that is *per se* illegal.  MDL ECF No. 628 at 2–3 (citing MDL complaint).  But the complaint here alleges that adoption rates among RealPage software users are much lower, ECF No. 1, Compl. ¶ 71 (alleging an adoption rate of only 40–50%), and abandons any theory that use of the software equates to a *per se* price-fixing conspiracy.

Notwithstanding RealPage's efforts to address misconceptions and inaccurate

allegations about its software, the Second Investigation nonetheless culminated in the action at bar, which asserts an antitrust challenge to two of the same software products challenged in the MDL, YieldStar AIRM.

## IV. LEGAL STANDARD

A district court may "transfer any civil action to any other district or division where it might have been brought" based on the "interest[s] of justice" and "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). "The purpose of section 1404 is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Greer Laboratories, Inc. v. Lincoln Diagnostics, Inc.*, 2015 WL 9094844, at *2 (W.D.N.C. Dec. 16, 2015) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)) (cleaned up). The determination whether to grant a motion to transfer is "committed to the sound discretion of the district court." *Progressive Casualty Ins. Co. v. Future Van Lines, LLC*, 2021 WL 4413319, at *1 (M.D.N.C. Sept. 27, 2021).

When ruling on a motion to transfer, courts "must evaluate both the convenience of the parties and various public-interest considerations." *Greer Labs.*, 2015 WL 9094844, at *2. Factors can include:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local

interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Progressive Casualty*, 2021 WL 4413319, at *1; *Cree, Inc. v. Watchfire Signs, LLC*, 2020 WL 7043868, at *5 (M.D.N.C. Dec. 1, 2020). The "analysis of these factors is qualitative, not merely quantitative." *Id.*

Section 1404(a) applies to civil actions by government antitrust enforcers. For example, the court in *FTC v. Cephalon, Inc.*, transferred an antitrust enforcement action against a prescription-drug manufacturer, over the Commission's objection, to the district where the manufacturer and the majority of its employees were located, and where related private litigation was already pending. 551 F. Supp. 2d 21, 22–23, 33 (D.D.C. 2008). Similarly, the court in *FTC v. Illumina, Inc.* transferred an antitrust merger challenge based on the location of the merging parties and where the deal was negotiated. 2021 WL 1546542, at *1, *8 (D.D.C. Apr. 20, 2021); *see also FTC v. HCA Healthcare, Inc.*, 2023 WL 11872582, at *1, *12–13 (D.D.C. May 23, 2023) (transferring antitrust merger challenge under section 1404(a) based on local interests of proposed transferee forum); *United States v. Microsemi Corp.*, 2009 WL 577491, at *11 (E.D. Va. Mar. 4, 2009) (similar).

## V. ARGUMENT

Plaintiffs bring this case in the Middle District of North Carolina, where the case has little connection, despite related litigation pending in the Middle District of Tennessee, which is already far along and where the DOJ has already appeared and argued.

Transferring this action to the Middle District of Tennessee would avoid risk of inconsistent judgments; reduce burdens on the parties, non-parties, and witnesses; and save time, energy, and costs.[4]  In the alternative, the Court should transfer to the Northern District of Texas, where the events giving rise to the claims predominantly occurred, where most of the relevant evidence and witnesses are, and where RealPage is based.

### A.  Plaintiffs' Choice of Forum Does Not Preclude Transfer

A plaintiff's choice of forum "is simply a preference," *FTC v. Neora*, LLC, 2020 WL 4282753, at *7 (D.N.J. July 27, 2020), and only one consideration among many in applying section 1404(a), *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).  Its weight as a factor in the transfer analysis depends on context.  *Triad Int'l Maint. Corp. v. Aim Aviation, Inc.*, 473 F. Supp. 2d 666, 669 (M.D.N.C. 2006).  The Court should disregard Plaintiffs' choice of forum here for two independent reasons:  Plaintiffs have chosen a forum with little connection to this action, and Plaintiffs seek to evade positions taken and unfavorable rulings issued in the related MDL proceedings.

### 1.  This District Has Little Connection to the Action

Deference to a plaintiff's forum selection is "diminished when the plaintiff's choice of forum has little connection to the action."  *Progressive Casualty*, 2021 WL 4413319, at *2.  In evaluating this, the question is whether "the plaintiff's choice is proportionate to

---

[4]  RealPage would be subject to personal jurisdiction and venue for Plaintiffs' nationwide antitrust enforcement claims in either the Middle District of Tennessee, where the MDL is proceeding, or in the Northern District of Texas, where RealPage is headquartered.  15 U.S.C. § 22; *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 372–73 (1927).

the relationship between the forum and the cause of action." *Progressive Casualty*, 2021 WL 4413319, at *3 (citing *Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004)). For example, the court in *Illumina* refused to defer to the government's choice of forum because the claims had an insufficient "factual nexus" with the forum. 2021 WL 1546542, *6–7 (D.D.C. Apr. 20, 2021). The court rejected as insufficient the government's argument that the nationwide impact of a merger negotiated in California would be felt in the District of Columbia. *Id.* at *6. Similarly, the court in *Cephalon* refused to defer to an antitrust enforcer's forum choice outside the defendant's "primary base of operations," rejecting the government's argument that there was a sufficient factual connection "in any forum where [a manufacturer's] products are ultimately sold." 551 F. Supp. 2d 21, 27 (D.D.C. 2008) (granting motion to transfer).

There is an insufficient factual nexus here for Plaintiffs' choice of forum. Neither the DOJ nor RealPage is based in this District or has a significant presence in this District. The software code base at issue was developed and is maintained outside this District. None of the numerous current or former RealPage employees who were deposed by the DOJ or Plaintiff States in the prior investigations reside in—or were deposed in—this District. And none of the individual witnesses RealPage has disclosed in the MDL reside in this District. These factors vitiate any deference to Plaintiffs' chosen forum. *See, e.g.*, *La Casa Real Estate & Inv., LLC v. KB Home of S.C., Inc.*, 2010 WL 2649867, at *3 (M.D.N.C. June 30, 2010) (granting transfer because "operative events, actors, and documents" were outside the forum); *Jubilee House Cmty., Inc. v. Coker Int'l, Inc.*, 2013 WL 1232900, at *7 (M.D.N.C. Mar. 26, 2013) (granting transfer because North Carolina

"played only a minor role in the events giving rise to Plaintiff's claim").

Plaintiffs' only alleged factual nexus with this District is the use of RealPage-developed software by a subset of RealPage's customers that own or manage property in this District, allegedly resulting in harm (or the potential for harm) in a handful of alleged geographic submarkets in (*or partially in*) this District. *See* ECF No. 1, Compl. ¶¶ 220–23. As an initial matter, most of the geographic areas alleged by Plaintiffs in their Complaint are predominantly *outside* this District. *See id.* More fundamentally, the possibility of alleged injuries in the forum does not suffice to establish a factual nexus where those injuries arise from conduct that occurred largely outside the forum. *Weishaupt v. Boston College*, 2012 WL 1439030, at *3 (M.D.N.C. Apr. 24, 2012) (granting transfer; "The allegations of [plaintiff's] complaint make clear that, although she was injured here, the acts and omissions that serve as the bases for her claim occurred largely, if not exclusively, in Massachusetts."). Plaintiffs' allegations, *see* ECF No. 1, Compl. ¶¶ 220–23, are thus no more persuasive than those rejected in *Cephalon*, *Illumina*, and other cases—Plaintiffs' attempt to establish a factual nexus by citing alleged harms arising in the forum "proves too much" in that it admits the "nationwide scale" of the challenged conduct. *See* 551 F. Supp. 2d at 26–28; 2021 WL 1546542, *6–7.

Nor does the proximity of the prosecuting attorneys from the State of North Carolina, whose office is located in the *Eastern* District of North Carolina, suffice for a factual nexus. *See Cephalon*, 551 F. Supp. 2d at 26 (location of plaintiff's prosecuting attorneys insufficient to establish nexus); *Lucas v. Family Dollar Stores of N.C., Inc.*, 2014 WL 12884104, at *3 (M.D.N.C. Apr. 24, 2014) (granting transfer; plaintiff's residence in

chosen forum outweighed by other attenuated aspects of matter-forum relationship). One of the eight Plaintiff States (Tennessee) is based in the Middle District of Tennessee, and the DOJ has lawyers based in both proposed transferee districts. Because neither the Plaintiffs nor the facts have any special connection to this District, their choice of forum should not receive significant weight. *See Davis v. Stadion Money Mgmt., LLC*, 2019 WL 7037426, at *4 (M.D.N.C. Dec. 20, 2019) (holding that the plaintiff's choice of forum should receive "substantially less weight" because of its "relatively tenuous connection" to North Carolina and because it was "more closely connected with" another district).

### 2. Plaintiffs Seek to Avoid Unfavorable Rulings in the MDL

Any weight given to Plaintiffs' choice of forum is further diminished because the DOJ has already participated in the closely related MDL in the Middle District of Tennessee and received an unfavorable ruling there.

"The plaintiff's choice of forum is . . . entitled to less deference where a related action is pending in a different forum," "where the action in the prospective transferee court was filed first," and where "the subject matters of the two suits are very closely related." *Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*, 150 F. Supp. 3d 501, 509 (E.D. Pa. 2015). Moreover, a "[p]laintiff's choice of forum should be given little to no weight" where there are indications "the plaintiff chose the forum to escape an unfavorable ruling in a different district." *Kempton v. Life for Relief & Dev. Inc.*, 2019 WL 5188750, at *2–3 (D. Ariz. Oct. 15, 2019) (discrediting plaintiff's choice of forum on this basis); *Martin v. Global Tel*Link Corp.*, 2015 WL 2124379, at *4 (N.D. Cal. May 6, 2015) (similar); *see also Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *2 (N.D. Cal.

Dec. 14, 2007) (disregarding plaintiff's choice of forum based on inference of forum shopping).

Here, the MDL was filed first, remains pending, and is indisputably related to Plaintiffs' action. Both actions assert antitrust claims challenging RealPage's revenue management products—YieldStar and AIRM—and the alleged impact of those products on housing. *See* Section III.C. And the DOJ has already appeared in the MDL, filed a Statement of Interest, presented oral argument, and advanced antitrust theories that Judge Crenshaw has considered and rejected. *See* Section III.D. Given this record, Plaintiffs should not be accorded deference in traveling here to litigate new theories on a clean slate before a new judge. *See Kempton*, 2019 WL 5188750, at *2–3.

**B.    The Remaining Section 1404(a) Factors Favor Transfer to the Middle District of Tennessee**

On the other hand, the balance of the considerations favor transfer to either the Middle District of Tennessee or the Northern District of Texas.

### 1.    The Interest of Justice Factors Favor Transfer

"The 'interest of justice' inquiry 'encompass[es] those factors unrelated to witness and party convenience,'" *RHH L.L.C. v. Innisfree Hotels, Inc.*, 2021 WL 1146979, at *11 (M.D.N.C. Mar. 25, 2021) (citing *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939–40 (E.D. Va. 2001)), which includes the "great interest in not duplicating litigation occurring elsewhere." *Acterna*, 129 F. Supp. 2d at 940; *Brown v. Wells Fargo, N/A*, 2011 WL 13228266, at *6 (M.D.N.C. Nov. 3, 2011) (granting transfer "in the interests of justice" to "reduc[e] duplicative or inter-related litigation"); *see also Kolla v. Mayorkas*, 2021 WL

1090758, at *2 (M.D.N.C. Mar. 22, 2021) (granting transfer because it was in the "[a]ministrative interests of the courts" to "allow for consolidation of [that] case with [a] related action"); U.S. Dep't of Justice, Justice Manual ("Justice Manual") § 4-2.200 ("matters considered under rubric of 'interest of justice'" include "efficient use of judicial resources," "avoidance of unnecessary waste and expense," "avoidance of inconsistent adjudications," "permitting the transferee judge to interpret his outstanding protective order," and "familiarity of the transferor judge with relevant documents").  Here, transfer to the Middle District of Tennessee will expedite the case, conserve resources, and avoid inconsistent judgments.

  ***Expediency Favors Transfer.*** The fastest way to promptly resolve this action is to transfer to the Middle District of Tennessee, where the "court is already familiar with the facts and legal issues presented by way of managing the private cases." *Cephalon*, 551 F. Supp. 2d at 31.  The MDL also is in "a more advanced stage of litigation," *see id*., with the Court having resolved all pending motions to dismiss and entered a panoply of pre-trial orders governing confidentiality, document production, expert disclosures, and depositions, among other issues, and with the parties well into written and document discovery. *See, e.g*., MDL ECF Nos. 814–16, 818, 822, 828.  Given the relative maturity of the MDL litigation, the progression of discovery, and Judge Crenshaw's intimate familiarity with the relevant issues, transfer to the Middle District of Tennessee will expedite, rather than delay, the resolution of this action.

  ***Judicial Economy Favors Transfer.*** Absent transfer to the Middle District of Tennessee, there will be wasteful duplication of time and effort. *Gen. Tire & Rubber Co.*

*v. Watkins*, 373 F.2d 361, 362, 368–369 (4th Cir. 1967) (en banc) (issuing writ directing transfer on this basis). This Court would need to invest substantial time and energy to become "'educated' in much of the same factual background" and legal issues with which Judge Crenshaw *has already* become well-acquainted. *See id.* at 368; *Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 319–20 (E.D. Va. 2013) ("Running a parallel case here would be unnecessarily duplicative—a waste of judicial resources.").

   ***The Risk of Inconsistent Rulings Favors Transfer.*** Two federal courts overseeing separate cases challenging the same products and conduct poses substantial risk that the courts will reach inconsistent rulings. *Bluestone Innovations*, 940 F. Supp. 2d at 320 ("[T]rying these cases separately creates the serious risk of inconsistent results. . . . Even if this were the only factor in favor of transfer it might be sufficiently weighty to justify transferring these actions[.]"). This risk is particularly heightened here because the Complaint is drafted in contemplation of decisions Judge Crenshaw has already issued in the MDL. The risk of inconsistent rulings also is heightened here by the posture of the two cases, with the MDL far along and this action only recently filed.

### 2. Party and Witness Convenience Favors Transfer

   "[C]ourts consider the relative ease of access to witnesses and other evidence for trial," and "the relative time and expense of travel . . . for the parties and their witnesses. *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 804–05 (M.D.N.C. 2008); *see also* Justice Manual § 4-2.200 ("One of, if not the most important factors to be considered" in connection with change of venue "is that of convenience of the

witnesses").

The JPML has already found the Middle District of Tennessee to be the most convenient forum over several other options for the related MDL claims, including based on evidence submitted by MDL parties regarding key third-party witnesses. MDL No. 3071, ECF No. 1 at 2; Interested Party Response Mot. for Transfer Pursuant to 28 U.S.C. § 1407 at 3–4, *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 23-md-3071 (J.P.M.L. Mar. 23, 2023), ECF No. 197 (describing locations of third parties); *see also United States v. Gen. Motors Corp.*, 183 F. Supp. 858, 863 (S.D.N.Y. 1960) (transferring government antitrust case because the "prospective witnesses of both parties will be greatly inconvenienced by the trial of this action in this district, and that their convenience will clearly be better served by a transfer of this action"); *Microsemi*, 2009 WL 577491, at \*10 (E.D. Va. Mar. 4, 2009) (transferring government antitrust case based in part on locations of non-party witnesses). There is no reason the same convenience and efficiency should not apply to this case and its parallel claims.

Further, the potential non-party witnesses in this action are already parties or witnesses in the MDL, have already retained counsel in the MDL, have already agreed to the protective order there, and have already begun producing documents pursuant to that protective order. There is no convenience to be had in dragging those same entities and individuals to this forum to restart the process and to negotiate new agreements with them.

Nor can Plaintiffs dispute the convenience of litigating in the Middle District of Tennessee—*the DOJ already voluntarily appeared there* to participate in the MDL. MDL ECF Nos. 598, 599, 627, 628, 661. And as between prosecuting attorneys for the eight

Plaintiffs States, the prosecuting attorneys for the State of Tennessee are located in the proposed transferee forum, the Middle District of Tennessee, in contrast to the prosecuting attorneys for North Carolina.

### 3. *United States v. Google, Inc.* Is Distinguishable on Multiple Grounds

RealPage expects that Plaintiffs will rely on *United States v. Google LLC*, 661 F. Supp. 3d 480 (E.D. Va. 2023), to oppose transfer. In *Google*, the DOJ and a group of states brought an antitrust action against Google in the Eastern District of Virginia's "rocket docket," and the court denied Google's motion to transfer to a pending MDL in the Southern District of New York. *Id.* at 491. Reliance on *Google* here would be misplaced for multiple independent reasons.

*First*, the litigation landscape here is unlike what confronted the court in *Google*. There, the court found transfer inappropriate as likely to cause delay relative to its "rocket docket" where, in the proposed transferee forum, motion-to-dismiss briefing was incomplete, multiple private plaintiffs were seeking to amend their pleadings, other plaintiffs intended to file transfer motions, the parties had been unable to reach agreement—despite weeks of negotiation—on an initial protocol for discovery of electronically stored information, document productions had not begun, and discovery was not set to close for several years into the future. *Id.* at 484–86. That cannot be said of the MDL here, where the pleadings are set, Judge Crenshaw has issued the full suite of pre-trial orders, and discovery is well underway. Transfer here would expedite the litigation—the opposite of the situation in *Google*.

*Second*, in *Google*, the DOJ had not already appeared in the proposed transferee district before bringing suit in Virginia, whereas the DOJ here has participated and received an unfavorable ruling.

*Third*, in denying the transfer motion in *Google*, the court gave weight to the plaintiffs' choice of forum because the action sought monetary damages on behalf of federal departments and agencies located in the chosen forum, from whom the parties intended to develop testimony and evidence. *Id.* at 491. In this case, by contrast, there is minimal connection to this District, as discussed in Section V.A.1.

### C. Alternatively, the Remaining Section 1404(a) Factors Favor Transfer to the Northern District of Texas

RealPage anticipates that Plaintiffs will argue it is inappropriate to transfer to the Middle District of Tennessee *precisely because* the closely related MDL is already pending there. The Court should reject this argument for the reasons discussed above, but should the Court agree that this government action should proceed in a different forum, the most efficient and appropriate forum would be the Northern District of Texas.

### 1. Local Interests and Convenience Favor Transfer

"Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events," *Speed Trac*, 567 F. Supp. 2d at 804, and "[i]f acts or omissions primarily occurred in one state, that forum should resolve the dispute, even if the harm occurred elsewhere," *Oldham v. Penn. State Univ.*, 507 F. Supp. 3d 637, 648–49 (M.D.N.C. 2020). For example, *FTC v. Graco Inc.* transferred a government antitrust action because of the transferee district's local interest

in the action's resolution, emphasizing that the defendant was headquartered in that district and that many of the operative facts underlying the claims occurred there. 2012 WL 3584683, at *6 (D.D.C. Jan. 26, 2012); *see also Jubilee House*, 2013 WL 1232900, at *7 ("[I]f Plaintiff[s'] allegations . . . are substantiated, the bulk of the documentary and testimonial evidence . . . will likely come from Defendants' principal place of business."); *Lucas*, 2014 WL 12884104, at *3 (similar).

Here, RealPage is headquartered in the Northern District of Texas, many of the likely witnesses reside there, the DOJ conducted most of its pre-suit depositions there, many of the pre-suit document custodians were there, and the code base for the challenged software was developed and is maintained there. Dreyfuss Decl. ¶¶ 3–4. And of the more than 60 entities named as co-defendants in the MDL, some of whom may be called as third-party witnesses in this action, approximately 35 of those entities have operations and/or own property in the Northern District of Texas, and at least 14 of those entities are headquartered in the State of Texas. *See* Section III.D. All of these facts militate in favor of transfer to the Northern District of Texas. *See Sturdivant v. Arc of Haywood Cnty., Inc.*, 2018 WL 11674624, at *1 (M.D.N.C. 2018) (granting transfer based on location of parties, "relevant witnesses, relevant evidence, and the site where the relevant action occurred"); *La Casa Real Estate*, 2010 WL 2649867, at *3 (granting transfer "due to the significant nexus between" the action and the proposed transferee forum).

Moreover, significantly more of the alleged geographic "submarkets" are located in

the Northern District of Texas than in the Middle District of North Carolina.[5]  And a decision adverse to RealPage will affect far more RealPage employees living or working in the Northern District of Texas (which number in the thousands) than employees in the Middle District of North Carolina (only 12), giving the Northern District of Texas an even greater local interest in resolution of this dispute than the Middle District of North Carolina. *See Illumina*, 2021 WL 1546542, at *7 (weighing this factor in granting transfer motion).

## 2. Court Congestion Favors Transfer

Relative caseload statistics also favor transfer to the Northern District of Texas.  *See Speed Trac*, 567 F. Supp. 2d at 805 ("When evaluating the administrative difficulties of court congestion," the most relevant statistics include "the mediation time from filing to disposition" and "mediation time from filing to trial."); *see also* Justice Manual § 4-2.200 ("[t]he level of congestion of the respective courts, dockets and the speed with which the dispute can be resolved are also proper matters to be considered" in transfer analysis).

---

[5]  Eight of the alleged geographic "submarkets" are in the Northern District of Texas (Carrollton/Farmers Branch, East Dallas, Grand Prairie, Intown Dallas, Las Colinas/Coppell, North Irving, Oak Lawn/Park Cities, Northeast Fort Worth/ North Richland Hills), and another five are partially in the Northern District of Texas (Addison/Bent Tree, Richardson, Rockwall/Rowlett/Wylie, The Colony/Far North Carrollton, and Grapevine/Southlake).  By contrast, most of the alleged geographic submarkets are more focused on Raleigh and its suburbs than the Middle District of North Carolina.  Only three of the alleged geographic "submarkets" are located within the Middle District of North Carolina (Chapel Hill/Carrboro, Northwest Durham/Downtown, and Southwest Durham), with the remaining with the remaining Raleigh/Durham submarkets (Central Raleigh, Far North Raleigh, North Cary/Morrisville, Near North Raleigh, Northeast Raleigh, Northwest Raleigh, and South Cary/Apex) located primarily or exclusively in the Eastern District of North Carolina.  *See* ECF No. 1, Compl., app. A.

|  | **Northern District of Texas** | **Middle District of North Carolina** |
|---|---|---|
| Median Time From Filing to Disposition in Civil Cases for 12-Month Period Ending June 30, 2024 | 6.0 months | 7.7 months |
| Standing Within U.S. Regarding Median Time from Filing to Disposition in Civil Cases | Ranked 13th | Ranked 42nd |
| Median Time From Filing to Trial in Civil Cases for 12-Month Period Ending June 30, 2024 | 19.8 months | 30.5 months |
| Standing Within U.S. Regarding Median Time from Filing to Trial in Civil Cases | Ranked 4th | Ranked 19th |

These caseload statistics show that transfer to the Northern District of Texas is likely to enable a more expeditious resolution of this dispute than in the Middle District of North Carolina.[6]

## VI. CONCLUSION

In sum, the Section 1404(a) factors support transfer to the Middle District of Tennessee, where earlier-filed, very closely related private litigation has been pending for nearly two years. Alternatively, the Court should alternatively transfer to the Northern District of Texas, which has less docket congestion and a closer interest in the litigation, and where the bulk of documentary and testimonial evidence in this action is likely to be developed from parties and witnesses.

---

[6] *See United States District Courts – National Judicial Caseload Profile*, UNITED STATES COURTS (June 30, 2024) https://www.uscourts.gov/file/78871/download. DOJ has cited similar statistics in opposing transfer in other recent antitrust cases. *See, e.g.*, *Google*, 661 F. Supp. 3d at 493–94; *Microsemi*, 2009 WL 577491, at *10; *see also Graco*, 2012 WL 3584683, at *6.

This 26th day of September, 2024

/s/ Adam K. Doerr
Adam K. Doerr
N.C. Bar No. 37807
adoerr@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone:   704.377.2536
Facsimile:    704.378.4000

Stephen Weissman
(*LR 83.1(d) Counsel*)
sweissman@gibsondunn.com
Michael J. Perry
(*LR 83.1(d) Counsel*)
mjperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC  20036-4504
Telephone: (202) 955-8500

Ben A. Sherwood
(*LR 83.1(d) Counsel*)
bsherwood@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-2671

Daniel G. Swanson
(*LR 83.1(d) Counsel*)
dswanson@gibsondunn.com
Jay P. Srinivasan
(*LR 83.1(d) Counsel*)
jsrinivasan@gibsondunn.com

- 23 -

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000

Chris Whittaker
(*LR 83.1(d) Counsel*)
cwhittaker@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: (949) 451-4337

*Attorneys for Defendant RealPage Inc.*

## <u>WORD COUNT CERTIFICATION</u>

I certify that this Memorandum complies with the applicable word limits excluding the caption, signature lines, certificate of service, and any cover page or index in accordance with Local Civil Rule 7.3(d)(1). This certification is made in accordance with Local Civil Rule 7.3(d)(1). The undersigned relied upon the word count feature provided by word-processing software and the Memorandum contains 6,206 words.

This 26th day of September, 2024.

/s/ Adam K. Doerr
Adam K. Doerr
N.C. Bar No. 37807
adoerr@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone:   704.377.2536
Facsimile:    704.378.4000

*Attorneys for Defendant RealPage Inc.*