IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:24-cv-00710-LCB-JLW

UNITED STATES OF AMERICA; STATE OF NORTH CAROLINA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF MINNESOTA; STATE OF OREGON; STATE OF TENNESSEE; and STATE OF WASHINGTON,

    Plaintiffs,

    v.

REALPAGE, INC.,

    Defendant.

**REPLY IN SUPPORT OF DEFENDANT REALPAGE, INC.'S MOTION TO TRANSFER UNDER 28 U.S.C § 1404(a)**

## I. PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms there is no good reason for this case to be in this District. Plaintiffs do not dispute in substance that the operative witnesses, facilities, and documents are outside this forum, that the challenged software was developed and is maintained outside this forum, or that the Department of Justice appeared in a closely related case in a different forum. Plaintiffs hang their hat instead on the alleged use of the software by a handful of customers that own or manage property here, allegedly resulting in harm (or the potential for harm) here, but this does not suffice for a factual nexus under the law and would entail absurd results, as RealPage demonstrated in its Motion. Nor do Plaintiffs offer any argument or evidence that this forum is actually convenient for parties or witnesses, or that the Middle District of North Carolina has a greater local interest in this dispute than any other federal judicial district.

Plaintiffs' Opposition also fails to credibly rebut RealPage's showing that litigating this case will be more efficient and convenient in either Tennessee or Texas. As to the Middle District of Tennessee—where a closely related MDL is pending—Plaintiffs attack strawmen, arguing the Court lacks authority under 28 U.S.C. § 1407 to transfer this case for consolidation with MDL proceedings, and that doing so would unduly delay resolution of this case. But RealPage does not seek *consolidation* under Section 1407—it seeks *transfer* to the Middle District of Tennessee under Section 1404. Nor does RealPage contend that this case should proceed on the same schedule as the MDL; to the contrary, this case will necessarily go faster, because the MDL involves dozens of defendants and class certification and damages issues not present in this case. RealPage, like Plaintiffs,

wants its day in court. It seeks transfer to the Middle District of Tennessee precisely *because* that court—which already has decided a slew of discovery and procedural issues presented by the MDL that also will need to be resolved in this litigation—is best positioned to speed this case along.

As to the Northern District of Texas, RealPage's Motion offered compelling evidence that the Northern District of Texas has the closest relationship to the operative events, has the greatest local interest in the dispute, and would offer ease of access to witnesses and evidence, with low travel time and expense, and with a short time to disposition/trial. Plaintiffs offer no affirmative challenge to the Northern District of Texas's meaningful connection with this action, its local interest, or its convenience for witnesses or evidence.

In short, Plaintiffs' choice of forum is not entitled to deference, and the balance of considerations under § 1404 overwhelmingly supports transfer to the Middle District of Tennessee or the Northern District of Texas.

## II. ARGUMENT

### A. Plaintiffs' Choice of Forum Does Not Preclude Transfer

Plaintiffs do not contest that RealPage is based outside this forum, that the challenged software was developed/is maintained outside this forum, that RealPage has only a de minimis number of employees working remotely in this forum, that none of RealPage's Rule-26-disclosed witnesses in the private litigation are based in this forum, that Plaintiffs conducted no pre-suit depositions in this forum, or that Plaintiffs received no pre-suit productions from custodians in this forum. Nor do Plaintiffs argue this forum will

- 2 -

Case 1:24-cv-00710-LCB-JLW   Document 41   Filed 10/31/24   Page 3 of 15

be the locus of documentary and testimonial evidence, *Lucas v. Family Dollar Stores of N.C., Inc.*, 2014 WL 12884104, at *3 (M.D.N.C. Apr. 24, 2014), that it has the "closest relationship with the operative events," *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008), or even that this forum is "more closely connected with" this lawsuit than the proposed transferee districts, *Davis v. Stadion Money Mgmt.*, 2019 WL 7037426, at *4 (M.D.N.C. Dec. 20, 2019); *La Casa Real Estate & Inv. v. KB Home of S.C.*, 2010 WL 2649867, at *3 (M.D.N.C. June 30, 2010).

Plaintiffs' sole theory is that RealPage allegedly licensed its (Texas-developed) software to at least six users "that own or manage property in this District," allegedly resulting in harm (or the potential for harm) to residents here. Opp. at 7–8. But RealPage entered these licenses from its base in Texas (if at all), and Plaintiffs say nothing about where these users are based, from what place they negotiated/entered the license agreements, or what forum (if any) the licenses select for dispute resolution. *Id.* Plaintiffs' argument that RealPage's software was ultimately sold to users in this forum is no different than the failed attempt in *FTC v. Cephalon* to assert a factual nexus based on "where [a manufacturer's] products are ultimately sold." *See* 551 F. Supp. 2d 21, 27 (D.D.C. 2008).

Plaintiffs' argument (Opp. at 8) that "rental markets are 'inherently local'" again "proves too much," *Cephalon*, 551 F. Supp. 2d at 27, because Plaintiffs allege the same effects in hundreds of variously constituted geographic areas all over the country. *See* Compl. ¶ 223& app. A. Plaintiffs have not alleged any adverse effect of the challenged conduct here beyond that of any other judicial district. *See Cephalon*, 551 F. Supp. 2d at 27–28; *see also FTC v. Graco*, 2012 WL 3584683, at *5 (D.D.C. Jan. 26, 2012) (rejecting

factual nexus argument that challenged conduct "affect[ed] this district as well as districts across the country"); *cf. United States v. Google*, 661 F. Supp. 3d 480 (E.D. Va. 2023) (denying transfer because plaintiff sought recovery for injuries specific to agencies located in the chosen forum).[1]  Moreover, Plaintiffs conveniently ignore their claims under Section 2 of the Sherman Act, which allege a *national* relevant market for commercial revenue management software. Compl. ¶¶ 212, 245, 250. And transfer would be warranted even *had* Plaintiffs alleged unique effects in the forum, because those *effects* would have arisen from alleged acts largely outside the forum. *See Weishaupt v. Boston College*, 2012 WL 1439030, at *3 (M.D.N.C. Apr. 24, 2012) (granting transfer on this basis). RealPage made this point (Mot. at 12) and Plaintiffs simply do not respond.

With no other meaningful connection with this forum, Plaintiffs fall back on North Carolina's state residency,[2] but that is routinely found insufficient to oppose transfer. *Lucas*, 2014 WL 12884104, at *3 (other facts outweighed plaintiff's residence); *Davis*, 2019 WL 7037426, at *4 (transferring despite plaintiff's residence because Nebraska had greater connection); *La Casa*, 2010 WL 2649867, at *3 (similar); *Jubilee House Cmty. v. Coker Int'l*, 2013 WL 1232900, at *7 (M.D.N.C. Mar. 26, 2013) (similar). RealPage cited

---

[1] Plaintiffs assert that "RealPage's rental pricing algorithms have been adopted by a substantial share of landlords in more major metropolitan areas within North Carolina than in any other state—specifically, Durham, Chapel Hill, Charlotte, and Raleigh." But it is not clear what this unsupported and heavily qualified statement even measures. Further, Charlotte and Raleigh are outside this District. And, regardless, significantly more of Plaintiffs' alleged geographic submarkets are in the Northern District of Texas than in this District.

[2] North Carolina sues solely under federal antitrust law in its capacity as a "person, firm, corporation or association." *See* Compl. ¶ 214 (citing 15 U.S.C. § 26). Plaintiffs do not invoke North Carolina antitrust law.

- 4 -

Case 1:24-cv-00710-LCB-JLW   Document 41   Filed 10/31/24   Page 5 of 15

these cases and Plaintiffs simply do not respond to them.

Plaintiffs also ignore the DOJ's own unfavorable record in Tennessee—that the DOJ appeared, filed a statement of interest, presented oral argument, advanced antitrust theories that Judge Crenshaw considered and rejected, and cited factual claims inconsistent with those it now advances. *See* Mot. at 6–7, 13–14. Plaintiffs merely invoke the DOJ's statutory authorization to file statements of interest (Opp. at 4, 20), but this misses the point. Such authorization does not mean this Court should accord deference to Plaintiffs in choosing a new forum to litigate new theories on a clean slate after an unfavorable ruling in Tennessee, *see* Mot. at 14. Whether to defer is a matter within the Court's discretion, *Progressive Casualty Ins. v. Future Van Lines*, 2021 WL 4413319, at *1 (M.D.N.C. Sept. 27, 2021), and RealPage cited a number of cases declining to do so in analogous circumstances. *See, e.g.*, *Kempton v. Life for Relief & Dev.*, 2019 WL 5188750, at *2–3 (D. Ariz. Oct. 15, 2019) (discrediting forum chosen to avoid unfavorable ruling); *Foster v. Nationwide Mut. Ins.*, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007) (discrediting forum based on inference of forum shopping). Plaintiffs do not respond to them. *See* Opp. at 4, 20–21.

### B. The Balance of Section 1404(a) Factors Favors Transfer to the Middle District of Tennessee

Beyond the Middle District of North Carolina's minimal connection to the dispute, other important factors support § 1404 transfer to the Middle District of Tennessee, which has been managing very closely related litigation for almost two years and where the DOJ has already appeared and argued.

### 1. The Interests of Justice Factors Favor Transfer

Plaintiffs argue against transfer or consolidation under 28 U.S.C. § 1407 because § 1407(g) exempts Plaintiffs from § 1407 consolidation. *See* Opp. at 17–18 ("§ 1407(g) supplies a straightforward, categorical prohibition"). But RealPage moves under § 1404. That section lacks an exemption analogous to § 1407(g) and applies in civil actions brought by government antitrust enforcers. *See* Mot. at 9 (citing cases). Section 1407(g) thus is inapposite—the only questions are whether § 1404(a) transfer would be in the interests of justice and convenient for parties and witnesses.

As it said in its Motion (at 2), RealPage does not seek consolidation with the MDL or for Plaintiffs to proceed on the MDL's schedule. Plaintiffs are simply wrong that transfer would "marry Plaintiffs to a trial date more than three years in the future." Opp. at 20. Following transfer, the Tennessee court can prioritize resolution of this case, which will necessarily proceed on a faster track because Plaintiffs here seek only equitable relief, and there are no class certification issues to resolve. *See, e.g.*, *FTC v. Cephalon*, No. 08-cv-02141-MSG (E.D. Pa.), ECF No. 349 (directing that government antitrust claims "shall proceed to trial separate and apart from the Private Plaintiffs' cases"); *United States v. Apple Inc.*, No. 12-cv-02826-DLC-MHD (S.D.N.Y.), ECF No. 71 (fast-tracking government antitrust claims for early trial ahead of class cases).

Plaintiffs invoke *Google* for the proposition that transfer should not unnecessarily delay antitrust enforcement. *See* Opp. at 17–18. RealPage is likewise eager for prompt resolution of Plaintiffs' claims. But transfer would *achieve* that, expediting this case by putting it before a court familiar with very closely related litigation pending for almost two

- 6 -
Case 1:24-cv-00710-LCB-JLW    Document 41    Filed 10/31/24    Page 7 of 15

years now and that has long ago confronted and resolved a number of preliminary procedural issues that also will need resolution here. The court in *Google* confronted a very different litigation landscape—*e.g.*, whereas the private litigation there was mired in delay, the private litigation here is far along and the Tennessee court is already steeped in the legal and technical issues. *See* Mot. at 5–6, 15, 18; *see also Cephalon*, 551 F. Supp. 2d at 22–24, 32–33.[3] Plaintiffs cite *United States v. Agri-Stats*, but there the government filed an antitrust enforcement action *where closely related private litigation was already pending*, and the court declined to transfer to a different forum. 2024 WL 2728450, at *4–5 (D. Minn. May 28, 2024). And *United States v. Live Nation Entertainment* involved the language in a consent decree, where the movant acknowledged both fora were "equally convenient." 2024 WL 4381074, at *3 (S.D.N.Y. Oct. 3, 2024).

### 2. Party and Witness Convenience Favors Transfer

Plaintiffs argue RealPage has not carried its burden as to convenience (Opp. at 10–15), but as the Motion established (at 3–8, 14), and as Plaintiffs do not dispute in substance, the private litigation in Tennessee and this government action involve antitrust claims involving the same RealPage software and alleged conduct. Indeed, the private litigants in Tennessee assert North Carolina state antitrust claims in addition to federal claims, and allege geographic markets in North Carolina. *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, No. 23-md-3071(M.D. Tenn. Apr. 12, 2023), ECF No. 728 ¶¶ 53,

---

[3] Plaintiffs note there was a motion to dismiss order in the private litigation in *Google*, *see* Opp. at 19, but this was only the first of several rounds of anticipated pleading motions. *See In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 359 n.1 (S.D.N.Y. 2022) (staying further briefing "to focus on the federal antitrust claims").

76, 442–47, 613–19, 742. There will thus be significant overlap in sources of proof adduced in the two cases. *See Cephalon*, 551 F. Supp. 2d at 25 ("the private suits and the FTC's action all involve the same operative set of facts and, indeed, raise substantially the same questions of law"); *Agri-Stats*, 2024 WL 2728450, at *4 ("Discovery in this case therefore will overlap with that in *Pork*, which Agri Stats is defending in this Court."). Because work is already in motion to adduce those sources of proof in Tennessee, there is manifest convenience in transferring there. The "*relative* ease of access to sources of proof," *see Progressive*, 2021 WL 4413319, at *1 (emphasis added), favors a forum where the evidence is already being elicited.

Plaintiffs chide RealPage (Opp. at 10) for failing to provide sufficiently detailed descriptions of individual witnesses who may be unavailable absent transfer, citing *Pacchiana v. Pacchiana*, 2021 WL 2312538, at *9 (M.D.N.C. June 7, 2021), but this misconstrues *Pacchiana* and conflates different considerations under § 1404. *Pacchiana* did not announce a new rule of evidence for transfer motions. There, neither party "discussed the relative ease of access to sources of proof"; they argued only about "availability of witnesses," submitting dueling declarations identifying witnesses and their locations. *Id*. at *9, n.8. Without further details, the Court could not "meaningfully compare the suitability of the two fora on this front" and found the factor "neutral." *Id*. at *9. Other cases make clear that "relative ease of access to proof," which considers where "witnesses and potentially relevant documents are located," is a separate consideration from "availability of compulsory process for attendance of witnesses," which requires the movant to "name 'a witness who cannot or is not willing to travel' to this district." *Cirillo*

*v. Citrix Sys. Inc.*, 2021 WL 308597, at *7 (W.D.N.C. Jan. 29, 2021); *Progressive*, 2021 WL 4413319, at *3.[4]

Here, RealPage's argument/evidence are meaningfully different, and RealPage has carried its burden to show relative ease of access to sources of evidence. The exaggerated evidentiary burden Plaintiffs urge is simply contrary to the overwhelming weight of authority in this District. *See, e.g.*, *Cirillo*, 2021 WL 308597, at *7; *Progressive*, 2021 WL 4413319, at *3; *Davis*, 2019 WL 7037426, at *4; *Lucas*, 2014 WL 12884104, at *3.

Moreover, *Pacchiana* noted that "[a]lthough the moving party bears the ultimate burden of establishing the propriety of transfer," courts impose a corresponding "burden of proffering details about witnesses" on the party opposing transfer. *Id.* at *9, n.10. Here, Plaintiffs submit no affirmative evidence whatsoever.

Plaintiffs also cite caseload statistics comparing *newly filed* cases here and in the Middle District of Tennessee, but that does not account for the Tennessee court progressing the closely related MDL for nearly two years. Those specific facts are more probative than generalized statistics.[5] Should this Court determine this case should not proceed in Tennessee, then the caseload statistics would strongly favor the Northern District of Texas.

---

[4] *United States v. $43,660.00 in U.S. Currency* is even further afield, denying transfer where the four "key witnesses" were police in North Carolina and the movant merely "claim[ed] to have witnesses in Arizona." 2015 WL 3890646, at *1 (M.D.N.C. June 24, 2015).

[5] Additionally, the Middle District of Tennessee's docket is not substantially more congested than this District's, ranking 46th instead of 42nd for median time from filing to disposition in civil cases, with a median 8 months instead of 7.7 for the period ending June 30, 2024. *See* Mot. at 22, n.6.

### C. Alternatively, the Balance of Section 1404(a) Factors Favor Transfer to the Northern District of Texas

Plaintiffs' Opposition to transfer to the Northern District of Texas is even weaker. RealPage's Motion offered compelling evidence (at 3–8, 19–22) that the Northern District of Texas:

- has the closest relationship to the operative events, including based on uncontested metrics from Plaintiffs' own two prior pre-suit investigations and where the challenged software was developed/is maintained;

- has the greatest local interest in the dispute, including based on Plaintiffs' own alleged geographic "submarkets" and the main locus of RealPage's employees;

- would offer ease of access to witnesses and evidence, with low travel time and expense, including based on an identification of dozens of likely third-party witnesses named as co-defendants in the substantially overlapping private litigation (*see* Mot. at 6 n.2 &3 (directing the Court to lists of the likely third parties)); and

- has the comparatively shortest time to disposition/trial in civil cases, including based on statistics similar to those the DOJ has cited in recent cases.

This suffices to carry RealPage's burden regarding transfer. *See Speed Trac*, 567 F. Supp. 2d at 804–06 (transferring on these bases).

By contrast, Plaintiffs offer no affirmative challenge to the Northern District of Texas in terms of its factual nexus, its local interest, or its convenience. *See* Opp. at 12–15. And although Plaintiffs argue the Northern District of Texas has a greater number of civil cases, Plaintiffs do not dispute it has a faster time to disposition/trial than this District.

Plaintiffs offer only two arguments against transfer to the Northern District of Texas, neither of which is persuasive. *First*, Plaintiffs urge the same incorrect and insufficient argument about *Pacchiana* discussed above.

*Second*, Plaintiffs object that they may need to hire local counsel in the Northern District of Texas. Opp. at 3, 12. But Plaintiffs successfully moved this Court (with RealPage's consent) for leave to proceed without local counsel, ECF No. 9, and Texas has a similar rule, *see* N.D. Tex. L. R. 83.10 (allowing attorneys to "proceed without local counsel" with "leave from the presiding judge"). Moreover, dozens of other third parties will need to hire local counsel here absent transfer. And courts regularly disregard this argument in deciding transfer motions. *See, e.g.*, *Weishaupt*, 2012 WL 1439030, at *6; *Mims v. Proctor & Gamble Distrib. Co.*, 257 F. Supp. 648, 657 (D.S.C. 1966) ("that the plaintiff may be required to hire additional attorneys in the transferee forum should not be given weight"); *United States ex rel. Haight v. Catholic Healthcare West*, 2001 WL 1463792, at *2 (N.D. Cal. Nov. 9, 2001) (similar).

## III.  CONCLUSION

For the foregoing reasons, the Court should grant transfer to the Middle District of Tennessee or the Northern District of Texas.

This 31st day of October, 2024

/s/ Adam K. Doerr
Adam K. Doerr
N.C. Bar No. 37807
adoerr@robinsonbradshaw.com
Caroline Reinwald

- 11 -
Case 1:24-cv-00710-LCB-JLW   Document 41   Filed 10/31/24   Page 12 of 15

N.C. Bar No. 58053
creinwald@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone:    704.377.2536
Facsimile:    704.378.4000

Stephen Weissman
(*LR 83.1(d) Counsel*)
sweissman@gibsondunn.com
Michael J. Perry
(*LR 83.1(d) Counsel*)
mjperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036-4504
Telephone: (202) 955-8500

Ben A. Sherwood
(*LR 83.1(d) Counsel*)
bsherwood@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-2671

Daniel G. Swanson
(*LR 83.1(d) Counsel*)
dswanson@gibsondunn.com
Jay P. Srinivasan
(*LR 83.1(d) Counsel*)
jsrinivasan@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000

Chris Whittaker

(*LR 83.1(d) Counsel*)
cwhittaker@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: (949) 451-4337

*Attorneys for Defendant RealPage Inc.*

## WORD COUNT CERTIFICATION

I certify that this Reply complies with the applicable word limits excluding the caption, signature lines, certificate of service, and any cover page or index in accordance with Local Civil Rule 7.3(d)(1). This certification is made in accordance with Local Civil Rule 7.3(d)(1). The undersigned relied upon the word count feature provided by word-processing software and the Reply contains 3,125 words.

This 31st day of October, 2024.

/s/ Adam K. Doerr
Adam K. Doerr
N.C. Bar No. 37807
adoerr@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone:   704.377.2536
Facsimile:   704.378.4000

*Attorneys for Defendant RealPage Inc.*