| | |
|---|---|
| THE UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>REALPAGE, INC., *et al*.,<br><br>Defendants. | Case No. 1:24-cv-00710-LCB-JLW<br><br>**FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE** |

# FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE

## RECITALS:

WHEREAS, Plaintiffs, the State of Colorado, by and through its Attorney General Philip J. Weiser, and the State of North Carolina, by and through its Attorney General Jeff Jackson, (hereinafter, the "Settling States") filed an Amended Complaint on January 7, 2025 against Cortland Management, LLC (the "Defendant") (collectively, the "Parties") in this matter (the "Action");

AND WHEREAS, the Defendant denies the allegations as to all claims in the Amended Complaint and maintains that it has no liability whatsoever to the Settling States;

AND WHEREAS, the Parties each warrant and represent that it engaged in arms-length negotiations in good faith. By entering into the Consent Judgment, the Parties intend to effect a good-faith resolution;

AND WHEREAS, the Parties have agreed to the resolution of the Action and the entry of this Consent Judgment without the taking of testimony, without trial or finding of admission, or wrongdoing or liability of any kind against the Defendant;

AND WHEREAS, the Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation;

AND WHEREAS, the Defendant is entering into this Consent Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, regulation, or ordinance of the Settling States, or of any fault, liability or wrongdoing on the part of the Defendant, all of which the Defendant specifically denies;

AND WHEREAS, the Settling States have each determined that this Consent Judgment is in the public interest in their respective states;

AND WHEREAS, the Parties are entering into this Consent Judgment solely for the purpose of compromising and resolving disputed claims and to avoid the expense of further litigation;

AND WHEREAS, the Parties agree that this Consent Judgment may not be used or be admissible in any other administrative, civil or criminal proceeding for any purpose except for the enforcement of this Consent Judgment;

AND WHEREAS, the Defendant agrees to undertake certain actions and refrain from certain conduct to remedy the alleged loss of competition alleged in the Amended Complaint;

AND WHEREAS, without any admission of liability or wrongdoing by Defendant, the Parties now mutually consent to the entry of this Consent Judgment and agree to dismissal of the

2

claims against the Defendant with prejudice pursuant to the terms of this Consent Judgment to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

In consideration of the mutual promises, terms, and conditions set forth in this Consent Judgment, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between Defendant and the Settling States, and adjudicated by the Court, as follows:

The forgoing Recitals are incorporated herein and constitute express terms of this Consent Judgment.

## I. JURISDICTION

The Parties agree that the Court has jurisdiction over the subject matter of and each of the Parties to this Action. The Amended Complaint purports to state a claim for injunctive relief pursuant to 15 U.S.C. § 26 against Defendant under Section 1 of the Sherman Act, 15 U.S.C. § 1, and for injunctive relief and civil penalties under C.R.S. §§ 6-4-104, 112 and 113 (authorizing civil penalties up to $1 million for each violation), and under N.C.G.S. §§ 75-1, 75-2, and 75-15.2 (authorizing civil penalties up to $5,000 for each violation). This Consent Judgment shall not be construed or used as a waiver of any jurisdictional defense Defendant may raise in any other proceeding.

## II. DEFINITIONS

As used in this Consent Judgment:

A. "Amended Complaint" means the Amended Complaint filed in this Action on January 7, 2025.

B. "Competitively Sensitive Information" means, in this Consent Judgment, property-specific data or information (whether past, present, or prospective) which, individually or when

aggregated with such data or information from other properties, (1) could be reasonably used to determine current or future rental supply, demand, or pricing at a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, lease terms or lease expirations; (2) relates to the Property Owner's or Property Manager's use of settings or user-specified parameters within Revenue Management Products with respect to such property or properties; or (3) relates to the Property Owner's or Property Manager's rental pricing amount, formula, or strategy, including rental price concessions or discounts, in each case, with respect to such property or properties.

C. "Cooperation Subject Matter" means Cortland's use of RealPage's Revenue Management Products, the violations of only Section 2 of the Sherman Act and similar Colorado and North Carolina state law alleged in the Amended Complaint, and includes conduct as well as the effects of conduct. Cooperation Subject Matter expressly excludes the prohibited conduct described in Paragraph VII.A. and any violation of Section 1 of the Sherman Act and similar Colorado and North Carolina state law alleged in the Amended Complaint.

D. "Cortland" or "Defendant" means Defendant Cortland Management, LLC, a Delaware corporation with its headquarters in Atlanta, Georgia, its successors and assigns, and all of its subsidiaries, divisions, groups, affiliates, parents, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E. "Cortland Property" means a residential property, located within the United States and its territories, owned or managed by Defendant or its agents (collectively referred to as "Cortland Properties").

F. "Cortland Revenue Management Product" means Cortland's internal proprietary revenue management software product that was in place as of January 1, 2025, and that has been under development since 2020.

G. "External Nonpublic Data" means all Nonpublic Data from any Person other than Defendant. It does not include data for a Cortland Property.

H. "Nonpublic Data" means any Competitively Sensitive Information that is not Public Data.

I. "Person" means any natural person, corporate entity, partnership, association, joint venture, limited liability company, fund, investment vehicle, or any other legal entity or trust.

J. "Property Owner(s)" means any Person who owns a multifamily rental property or that Person's agent.

K. "Property Manager(s)" means any Person, or the Person's agent, who manages a multifamily rental property.

L. "Public Data" means information on a rental unit's asking price (including publicly offered rental price concessions) that is readily accessible to the general public on the property's website, physical building, brochures, or on an internet listing service. Public Data includes information on a rental unit's asking price, concessions, amenities, and availability provided by a Property Manager or a Property Owner to any natural person who reasonably presents himself as a prospective renter. Public Data does not include any Competitively Sensitive Information obtained through communications between competitors.

M. "RealPage" means RealPage, Inc., a Delaware corporation with its headquarters in Richardson, Texas.

N. "Released Parties" means Cortland Management, LLC, and its successors and assigns, and all of its subsidiaries, divisions, groups, affiliates, parents, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

O. "Revenue Management Product(s)" means any software or service, including software as a service, that sets rental prices or generates rental pricing recommendations.

P. "Runtime Operation" means any action taken by a Revenue Management Product while it runs, including generating rental prices or pricing recommendations for any units or set of units at a property. Runtime Operation does not mean training the demand and supply models.

Q. "Settled Civil Claims" means any federal or state civil antitrust enforcement claims for injunctive relief and civil penalties by the States of Colorado and North Carolina alleged in this Action or arising from Defendant's conduct accruing before the filing of the Amended Complaint in this Action relating to (1) Revenue Management Products, including RealPage revenue management products that use competitors' Competitively Sensitive Information, as well as (2) communications described by Paragraph VII.A that occurred before the filing of the Amended Complaint. For avoidance of doubt, "Settled Civil Claims" does not include (1) private rights of action or (2) damages claims brought by the States of Colorado and North Carolina as *parens patriae*, *see* 15 U.S.C. § 15c, C.R.S. § 6-4-112, and N.C.G.S. §§ 75-15.1 and 75-16, nor does it include any other claim or future claim brought by Colorado or North Carolina against Third-Parties other than the Released Parties for similar conduct.

R. "United States" means the United States Department of Justice, Antitrust Division.

S. "Third-Party" means any Person other than Cortland (collectively referred to as "Third-Parties").

6

Case 1:24-cv-00710-WO-JLW    Document 126-1    Filed 04/10/25    Page 6 of 20

T.      "U.S. Proposed Final Judgment" means the Proposed Final Judgment between the United States and Cortland Management, LLC, filed in this Action on January 7, 2025 (Doc. #49-1).

## III. APPLICABILITY

This Consent Judgment applies to Defendant, as defined above, and all other Persons in active concert or participation with Defendant who receive actual notice of this Consent Judgment.

## IV. PAYMENT OF FEES AND COSTS ONLY TO SETTLING STATES

A.      In consideration of Defendant's effort and expense to develop its Revenue Management Product, its investment in and commitment to antitrust compliance, and its status as the first-settling Defendant before adjudication and without admission of liability or wrongdoing of any kind, Settling States agree to resolve this matter without payment of any civil penalty. Defendant shall pay the Settling States their reasonable fees and costs incurred in prosecuting this Action in an amount agreed upon by the Parties, as described below.

B.      Within thirty (30) calendar days of the Court's entry of this Consent Judgment, Defendant shall pay the Colorado Attorney General a monetary payment for the State's actual costs and attorneys' fees, consumer education, enforcement or other consumer protection purposes in the amount of $100,000 (One Hundred Thousand Dollars). This payment is not a penalty. All payments to the Colorado Attorney General under this Paragraph are to be held, along with any interest thereon, in a trust by the Attorney General to be used in the Attorney General's sole discretion for reimbursement of the State's actual costs and attorneys' fees and for future consumer fraud or antitrust enforcement, consumer education, or public welfare purposes.

C.      Within thirty (30) days from the date of entry of this Consent Judgment, Defendant shall pay the sum of $100,000 (One Hundred Thousand Dollars) to the Attorney General of North

7

Carolina for investigative costs, consumer education, enforcement or other consumer protection purposes at the discretion of the Attorney General. This payment is not a penalty. Payment shall be made via pre-cleared funds in a manner agreed to by Defendant and the Attorney General of North Carolina.

## V. USE OF PROPRIETARY REVENUE MANAGEMENT PRODUCT(S)

A. The Cortland Revenue Management Product must not set rental prices or generate rental pricing recommendations for a Cortland Property during its Runtime Operation using (1) External Nonpublic Data in any way, or (2) Nonpublic Data from a Cortland Property for another Cortland Property with a different Property Owner by pooling or combining Nonpublic Data from Cortland Properties that have different Property Owners.

B. Defendant must not train the Cortland Revenue Management Product's model (1) using External Nonpublic Data in any way, nor (2) by pooling or combining rental pricing, concessions, discounts, occupancy rates or capacity, or other rental pricing terms from Cortland Properties with different Property Owners. Unless otherwise prohibited by law, Defendant is permitted to train its supply and demand models using pooled or combined Nonpublic Data from across all Cortland Properties that does not incorporate rental pricing, concessions, discounts, occupancy rates or capacity, or other rental pricing terms.

C. The Cortland Revenue Management Product must not disclose in any way Nonpublic Data from a Cortland Property to any other Property Manager or Property Owner. Unless otherwise prohibited by law, the Cortland Revenue Management Product is permitted to disclose Nonpublic Data from a Cortland Property to the Property Owner of the Cortland Property from which the data arises or relates.

D. Within sixty (60) calendar days after the Court's entry of this Consent Judgment, Defendant must cease all direct or indirect use of Third-Party Revenue Management Products used as part of setting rental prices or generating rental pricing recommendations for any Cortland Property.

E. If, during the term of this Consent Judgment, management responsibilities or ownership of a property within the United States or its territories is transferred from another Property Manager or Property Owner to Defendant, Defendant will have thirty (30) days from the date of transfer to discontinue use of any Third-Party Revenue Management Product for that property and transition the transferred property to the Cortland Revenue Management Product.

## VI. RESTRICTIONS CONCERNING USE OF THIRD-PARTY REVENUE MANAGEMENT PRODUCT(S)

A. Unless otherwise prohibited by law, Defendant may license or use a Third-Party Revenue Management Product for a Cortland Property before the expiration of this Consent Judgment, notwithstanding Paragraphs V.D and V.E, as long as Defendant does not:

1. license or use, for any Cortland Property, any Third-Party Revenue Management Product that: (1) uses External Nonpublic Data in any way to set rental prices or generate rental pricing recommendations for a Cortland Property; (2) uses Nonpublic Data from a Cortland Property in any way to set rental prices or generate rental pricing recommendations for any other Cortland Property with a different Property Owner or for a non-Cortland Property; (3) discloses in any way Nonpublic Data from a Cortland Property to any other Property Manager or Property Owner (other than the Property Owner of the Cortland property from which the data arises or relates); (4) pools or combines Nonpublic Data from Cortland Properties that have different owners; or (5) contains or uses a pricing algorithm that has been trained using External Nonpublic Data; or

9

2. license or use any Third-Party Revenue Management Product that: (1) incorporates a rental price floor or a limit on rental price recommendation decreases (excluding a rental price floor, or limit on rental price decreases, that Defendant manually selects and is not based on competing properties' rental prices); or (2) requires Defendant to accept, or provides financial rewards for Defendant to accept, any recommended rental prices.

B. Defendant may not agree, either expressly or implicitly, with any Property Owner of a Non-Cortland Property or another Property Manager to license or use a particular Revenue Management Product (or the utilities or functionalities thereof) or require any other Person to license or use a particular Revenue Management Product (or the utilities or functionalities thereof), except that Defendant may license or use a particular Revenue Management Product at a particular Cortland Property pursuant to an agreement with another Property Manager who, along with Defendant, is also managing that particular property on behalf of a Property Owner, unless otherwise prohibited by law.

C. Before licensing or using a Third-Party Revenue Management Product, Defendant must first notify the Settling States, in writing, of its intention to license or use a Third-Party Revenue Management Product thirty (30) calendar days prior to using a Third-Party Revenue Management Product and must secure and submit to the Settling States a certification from the proposed vendor of the Third-Party Revenue Management Product that the vendor's product is in compliance with Paragraph VI.A of this Consent Judgment.

D. If Cortland elects to license or use a Third-Party Revenue Management Product, Cortland must secure and submit to the Settling States, on an annual basis, a certification from any vendor of a Third-Party Revenue Management Product contracted by Cortland certifying each vendor's compliance with Paragraph VI.A.

E. Defendant must not license or use a Third-Party Revenue Management Product for any Cortland Property until a Compliance Monitor has been appointed by the Court in this Action and the Compliance Monitor's work plan approved by the United States.

## VII. OTHER PROHIBITED CONDUCT

A. Defendant must not, directly or indirectly, as part of setting rental prices or generating rental pricing recommendations for any Cortland Property (1) disclose Nonpublic Data to any other Property Manager or Property Owner (except to the Property Owner of the particular Cortland Property); (2) solicit External Nonpublic Data from any other Property Manager or Property Owner (except from the Property Owner of the particular Cortland Property if not otherwise prohibited by law); or (3) use External Nonpublic Data obtained from another Property Manager or Property Owner (except from the Property Owner of the particular Cortland Property if not otherwise prohibited by law). For avoidance of doubt, the restrictions set forth in this Paragraph include Nonpublic Data obtained through any form of communication, whether directly or through an intermediary, including call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint documents), industry meetings (e.g., user groups), online fora, private meetings, Revenue Management Product, or information-exchange service.

B. Defendant must not use or access any External Nonpublic Data, or data derived from RealPage that used or relied on External Nonpublic Data, in Defendant's possession, custody, or control as of the Court's entry of the date of this Consent Judgment, acquired through any means. Within ninety (90) calendar days of the Court's entry of this Consent Judgment, Defendant must identify to each of the Settling States in writing the existence and location of any such data

and/or datasets. For avoidance of doubt, the proscriptions in this Paragraph do not apply to data for Cortland Properties maintained in OneSite.

## VIII. ANTITRUST COMPLIANCE

A. Defendant must adopt a written antitrust compliance policy that complies with the obligations set forth in Section VII of the U.S. Proposed Final Judgment.

B. On an annual basis during the term of this Consent Judgment, Defendant must submit to the Settling States a certification from the General Counsel of the Defendant attesting under penalty of perjury that (1) Defendant has established and maintained the antitrust compliance policy and annual training required by the U.S. Proposed Final Judgment; (2) Defendant has provided each of the Settling States with an annual report identifying the individuals audited pursuant to the U.S. Proposed Final Judgment, Paragraph VII.A; (3) Cortland's Revenue Management Product, if used by Defendant, continues to satisfy the requirements in Section V of this Consent Judgment; (4) Cortland has complied with the requirements in Paragraph VII.A of this Consent Judgment.

## IX. COOPERATION

A. The Settling States shall have a right to receive and participate in any cooperation Defendant provides to the United States in this Action relating solely to the Cooperation Subject Matter and as agreed with the United States pursuant to Section VIII of the U.S. Proposed Final Judgment.

B. Nothing in this Section IX affects Defendant's obligation to respond to any formal discovery requests in litigation or a civil investigative demand issued by the Settling States.

## X. APPOINTMENT OF MONITOR

A. If the United States seeks and the Court appoints a Compliance Monitor for the Defendant pursuant to Section IX of the U.S. Proposed Final Judgment, the Compliance Monitor must contemporaneously provide to the Settling States copies of any reports it submits to the United States in this Action.

## XI. COMPLIANCE INSPECTION

The Defendant must contemporaneously provide the Settling States with any information, documents, or materials provided by the Defendant to the United States pursuant to Section X of the U.S. Proposed Final Judgment, subject to applicable limitations agreed to with the United States. The Settling States will also have the right to participate in any compliance inspection or interview of Defendant's officers, employees, or agents conducted by the United States in this Action. Defendant is not obligated to provide the Settling States with compliance inspection rights, interview rights, or materials beyond that requested by and provided by the Defendant to the United States. If the Settling States do not participate in a compliance inspection or interview conducted by the United States in this Action, the Settling States will have the right to obtain and review any information provided by the Defendant to the United States pursuant to a compliance inspection or interview.

## XII. PUBLIC DISCLOSURE

A. No information or documents obtained pursuant to any provision of this Consent Judgment, including reports the Compliance Monitor provides pursuant to Paragraph X.A, may be divulged by the Settling States or the Compliance Monitor to any person other than the Office of the Attorney General of Colorado or the Office of the Attorney General of North Carolina, except

13

in the course of legal proceedings to which either Settling State is a party, including grand-jury proceedings, or as otherwise required by law.

B. In the event that the Compliance Monitor should receive a subpoena, court order, or other court process seeking production of information or documents obtained pursuant to any provision in this Consent Judgment, including reports the Compliance Monitor provides to the United States or the Settling States in this Action, the Compliance Monitor must notify Defendant immediately and prior to any disclosure, so that Defendant may address such potential disclosure and, if necessary, pursue alternative legal remedies, including intervention in the relevant proceedings.

C. In the event of a request by a third party, pursuant to the Colorado Open Records Act ("CORA"), C.R.S. §§ 24-72-201 *et seq.*, or the North Carolina Public Records Act, N.C.G.S. §§ 132-1 *et seq.*, for disclosure of information obtained pursuant to any provision of this Consent Judgment, the Settling States will act in accordance with their public records statutes.

D. If at the time that Defendant furnishes information or documents to the Settling States pursuant to any provision of this Consent Judgment, Defendant represents and identifies in writing information or documents for which a claim of protection may be asserted under CORA and/or the North Carolina Public Records Act and Defendant marks each pertinent page of such material, "Subject to claim of protection under [Applicable State Public Records Statute]," the Settling States must give Defendant reasonable notice before divulging the material in a public records request or any legal proceeding (other than a grand jury proceeding).

## XIII. RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Consent Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out

or construe this Consent Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV. ENFORCEMENT OF CONSENT JUDGMENT

A. The Settling States retain and reserve all rights to enforce the provisions of this Consent Judgment, including the right to seek an order of contempt from the Court. Defendant agrees that in a civil contempt action, a motion to show cause, or a similar action brought by either Settling State relating to an alleged violation of this Consent Judgment, the Settling States may establish a violation of this Consent Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

B. This Consent Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the Settling States allege was harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of this Consent Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Consent Judgment should not be construed against any party as the drafter.

C. In an enforcement proceeding in which the Court finds that Defendant has violated this Consent Judgment, the Settling States may apply to the Court for an extension of this Consent Judgment, together with other relief that may be appropriate. In connection with a successful effort by the Settling States to enforce this Consent Judgment against Defendant, whether litigated or resolved before litigation, Defendant agrees to reimburse the Settling States for the fees and

expenses of their attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Consent Judgment, including in the investigation of the potential violation.

D. For a period of four years following the expiration of this Consent Judgment, if the Settling States have evidence that Defendant violated this Consent Judgment before it expired, either Settling State may file an action against Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Consent Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure Defendant complies with the terms of this Consent Judgment; and (4) fees or expenses as called for by this Section.

## XV. EXPIRATION OF CONSENT JUDGMENT

Unless the Court grants an extension, this Consent Judgment will expire four years from the date of its entry, except that after two years from the date of its entry, this Consent Judgment may be terminated upon notice by the Settling States to the Court and Defendant that the continuation of this Consent Judgment is no longer necessary or in the public interest.

## XVI. RESERVATION OF RIGHTS

The Consent Judgment relates only to the resolution of the Settled Civil Claims. The Settling States reserve all rights for any other claims against Defendant that may be brought in the future. Nothing in this Consent Judgment shall be construed to create, waive or limit any private right of action or any damages claim brought by either Settling State as *parens patriae*.

## XVII. DISMISSAL WITH PREJUDICE AND RELEASES

Without limitation and to the extent specified herein, Settling States' Attorneys General, as of the date of entry of this Consent Judgment, the Released Parties, including Defendant

Cortland Management, LLC, are hereby released from any and all Settled Civil Claims. And the Settled Civil Claims are hereby dismissed with prejudice against the Defendant in the Action.

The Parties acknowledge, and the Court finds, that this section is an integral part of the Consent Judgment and shall govern the rights and obligations of all participants in the settlement. Any modification of those rights and obligations may be made based only on a writing signed by all affected Parties and approved by the Court.

## XVIII. COSTS AND FEES

The Parties will bear their own costs and attorneys' fees, except as otherwise provided in this Consent Judgment.

## XIX. NO ADMISSION OF LIABILITY

Defendant is consenting to this Consent Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing in the Settling States, all of which Defendant expressly denies. Defendant does not admit that it engaged in any antitrust violation and Defendant does not admit that it engaged in any wrongdoing that was or could have been alleged in the Amended Complaint. No part of this Consent Judgment shall constitute evidence of any liability, fault, or wrongdoing by Defendant.

Date: _____

_____
United States District Judge

**APPROVED, AGREED TO AND PRESENTED BY:**

**FOR SETTLING DEFENDANT CORTLAND MANAGEMENT, LLC**

Date: April 10, 2025

*/s/ Christopher J. Derrenbacher*
Christopher J. Derrenbacher
N.C. State Bar No. 25402
LEWIS BRISBOIS BISGAARD & SMITH LLP
3600 Glenwood Avenue, Suite 350
Raleigh, North Carolina 27612
Telephone: (919) 821-4020
Email:
Christopher.Derrenbacher@lewisbrisbois.com


*/s/ Todd R. Seelman*
Todd R. Seelman (LR 83.1(d) Counsel)
CO State Bar No. 20469
Thomas L. Dyer (LR 83.1(d) Counsel)
CO State Bar No. 53883
LEWIS BRISBOIS BISGAARD & SMITH LLP
Wells Fargo Center
1700 Lincoln Street, Suite 3500
Denver, Colorado 80203
Telephone: (720) 292-2002
Email: Todd.Seelman@lewisbrisbois.com
         Thomas.Dyer@lewisbrisbois.com


*/s/ James W. Attridge*
James W. Attridge (LR 83.1(d) Counsel)
D.C. Bar No. 1012322
Tiffany Rider (LR 83.1(d) Counsel)
D.C. Bar No. 481520
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 721-5404
Email: jattridge@axinn.com
         trider@axinn.com

*Attorneys for Defendant Cortland Management, LLC*

18

**FOR SETTLING PLAINTIFF STATE OF NORTH CAROLINA**

>JEFF JACKSON
>Attorney General of North Carolina
>
>DANIEL P. MOSTELLER
>Associate Deputy Attorney General
>
>*/s/ Kunal J. Choksi*
>KUNAL J. CHOKSI
>Special Deputy Attorney General
>N.C. State Bar No. 55666
>ASA C. EDWARDS IV
>Special Deputy Attorney General
>N.C. Bar No. 46000
>North Carolina Department of Justice
>114 W. Edenton Street
>Raleigh, NC 27603
>Telephone: 919-716-6032
>Email: kchoksi@ncdoj.gov
>
>*Attorneys for Plaintiff State of North Carolina*

**FOR SETTLING PLAINTIFF STATE OF COLORADO**

                                                        PHILIP J. WEISER
                                                        Attorney General

                                                        */s/ Elizabeth W. Hereford*
                                                       ELIZABETH W. HEREFORD
                                                       Assistant Attorney General
                                                       BRYN WILLIAMS
                                                       First Assistant Attorney General
                                                       Colorado Department of Law
                                                       Office of the Attorney General
                                                       Ralph L. Carr Judicial Center
                                                       1300 Broadway, 7th Floor
                                                       Denver, CO 80203
                                                       Telephone: (720) 508-6000
                                                       Email: Elizabeth.Hereford@coag.gov
                                                                    Bryn.Williams@coag.gov

                                                       *Attorneys for Plaintiff State of Colorado*