IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| United States of America, et al., | Case No. 1:24-cv-00710-WO-JLW |
|---|---|
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIVCOR, LLC'S MOTION TO DISMISS** |
| v. | |
| RealPage, Inc., et al., | |
| Defendants. | |

## INTRODUCTION

LivCor, LLC ("LivCor") fully joins the Customer Defendants' motion to dismiss ("Joint Motion" or "Mot."). As that Motion demonstrates, Plaintiffs fail to state a claim against all Customer Defendants, notwithstanding their extensive pre-suit investigation into RealPage, Inc. ("RealPage"). This separate memorandum highlights additional reasons why Plaintiffs fail to state claims against LivCor in particular.

Plaintiffs allege barely *any* LivCor-specific facts, and those they do allege fall far short of stating any plausible antitrust claim against LivCor. For example, the amended complaint ("FAC") lacks any allegation that LivCor:

- Agreed with any competitor to use RealPage products;
- Agreed with RealPage (or anyone) to follow RealPage's recommended prices;
- Has market power in any alleged "relevant market"; or
- Ever charged rents above competitive levels.

Instead, the FAC alleges only actions entirely consistent with LivCor's independent self-interest, such as using industry-leading software.

Plaintiffs' claims should be dismissed with prejudice in their entirety because the allegations cannot, as a matter of law, establish any asserted claim. First, even if taken as true, these allegations cannot support an inference that LivCor agreed with landlords across the country to exchange information (Count 1). Second, absent allegations that LivCor charged supracompetitive prices or had market power in any relevant market, Plaintiffs cannot establish that LivCor entered an anticompetitive agreement to implement RealPage's recommended prices (Count 2). Finally, all claims against LivCor based on Connecticut markets require dismissal, as LivCor has never operated there.

**QUESTION PRESENTED**

Whether plaintiffs have stated plausible antitrust claims against LivCor despite the paucity of LivCor-specific allegations in the FAC.

**BACKGROUND**

The FAC contains almost no allegations specific to LivCor, which is not alleged to own or manage apartment buildings. (FAC ¶ 251 (acknowledging LivCor provides only "asset management services")). The only LivCor-specific allegations in the 333-paragraph pleading are that:

- LivCor used RealPage's software (*id.* ¶ 5) and provided feedback during the software design process (*id.* ¶ 28 n.2);

- LivCor personnel attended a few RealPage user group meetings during which mostly unnamed participants allegedly discussed software updates (*id.* ¶ 106) and general real estate trends (*id.* ¶¶ 108-11);

- During one user group meeting, a LivCor representative made a generic reference to "increasing renewals and pushing new lease rents," without specifying where or by how much (*id.* ¶ 108); and

- LivCor personnel discussed COVID responses with Defendant Camden Property Trust ("Camden") on a handful of occasions in the middle of COVID (*id.* ¶¶ 91, 94) without agreeing on prices, supply, or anything else.

# ARGUMENT

**I. Plaintiffs' Claims Against LivCor Fail Because They Plead No Facts Sufficient to Support the Inference That LivCor Entered Into an Unlawful Agreement.**

Plaintiffs' claims against LivCor—which are based on the theory that LivCor entered anticompetitive agreements with every other RealPage subscriber (Count 1 and related state-law claims) or with RealPage to align prices (Count 2 and related state-law claims)—all fail. To state an antitrust claim against a particular defendant, a "complaint must 'specify how [that] defendant[ ] [was] involved in the alleged conspiracy,' without relying on 'indeterminate assertions' against all 'defendants.'" *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015). That is, it "must identify specific acts or conduct taken by each defendant to state a claim." *Boykin Anchor Co. v. AT&T Corp.*, No. 5:10-CV-591-FL, 2011 WL 1456388, at *4 (E.D.N.C. Apr. 14, 2011) (same). Because Plaintiffs plead no such acts or conduct as to LivCor, all their claims against LivCor must be dismissed.

### A. Count 1 and the related state-law claims fail because Plaintiffs plead no facts showing LivCor participated in an anticompetitive information-sharing conspiracy with thousands of other RealPage subscribers.

In Count 1, Plaintiffs allege that Customer Defendants and unnamed "other landlords that compete with each other in the relevant markets" violated Section 1 of the Sherman Act by "agree[ing] with one another, through RealPage and directly, to exchange nonpublic, competitively sensitive data, both through RealPage's revenue management software and by other means." (FAC ¶ 263.) To survive this Motion, Plaintiffs must plead sufficient facts to show: "(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002). Plaintiffs fail both as to LivCor. Because plaintiffs allege a "mere exchange of information" without alleging that LivCor charged supracompetitive prices, this "is insufficient to establish a conspiracy under section 1" and Count 1 fails. *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 294 n.30 (5th Cir. 1988); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.16 (1978) (information exchange not necessarily anticompetitive and thus insufficient for antitrust liability).

To the extent Plaintiffs allege using RealPage software is alone sufficient to establish participation in a nationwide conspiracy among thousands of subscribers, that claim fails for the reasons given in the Joint Motion. *See* Mot. Part II.A.2. As to LivCor specifically, Plaintiffs do not allege *any* facts even pointing to coordination with other defendants regarding the use of RealPage, much less suggesting LivCor agreed *with even one competitor* to use RealPage. Instead, despite a multi-year investigation and extensive pre-suit discovery, Plaintiffs' claim against LivCor rests entirely on (i) vague allegations about what plaintiffs describe as RealPage user group "meetings" (FAC ¶¶ 106-11) and (ii) a handful of discussions with one landlord that had nothing to do with RealPage (*id.* ¶¶ 91, 94). But those sparse, generic allegations are nowhere near sufficient to support Plaintiffs' ambitious claim that LivCor joined a massive conspiracy spanning at least 214 markets across 27 states and the District of Columbia—they do nothing to suggest the "meeting of the minds" among competitors that would be required to establish an agreement. *SD3*, 801 F.3d at 424.

*RealPage User Group Meetings*.  Allegations that LivCor representatives attended "meetings" with mostly unnamed RealPage users (FAC ¶¶ 106-11) in no way suggest that LivCor agreed to (or did) share competitively sensitive information.  "The decision by a group of industry players to have a meeting . . . does not constitute a conspiracy." *In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d 788, 806 (N.D. Ill. 2014), *aff'd*, 782 F.3d 867 (7th Cir. 2015); *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015) ("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement."); *SD3*, 801 F.3d at 436 (declining to "infer malfeasance because some of the defendants' representative[s] served on the relevant standard-setting panel").  And "it is well-settled that 'the mere opportunity to conspire among antitrust defendants does not, standing alone, permit the inference of conspiracy.'"  *Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652, 667 (E.D.N.C. 2003), *aff'd*, 118 F. App'x 680 (4th Cir. 2004).  Yet, that is all Plaintiffs allege.  There is no allegation LivCor shared or received sensitive

information during these "meetings," much less that it agreed to fix prices or made any changes to its pricing or strategy based on sensitive information. Plaintiffs do not even allege that the largely unnamed attendees were LivCor's competitors in any relevant market. (*See* FAC ¶ 200 (acknowledging competition in this space is "inherently local")). Nor do they allege LivCor ever charged supracompetitive rents as a result of these discussions. Absent evidence of such anticompetitive impact, "mere exchange of information" in these "meetings" cannot support a Section 1 claim. *Consol. Metal*, 846 F.2d at 294 n.30.

<u>*Direct Exchanges with Camden*</u>. Plaintiffs' allegations that LivCor personnel had discussions with a single landlord (Camden) on a handful of occasions during COVID (FAC ¶¶ 91, 94) similarly fall far short of showing LivCor entered into a nationwide conspiracy with all other RealPage subscribers. Most importantly, the alleged communications have nothing to do with RealPage—or any entity other than LivCor and Camden. There is thus no logical connection to the conspiracy Plaintiffs allege. *See Consol. Metal*, 846 F.2d at 294 n.30 (antitrust

"plaintiff must show that there was a single plan, the essential nature and general scope of which was known to" each defendant). Regardless, the "mere exchange of information," even between competitors, does not violate Section 1. *Id*. And Plaintiffs offer no evidence to support the inference that the alleged exchange with Camden had an impact on LivCor's prices.

In short, the scant allegations regarding LivCor participating in user group meetings and communicating solely with Camden fall far short of plausibly alleging that LivCor participated in the broad information-sharing conspiracy asserted in Count 1. *See, e.g., City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Secs. Corp.*, 92 F.4th 381, 399 (2d Cir. 2024) (holding "five bilateral chat excerpts" do not plausibly support alleged agreement to "fix hundreds of Treasury auctions"). Plaintiffs' inability to plead Livcor-specific facts is especially telling because the FAC was filed after a two-year investigation in which Plaintiffs had the full benefit of discovery. *Cf. Guion v. Mabus*, No. 4:11-CV-159-F, 2012 WL 1340117, at *6 (E.D.N.C. Apr. 17, 2012) (dismissing claims and noting paucity of allegations despite "extensive

discovery and hefty report of investigation available" to plaintiff). Accordingly, Count 1 (and each state-law claim based on the alleged information-exchange conspiracy) fails against LivCor.

   **B. Count 2 and the related state-law claims fail because there are no allegations that LivCor entered into an anticompetitive agreement with RealPage.**

Plaintiffs' limited LivCor-specific allegations fare no better with respect to Count 2. There, Plaintiffs allege that LivCor agreed with RealPage to "use the [RealPage] software as it has been designed," which Plaintiffs claim amounts to "an agreement to align users' pricing processes, strategies, and pricing responses." (FAC ¶¶ 271, 277.) These allegations are insufficient as a matter of law. Plaintiffs have not pled sufficient facts specific to LivCor—including facts about LivCor's approach to pricing or any rents LivCor charged—to support this claim. Further, Plaintiffs' overt pleading of a "rimless wheel" conspiracy—a theory this Circuit has expressly rejected (*Dickson*, 309 F.3d at 204)—separately dooms their Count 2 claim.

*First*, the FAC contains no direct evidence that LivCor agreed with anyone, including RealPage, to adopt RealPage's

recommendations.  *See* Mot. Part II (describing requirements for agreement).  Nor does the FAC allege circumstantial evidence supporting an inference of such an agreement.  To the contrary, Plaintiffs allege nothing about how often LivCor actually charged the rent RealPage recommended—instead, Plaintiffs allege Defendants choose whether to "override" these recommendations "[e]very morning" (FAC ¶ 62), and that the "average" acceptance rate among all RealPage customers is only "40–50%" (*id.* ¶ 73).  Moreover, the recommendations themselves are based on user-selected parameters, undermining any possible "alignment."  *See* Mot. Part II.A.2.a.  Ultimately, the FAC includes not one example of LivCor choosing to offer a supracompetitive rent in any context—much less at RealPage's recommendation.

Those omissions are fatal.  It is not an antitrust violation to use a third party's product or to consider a third party's advice, even if that third party also offers advice to a competitor.  *See, e.g.*, *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1048 (D. Minn. 1992) (dismissing claim where "no allegation that [defendants] agreed to act in accordance with the . . . alleged wishes" of the entity offering advice to

all of them); *Amory Invs. LLC v. Utrecht-Am. Holdings, Inc.*, 74 F.4th 525, 527 (7th Cir. 2023) ("A violation depends on agreement . . . [and] advice differs from agreement."). Alleging LivCor received RealPage's pricing recommendations, or that RealPage "urged" LivCor to adopt particular pricing "goals or tactics" is not enough. *Five Smiths*, 788 F. Supp. at 1048. To prevail, Plaintiffs must allege, among other things, a "meeting of the minds" to align user prices across competitors. *SD3*, 801 F.3d at 424. A meeting of the minds is impossible where plaintiffs do not allege a consensus as to whether or when to follow RealPage's recommendations. Because the FAC alleges nothing but labels and conclusions on this threshold element, Count 2 must be dismissed as to LivCor.

*Second*, Count 2 also fails because the FAC does not allege that LivCor has market power in any relevant market. As the Joint Motion explains, Count 2 asserts a rimless "hub-and-spoke" or "rimless wheel" conspiracy, "in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction." *Dickson*, 309

F.3d at 203. Without a "rim," each "spoke" must be evaluated separately, meaning the alleged agreement between RealPage and LivCor must independently satisfy the Sherman Act's requirements to state a claim. *Id*. Accordingly, even if Plaintiffs properly alleged an agreement (they have not) Plaintiffs also must establish that LivCor "had market power." *See Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus.*, 889 F.2d 524, 528 (4th Cir. 1989). That is because, absent market power, a plaintiff "is unable to show that [the defendant] has forced, or is likely to be able to force, supracompetitive prices." *Dickson*, 309 F.3d at 208.

Plaintiffs allege no facts showing LivCor has market power in any relevant market—or even that LivCor ever charged rents above a competitive level. Under binding precedent, the Court must therefore assume LivCor "possess[es] an insignificant portion of [the relevant] market and no ability to control pricing or output in [that] market." *Id*. This, too, requires dismissal of Count 2 against LivCor.

Accordingly, Count 2, and all state-law claims based on the same theory, should be dismissed against LivCor.

- 13 -
Case 1:24-cv-00710-WO-JLW   Document 136   Filed 04/10/25   Page 13 of 17

## II. Plaintiffs allege no plausible claim related to Connecticut markets.

Finally, all claims against LivCor should be dismissed as to markets within Connecticut, where LivCor has never operated. Plaintiffs' allegations must be analyzed in discrete local markets because, under Plaintiffs' theory of the case, competition among landlords is "inherently local." (FAC ¶¶ 79-101, 200-17.) Yet Plaintiffs allege nothing to explain how LivCor could have participated in anticompetitive agreements related to markets in which it never operated. *Cf. City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 568 (11th Cir. 1998) (no viable claims for conspiracy in Alabama market against defendants with "zero or near-zero market share in Alabama during the period of the alleged conspiracy"). That reflects broader problems with Plaintiffs' impermissible "group pleading" approach. *See* Mot. Part I. It is also fatal to any claims against LivCor based on Connecticut markets. Even if Plaintiffs had plausibly alleged that LivCor agreed to follow RealPage's recommendations, such an agreement could not plausibly have impacted a market where LivCor never operated. Accordingly, Count 8, along with federal claims based on Connecticut markets, should be dismissed against

LivCor. *Cf. State v. Anthem Health Plans, Inc.*, 2010 WL 2196520, at *3 (Conn. Super. Ct. Apr. 20, 2010) (Connecticut's antitrust act reaches only agreements "entered into or effectuated" in Connecticut).

## CONCLUSION

For the foregoing reasons and those in the Joint Motion, all claims against LivCor should be dismissed with prejudice because Plaintiffs already amended their complaint following a 2-year investigation, and further amendment would be futile. *See King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016).

Dated:   April 10, 2025

By: */s/ Kearns Davis*
Kearns Davis
Brooks, Pierce, McLendon,
Humphrey & Leonard
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
(336) 373-8850
kdavis@brookspierce.com
NC Bar No. 22014
*Local Civil Rule 83.1(d)*
*Counsel for Defendant LivCor*

David Kiernan
(LR 83.1(d) Counsel)
JONES DAY
555 California Street
26th Floor
San Francisco, CA 94104
(415) 875-5745
dkiernan@jonesday.com

Michelle K. Fischer
(LR 83.1 (d) Counsel)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-7096
mfischer@jonesday.com

Peter J. Schwingler
(LR 83.1(d) Counsel)
JONES DAY
90 South Seventh Street
Suite 4950
Minneapolis, MN 55402
(612) 217-8866
pschwingler@jonesday.com

*Attorneys for Defendant*
*LivCor, LLC*

**WORD-COUNT COMPLIANCE CERTIFICATE**

I, Kearns Davis, certify that Defendant LivCor, LLC's Memorandum of Law in Support of Its Motion to Dismiss complies with the word-count limits in the March 13, 2025 Text Order, granting Defendants' Consent Motion for Extension of Time and Word Limit for Defendants' Motion to Dismiss (ECF 123) and the type-size limits in Local Rule 7.1(a).

I certify that the aforementioned memorandum contains 2498 words.

Dated:   April 10, 2025

By: */s/ Kearns Davis*
Kearns Davis
Brooks, Pierce, McLendon,
Humphrey & Leonard
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
(336) 373-8850
kdavis@brookspierce.com
NC Bar No. 22014