**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

CORTLAND MANAGEMENT, LLC,

        Defendant.

Case No. 1:24-cv-00710-WLO-JLW

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on January 7, 2025;

AND WHEREAS, the United States and Defendant, Cortland Management, LLC, have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of liability or any other issue of fact or law;

AND WHEREAS, Defendant agrees to undertake certain actions and refrain from certain conduct to remedy the loss of competition alleged in the Complaint;

– 2 –

AND WHEREAS, Defendant represents that the relief required by this Final Judgment can and will be made and that Defendant will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendant under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II.   DEFINITIONS

As used in this Final Judgment:

A.    "Cortland" or "Defendant" means Defendant Cortland Management, LLC, a Delaware corporation with its headquarters in Atlanta, Georgia, its successors and assigns, and all of its subsidiaries, divisions, groups, affiliates, parents, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.    "Competitively Sensitive Information" means, in this Final Judgment, property-specific data or information (whether past, present, or prospective) which, individually or when aggregated with such data or information from other properties,

– 3 –

(1) could be reasonably used to determine current or future rental supply, demand, or pricing at a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, lease terms or lease expirations; (2) relates to the Property Owner's or Property Manager's use of settings or user-specified parameters within Revenue Management Products with respect to such property or properties; or (3) relates to the Property Owner's or Property Manager's rental pricing amount, formula, or strategy, including rental price concessions or discounts, in each case, with respect to such property or properties.

C.   "Cooperation Subject Matter" means Cortland's use of RealPage's Revenue Management Products, the violations of only Section 2 of the Sherman Act alleged in <u>United States, et al. v. RealPage, Inc., et al.</u> (currently docketed as No. 1:24-cv-00710 in the Middle District of North Carolina) and includes conduct as well as the effects of conduct.  Cooperation Subject Matter expressly excludes the prohibited conduct described in Paragraph VI.A. and any violation of Section 1 of the Sherman Act or any similar state law.

D.   "External Nonpublic Data" means all Nonpublic Data from any Person other than Defendant. It does not include data for a Cortland Property.

E.   "Cortland Property" means a residential property, located within the United States and its territories, owned or managed by Defendant or its agents (collectively referred to as "Cortland Properties").

F.   "Cortland Revenue Management Product" means Cortland's internal proprietary revenue management software product that was in place as of January 1, 2025, and that has been under development since 2020.

G.   "Nonpublic Data" means any Competitively Sensitive Information that is not Public Data.

H.   "Person" means any natural person, corporate entity, partnership, association, joint venture, limited liability company, fund, investment vehicle, or any other legal entity or trust.

I.   "Property Owner(s)" means any Person who owns a multifamily rental property or that Person's agent.

J.   "Property Manager(s)" means any Person, or the Person's agent, who manages a multifamily rental property.

K.   "Pseudocode" means any description of the steps in an algorithm or other software program in plain or natural language.

L.   "Public Data" means information on a rental unit's asking price (including publicly offered rental price concessions) that is readily accessible to the general public on the property's website, physical building, brochures, or on an internet listing service. Public Data includes information on a rental unit's asking price, concessions, amenities, and availability provided by a Property Manager or a Property Owner to any natural person who reasonably presents himself as a prospective renter. Public Data does not include any Competitively Sensitive Information obtained through communications between competitors.

M.   "RealPage" means RealPage, Inc., a Delaware corporation with its headquarters in Richardson, Texas.

N.   "Revenue Management Product(s)" means any software or service, including software as a service, that sets rental prices or generates rental pricing recommendations.

O.   "Runtime Operation" means any action taken by a Revenue Management Product while it runs, including generating rental prices or pricing recommendations for any units or set of

– 6 –

units at a property. Runtime Operation does not mean training the demand and supply models.

P. "Settled Civil Claims" means any civil claim by the United States arising from Defendant's conduct accruing before the filing of the complaint in this action relating to (1) Revenue Management Products, including RealPage revenue management products that use competitors' Competitively Sensitive Information, as well as (2) communications described by Paragraph VI.A.

Q. "Third-Party" means any Person other than Cortland (collectively referred to as "Third-Parties").

## III. APPLICABILITY

This Final Judgment applies to Defendant, as defined above, and all other Persons in active concert or participation with Defendant who receive actual notice of this Final Judgment.

## IV. USE OF PROPRIETARY REVENUE MANAGEMENT PRODUCT(S)

A. The Cortland Revenue Management Product must not set rental prices or generate rental pricing recommendations for a Cortland Property during its Runtime Operation using (1) External Nonpublic Data in any way, or (2) Nonpublic Data from a Cortland Property for another Cortland Property with a different Property Owner by pooling or combining Nonpublic Data from Cortland Properties that have different Property Owners.

- 7 -

B.   Defendant must not train the Cortland Revenue Management Product's model (1) using External Nonpublic Data in any way, or (2) by pooling or combining rental pricing, concessions, discounts, occupancy rates or capacity, or other rental pricing terms from Cortland Properties with different Property Owners. For the avoidance of doubt, Defendant is not prohibited from training its supply and demand models using pooled or combined Nonpublic Data from across all Cortland Properties that does not incorporate rental pricing, concessions, discounts, occupancy rates or capacity, or other rental pricing terms.

C.   The Cortland Revenue Management Product must not disclose in any way Nonpublic Data from a Cortland Property to any other Property Manager or Property Owner (other than the Property Owner of the Cortland Property from which the data arises or relates).

D.   Within 30 calendar days after the Court's entry of the Stipulation and Order in this matter, Defendant must cease all direct or indirect use of Third-Party Revenue Management Products used as part of setting rental prices or generating rental pricing recommendations for any Cortland Property.

E.   If, during the term of this Final Judgment, management responsibilities or ownership of a property within the United

- 8 -

States or its territories is transferred from another Property Manager or Property Owner to Defendant, Defendant will have 30 days from the date of transfer to discontinue use of any Third-Party Revenue Management Product for that property and transition the transferred property to the Cortland Revenue Management Product.

## V.     RESTRICTIONS CONCERNING USE OF THIRD-PARTY REVENUE MANAGEMENT PRODUCT(S)

A.   Notwithstanding Paragraphs IV.D and IV.E, Defendant may license or use a Third-Party Revenue Management Product for a Cortland Property before the expiration of this Final Judgment as long as Defendant does not:

1.   license or use, for any Cortland Property, any Third-Party Revenue Management Product that: (1) uses External Nonpublic Data in any way to set rental prices or generate rental pricing recommendations for a Cortland Property; (2) uses Nonpublic Data from a Cortland Property in any way to set rental prices or generate rental pricing recommendations for any other Cortland Property with a different Property Owner or for a non-Cortland Property; (3) discloses in any way Nonpublic Data from a Cortland Property to any other Property Manager or Property Owner (other than the Property Owner of the Cortland property from which the data arises or relates); (4) pools or combines

– 9 –

Nonpublic Data from Cortland Properties that have different owners; or (5) contains or uses a pricing algorithm that has been trained using External Nonpublic Data; or

   2. license or use any Third-Party Revenue Management Product that: (1) incorporates a rental price floor or a limit on rental price recommendation decreases (excluding a rental price floor, or limit on rental price decreases, that Defendant manually selects and is not based on competing properties' rental prices); or (2) requires Defendant to accept, or provides financial rewards for Defendant to accept, any recommended rental prices.

  B. Defendant may not agree, either expressly or implicitly, with any Property Owner of a Non-Cortland Property or another Property Manager to license or use a particular Revenue Management Product (or the utilities or functionalities thereof) or require any other Person to license or use a particular Revenue Management Product (or the utilities or functionalities thereof), except that Defendant is not prohibited from licensing or using a particular Revenue Management Product at a particular Cortland Property pursuant to an agreement with another Property Manager who, along with Defendant, is also managing that particular property on behalf of a Property Owner.

C.    Before licensing or using a Third-Party Revenue Management Product, Defendant must first notify the United States, in writing, of its intention to license or use a Third-Party Revenue Management Product 30 calendar days prior to using a Third-Party Revenue Management Product and must secure and submit to the United States a certification from the proposed vendor of the Third-Party Revenue Management Product that the vendor's product is in compliance with Paragraph V.A of this Final Judgment.

D.    If Cortland elects to license or use a Third-Party Revenue Management Product, Cortland must secure and submit to the United States, on an annual basis, a certification from any vendor of a Third-Party Revenue Management Product contracted by Cortland certifying each vendor's compliance with Paragraph V.A.

E.    Defendant must not license or use a Third-Party Revenue Management Product for any Cortland Property until a Compliance Monitor has been appointed by the Court in accordance with Section IX and the Compliance Monitor's work plan has been approved by the United States.

## VI.    OTHER PROHIBITED CONDUCT

A.    Defendant must not, directly or indirectly, as part of setting rental prices or generating rental pricing recommendations for any Cortland Property (1) disclose Nonpublic

- 11 -

Data to any other Property Manager or Property Owner (except to the Property Owner of the particular Cortland Property); (2) solicit External Nonpublic Data from any other Property Manager or Property Owner (except from the Property Owner of the particular Cortland Property); or (3) use External Nonpublic Data obtained from another Property Manager or Property Owner (except from the Property Owner of the particular Cortland Property). For avoidance of doubt, the restrictions set forth in this Paragraph include Nonpublic Data obtained through any form of communication, whether directly or through an intermediary, including call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint documents), industry meetings (e.g., user groups), online fora, private meetings, Revenue Management Product, or information-exchange service.

B.   Defendant must not use or access any External Nonpublic Data, or data derived from RealPage that used or relied on External Nonpublic Data, in Defendant's possession, custody, or control as of the Court's entry of the Stipulation and Order in this matter, acquired through any means. Within 30 calendar days of the Court's entry of the Stipulation and Order in this matter, Defendant must identify to the United

- 12 -

States in writing the existence and location of any such data and/or datasets. For avoidance of doubt, the proscriptions in this Paragraph do not apply to data for Cortland Properties maintained in OneSite.

## VII.  ANTITRUST COMPLIANCE

A.  Within 30 days of entry of the Stipulation and Order, Defendant must adopt a written antitrust compliance policy, to be approved by the United States in its sole discretion, that complies with the obligations set forth in this Final Judgment. Defendant must annually train all employees on this written policy. As part of that policy, Defendant must designate a chief antitrust compliance officer, who will be responsible for implementing and enforcing this policy. The chief antitrust compliance officer will conduct an annual antitrust compliance audit. The annual audits must, at a minimum, cover: (1) employees (including supervisors) in Defendant's residential-property revenue management group; and (2) a yearly, randomly selected, local, regional, or supervisory employees who manage property operations (at least 8 each year).  The chief antitrust compliance officer will provide the United States with an annual report identifying all individuals audited.

B.  On an annual basis during the term of this Final Judgment, Defendant must submit to the Antitrust Division a

certification from the General Counsel of the Defendant attesting under penalty of perjury that (1) Defendant has established and maintained the annual antitrust compliance policy and training required by Paragraph VII.A; (2) Defendant has provided the Antitrust Division with an annual report identifying the individuals audited pursuant to Paragraph VII.A; (3) Cortland's Revenue Management Product, if used by Defendant, continues to satisfy the requirements in Section IV; (4) Cortland has compiled with the requirements in Paragraph VI.A.

## VIII.  COOPERATION

A.   Defendant must cooperate fully and truthfully with the United States relating to the Cooperation Subject Matter in any civil investigation or civil litigation the United States brings or has brought. Defendant must use their best efforts to ensure that all current and former officers, directors, employees, and agents also fully and promptly cooperate with the United States. Defendant's cooperation must include:

1.   as requested on reasonable notice by the Division, making up to 10 employees available for voluntary interviews for up to 40 hours total regarding the Cooperation Subject Matter;

- 14 -

2.    providing full and truthful written or oral testimony in deposition, trial, or other proceeding relating to the Cooperation Subject Matter and making witnesses available to the United States upon reasonable notice before any such testimony;

3.    providing proffers, which may be made by counsel for Defendant, describing Defendant's knowledge of and evidence relating to the Cooperation Subject Matter;

4.    within 30 days of receiving a written request (whether formal process or informal request) from the United States for documents, information, or other material relating to the Cooperation Subject Matter, (or whatever additional time the Division grants in its sole discretion), producing to the United States all responsive documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of Defendant or its agents, as well as a log of any responsive documents, information, or other materials that were not provided, including an explanation of the basis for withholding such materials;

5.    authenticating or otherwise assisting with establishing the evidentiary foundation of any documents Defendant produced or produces to the United States; and

- 15 -

6. taking all necessary steps to preserve all documents, information, and other materials relating to the Cooperation Subject Matter until the United States provides written notice to Defendant that its obligation to do so has expired.

B. Subject to Defendant's full, truthful, and continuing cooperation, as required under Paragraphs VIII.A, Defendant is fully and finally discharged and released from Settled Civil Claims.

C. Nothing in this Section VIII affects Defendant's obligation to respond to any formal discovery requests in litigation or a civil investigative demand issued by the United States.

## IX.    APPOINTMENT OF MONITOR

A. If Defendant elects to license or use a Third-Party Revenue Management Product at any Cortland Property, or if a Court finds that Cortland has violated the terms of the Final Judgment, such as by using External Nonpublic Data in the Cortland Revenue Management Product Runtime Operation or training, upon application of the United States, which Defendant may not oppose, the Court will appoint an independent third-party antitrust compliance monitor (the "Compliance Monitor") selected by the United States and approved by the Court.

Defendant may propose to the United States a pool of three candidates to serve as the Compliance Monitor, and the United States may consider Defendant's perspectives on the proposed candidates or any other candidates identified and considered by the United States. The United States will retain the ultimate right, in its sole discretion, either to select the Compliance Monitor from among the three candidates proposed by Defendant or to select a different candidate. Once approved, the Compliance Monitor should be considered by the United States and Defendant to be an arm and representative of the Court.

B.   The Compliance Monitor will have the power and authority to monitor Defendant's compliance with Section IV and Paragraphs V.A, VII.A, and VII.B of this Final Judgment, including by determining whether employees (including supervisors) in Cortland's residential-property revenue management group have complied with their obligations set forth in those Sections. As part of its monitoring duties, the Compliance Monitor may also choose, in consultation with the United States, a yearly selection of other local, regional, or supervisory employees of Defendant who manage property operations (not to exceed 15 annually) and investigate whether those individuals have complied with the obligations set forth in Paragraphs V.B and VI.A. The Compliance Monitor will have

- 17 -

other powers as the Court deems appropriate. The Compliance Monitor will have no responsibility for operation of the Defendant's business. No attorney client relationship will be formed between Defendant and the Compliance Monitor.

C.   The Compliance Monitor will have the authority to take such steps as, in the Compliance Monitor's discretion and the United States' view, may be necessary to accomplish the Compliance Monitor's responsibilities. The Compliance Monitor may seek information from Defendant's personnel, including in-house counsel, compliance personnel, and internal auditors. Defendant will annually communicate to all employees that employees may disclose any information to the Compliance Monitor without reprisal for such disclosure. Defendant must not retaliate against any employee or third party for disclosing information to the Compliance Monitor.

D.   Defendant may not object to actions taken by the Compliance Monitor in fulfillment of the Compliance Monitor's responsibilities under any Order of the Court on any ground other than malfeasance by the Compliance Monitor. Disagreements between the Compliance Monitor and Defendant related to the scope of the Compliance Monitor's responsibilities do not constitute malfeasance. Objections by Defendant must be conveyed in writing to the United States and the Compliance Monitor

- 18 -

within 10 calendar days of the Compliance Monitor's action that gives rise to Defendant's objection, or else Defendant will have waived any such objections.

E.   The monitor will serve at the cost and expense of Defendant pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved by the United States in its sole discretion. If the Compliance Monitor and Defendant are unable to reach such a written agreement within 14 calendar days of the Court's appointment of the monitor, or if the United States, in its sole discretion, declines to approve the proposed written agreement, the United States, in its sole discretion, may take appropriate action, including making a recommendation as to the Compliance Monitor's costs and expenses to the Court, which may set the terms and conditions for the Compliance Monitor's costs and expenses.

F.   The Compliance Monitor may hire, at the cost and expense of Defendant, any agents and consultants, including investment bankers, attorneys, and accountants, that are reasonably necessary in the Compliance Monitor's judgment to assist with the Compliance Monitor's duties. These agents or consultants will be directed by and solely accountable to the Compliance Monitor and will serve on terms and conditions,

- 19 -

including confidentiality requirements and conflict-of-interest certifications, approved by the United States in its sole discretion. Within three business days of hiring any agents or consultants, the Compliance Monitor must provide written notice of the hiring and the rate of compensation to Defendant and the United States.

G.   The Compliance Monitor must provide yearly reports to the United States, with the first report due six months after the Compliance Monitor is appointed and subsequent reports due yearly thereafter, setting forth Defendant's efforts to comply with its obligations under this Final Judgment. If the Compliance Monitor learns of any potential violation of the Final Judgment by Defendant's officers, employees, or agents, the Compliance Monitor must promptly disclose to the Antitrust Division the nature and extent of any such potential violation and the Antitrust Division may require, in its sole discretion and without prejudice to any other remedy available for any violation of the Final Judgment, that the Compliance Monitor conduct additional investigation of compliance with this Final Judgment beyond any limits set forth in Paragraph IX.B.

H.   The Compliance Monitor must account for all costs and expenses incurred. The compensation of the Compliance Monitor and agents or consultants retained by the Compliance Monitor

must be on reasonable and customary terms commensurate with the individuals' experience and responsibilities.

I.    Defendant's failure to promptly pay the Compliance Monitor's accounted-for costs and expenses, including for agents and consultants, will constitute a violation of this Final Judgment and may result in sanctions imposed by the Court. If Defendant disputes any part of the Compliance Monitor's accounted-for costs and expenses, Defendant must establish an escrow account into which Defendant must pay the disputed costs and expenses until the dispute is resolved.

J.    Defendants must use best efforts to cooperate fully with the Compliance Monitor and to assist the Compliance Monitor to monitor Defendants' compliance with their obligations under this Final Judgment. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendant must provide the Compliance Monitor and agents or consultants retained by the Compliance Monitor with full and complete access to all personnel (current and former), agents, consultants, books, records, and facilities. Defendant may not take any action to interfere with or to impede accomplishment of the Compliance Monitor's responsibilities.

K.   If the United States determines that the Compliance Monitor is not acting diligently or in a reasonably cost-effective manner, or if the Compliance Monitor becomes unable to continue in their role for any reason, the United States may recommend that the Court appoint a substitute.

L.   Once appointed by the Court, the Compliance Monitor will serve until the expiration of the Final Judgment.

## X.   COMPLIANCE INSPECTION

A.   For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Stipulation and Order entered in this matter or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendant, Defendant must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

1.   to have access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendant relating to any matters contained in this Final Judgment; and

- 22 -

2.   to interview, either informally or on the record, Defendant's officers, employees, or agents, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant.

B.   Upon request of the United States, Defendant must provide documents sufficient to show how Cortland's Revenue Management Product is trained and how it determines prices for Cortland Properties during its Runtime Operation, and changes to these processes.

C.   The United States will have the right to obtain and inspect at an Antitrust Division office, or at another location at the Division's discretion, the code and pseudocode of the Cortland Revenue Management Product to ensure compliance with Section IV. Cortland will be responsible for the costs and expenses associated with said inspection once annually.

## XI.   PUBLIC DISCLOSURE

A.   No information or documents obtained pursuant to any provision or this Final Judgment, including reports the Compliance Monitor provides to the United States pursuant to Paragraph IX.G, may be divulged by the United States or the Compliance Monitor to any person other than an authorized

- 23 -

representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand-jury proceedings, or as otherwise required by law.

B.   In the event that the Compliance Monitor should receive a subpoena, court order, or other court process seeking production of information or documents obtained pursuant to any provision in this Final Judgment, including reports the Compliance Monitor provides to the United States pursuant to Paragraph IX.G, the Compliance Monitor must notify Defendant immediately and prior to any disclosure, so that Defendant may address such potential disclosure and, if necessary, pursue alternative legal remedies, including intervention in the relevant proceedings.

C.   In the event of a request by a third party, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, for disclosure of information obtained pursuant to any provision of this Final Judgment, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Defendant, when submitting information to the Antitrust Division, should designate the confidential commercial

- 24 -

information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period." <u>See</u> 28 C.F.R. § 16.7(b).

D.   If at the time that Defendant furnishes information or documents to the United States pursuant to any provision of this Final Judgment, Defendant represents and identifies in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and the Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Defendant 10 calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XII.   RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.   ENFORCEMENT OF FINAL JUDGMENT

A.   The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendant agrees that in a civil contempt action, a motion to show cause, or a similar action brought by the United States relating to an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

B.   This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleges was harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

- 26 -

C.   In an enforcement proceeding in which the Court finds that Defendant has violated this Final Judgment, the United States may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States to enforce this Final Judgment against Defendant, whether litigated or resolved before litigation, Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

D.   For a period of four years following the expiration of this Final Judgment, if the United States has evidence that Defendant violated this Final Judgment before it expired, the United States may file an action against Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section.

**XIV. EXPIRATION OF FINAL JUDGMENT**

Unless the Court grants an extension, this Final Judgment will expire 4 years from the date of its entry, except that after two years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendant that the continuation of this Final Judgment is no longer necessary or in the public interest.

**XV. RESERVATION OF RIGHTS**

The Final Judgment relates only to the resolution of the Settled Civil Claims. The United States reserves all rights for any other claims against Defendant that may be brought in the future. The entry of the Final Judgment does not limit the ability of any non-settling attorney general of any State to bring or maintain any action under federal or state law against Defendant.

**XVI. PUBLIC INTEREST DETERMINATION**

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact

Statement and, if applicable, any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

It is **SO ORDERED**.


Date: _____


_____
                United States District Judge