IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| United States of America, et al., | Case No. 1:24-cv-00710-WO-JLW |
|---|---|
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANT LIVCOR, LLC'S MOTION TO DISMISS** |
| v. | |
| RealPage, Inc., et al., | |
| Defendants. | |

**INTRODUCTION**

As LivCor's motion explained, the complaint's sparse allegations fail to plausibly allege that LivCor joined a nationwide information-sharing conspiracy (Count I) or agreed with RealPage to "align pricing" (Count II).

Rather than meaningfully grapple with LivCor's motion, Plaintiffs hide behind broad generalizations and embellish their allegations. Plaintiffs' claims rest entirely on a handful of allegations that LivCor subscribed to market-leading revenue-management software, attended subscriber user-group meetings, and had limited discussions with one co-Defendant during COVID. These meager allegations highlight the complaint's fatal omission: *anything* supporting a plausible inference that LivCor participated

in any anticompetitive agreement. The complaint thus fails to state a claim against LivCor, and LivCor's motion should be granted.

## ARGUMENT

### I. Plaintiffs Fail To Show Any Unlawful Agreement.

Plaintiffs' claims fail for the fundamental reason that the complaint alleges no facts plausibly connecting LivCor to any conspiracy, either among landlords or with RealPage.

#### A. Plaintiffs Do Not Plausibly Allege LivCor's Participation in an Information-Sharing Conspiracy (Count 1)

With respect to information exchange among landlords, LivCor's motion discussed the complaint's few LivCor-specific allegations, Mot.1-3, and explained why they do not state a claim. Plaintiffs do not suggest there are others. Instead, they assert these allegations portray LivCor as an "active participant" in the alleged information-exchange conspiracy. Opp.43.

Plaintiffs' embellishment does nothing to cure the identified defects. Take LivCor's alleged "participation in RealPage-sponsored user group meetings." Opp.42. As LivCor explained, the complaint does not identify any nonpublic, sensitive information LivCor shared or received

during these meetings — let alone the other participants. Mot.3, 7-8. In response, Plaintiffs merely reiterate their conclusory assertions, impermissibly relying on the Court to "fill in the gaps." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Plaintiffs insist *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Secs. Corp.*, 92 F.4th 381 (2d Cir. 2024), is distinguishable because the plaintiffs there "relied on 'five bilateral chat excerpts'" whereas Plaintiffs' LivCor-specific allegations "are far more regular, numerous, and enduring." Opp.43. Yet Plaintiffs cite just two complaint paragraphs to support this proposition, neither of which alleges *even a single instance* of LivCor meeting with competitors. Allegations of a few bilateral discussions with a single codefendant, *id.*, similarly do nothing to distinguish the discussions held insufficient in *Pontiac*.[1]

In an attempt to resist the rule that "mere exchange of

---

[1] Plaintiffs fault LivCor for "distinguish[ing] between" the alleged user-group meetings and bilateral discussions, each of which supposedly "demonstrate motive…to share competitively sensitive information with [competitors] through RealPage." Opp.43. But LivCor's argument is not about motive; it is simply that, whether taken alone or together, those allegations do not support a plausible inference that LivCor joined an unlawful agreement.

information" is not an anticompetitive agreement, Plaintiffs argue that information exchanges are not "per se legal" and that "supracompetitive prices" are not the only cognizable harms. Opp.44. But LivCor's argument has nothing to do with impact or antitrust injury; it goes instead to the threshold question of an *agreement*. As LivCor established (and Plaintiffs ignore), courts do not infer an *agreement* from information exchange alone. Mot.7-8 (citing, *e.g., Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 294 n.30 (5th Cir. 1988)).

As to impact, Plaintiffs offer no theory about how LivCor allegedly used information from RealPage to anticompetitive effect. Plaintiffs do not, for example, allege that LivCor charged higher rents, reduced output, or lowered quality. Opp.44. This, too, is fatal to their claims. Mot.5 (citing *Consol. Metal Prods.*, 846 F.2d at 294 n.30).

## B. Plaintiffs Have Not Pled that LivCor Agreed With RealPage to "Align Pricing"(Count 2)

As to Count 2, Plaintiffs insist LivCor "misinterprets" their "alignment" theory. Specifically, Plaintiffs insist their argument is not that LivCor agreed to "adopt RealPage's recommendations", but rather that "Defendants,

- 4 -
Case 1:24-cv-00710-WO-JLW   Document 149   Filed 06/26/25   Page 4 of 10

including LivCor, agreed 'to use the AIRM or YieldStar pricing software as RealPage designed it.'" Opp.68-69. It is unclear what this assertion means, or how such an abstract "agreement" would act to "align" anything. Nor do Plaintiffs explain how using market-leading software, without agreeing to implement its recommendations, differs from simply considering a third party's advice — despite not addressing the holding that "advice differs from agreement." *Amory Invs. LLC v. Utrecht-Am. Holdings, Inc.*, 74 F.4th 525, 527 (7th Cir. 2023). Plaintiffs thus fail to distinguish *Amory* and *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042 (D. Minn. 1992).

Plaintiffs also argue that LivCor's market power argument fails because the court must consider "aggregate impact." Opp.69-70. This assertion should be rejected for the reasons discussed in the joint reply. J.Rep.26-28.

Because Plaintiffs have failed to refute LivCor's argument that the complaint's few LivCor-specific allegations do not make it plausible that LivCor had an anticompetitive agreement with RealPage to "align pricing", Count 2 must be dismissed as to LivCor.

-5-
Case 1:24-cv-00710-WO-JLW   Document 149   Filed 06/26/25   Page 5 of 10

## II. Plaintiffs' Connecticut-Related Arguments Illustrate the Fatal Deficiencies in Their Case.

LivCor's motion also demonstrated the Connecticut claims should be dismissed for the independent reason that LivCor has never operated in Connecticut. Plaintiffs do not claim it has. Plaintiffs instead assert it is sufficient that LivCor allegedly "participated in a set of agreements that resulted in anticompetitive harms in Connecticut markets." Opp.78. That conclusory assertion defies basic economics, given Plaintiffs' argument that competition among landlords is "inherently local." Opp.81.

Plaintiffs fail to explain how LivCor's alleged sharing of confidential information related to properties it manages in local markets outside of Connecticut (say, in Alaska) could impact rental prices in Connecticut. Indeed, they allege the opposite, that markets are local, Opp.81, and thus prices outside Connecticut do not constrain prices therein.

The above alone supports dismissal. But Plaintiffs do not even allege that LivCor shared information with Connecticut landlords, nor that RealPage shared details about properties managed by LivCor with Connecticut landlords. Instead, they allege that RealPage uses data

from "millions of units" nationwide to "train[]" its models, which are then "used in markets in Connecticut." FAC ¶ 34; Opp.81. But they do not explain how "training" the models across millions of properties around the country could harm competition *locally*. Under Plaintiffs' theory, a landlord that operates only in Alaska could be part of a conspiracy in Connecticut, simply because its data is used to train the RealPage model. The Court should reject such an implausible theory.

Indeed, as one court explained in rejecting a similar argument, "using data across all your customers for research does not plausibly suggest that one customer has access to the confidential information of another customer – it instead plausibly suggests that [the software provider] uses data from various customers to improve its products." *Gibson v. Cendyn Grp., LLC*, 2024 WL 2060260, at *5 (D. Nev. May 8, 2024). Thus, "mere use of algorithmic pricing…without any allegations about any agreement…to accept the prices that the algorithm recommends does not plausibly allege an illegal agreement." *Id*. at *6.

Contrary to Plaintiffs' suggestion, this argument does *not* seek to "dismember[]" the alleged conspiracy. Instead,

it demonstrates that alleging a single, nationwide conspiracy in which LivCor and landlords nationwide planned to drive up Connecticut rental prices is utterly implausible. *Consol. Metal*, 846 F.2d at 294 n.30 (conspiracy requires "single plan" among members).

Finally, after strawmanning LivCor's argument and accusing LivCor of misstating the law, Plaintiffs concede that "the Connecticut Antitrust Act reaches only agreements 'entered into or effectuated' in Connecticut." Opp.81-83. Given Plaintiffs' failure to plausibly allege anything to satisfy that undisputed requirement, the Connecticut claims against LivCor must be dismissed.

## CONCLUSION

For these reasons, all claims against LivCor should be dismissed with prejudice.

Dated: June 26, 2025         */s/ James W. Whalen*
                             Kearns Davis
                             NC Bar No. 22014
                             James W. Whalen
                             NC Bar No. 58477
                             Brooks, Pierce, McLendon,
                             Humphrey & Leonard
                             2000 Renaissance Plaza
                             230 North Elm Street
                             Greensboro, NC 27401
                             (336) 373-8850
                             kdavis@brookspierce.com
                             jwhalen@brookspierce.com

                             David Kiernan
                             JONES DAY
                             555 California Street
                             26th Floor
                             San Francisco, CA 94104
                             (415) 875-5745
                             dkiernan@jonesday.com

                             Michelle K. Fischer
                             JONES DAY
                             901 Lakeside Avenue
                             Cleveland, OH 44114
                             (216) 586-7096
                             mfischer@jonesday.com

                             Peter J. Schwingler
                             JONES DAY
                             90 South Seventh Street
                             Suite 4950
                             Minneapolis, MN 55402
                             (612) 217-8866
                             pschwingler@jonesday.com

                             *Attorneys for Defendant*
                             *LivCor, LLC*

**WORD-COUNT COMPLIANCE CERTIFICATE**

I hereby certify that Defendant LivCor, LLC's Reply in Support of Its Motion to Dismiss complies with the word-count limits in the March 13, 2025 Text Order, granting Defendants' Consent Motion for Extension of Time and Word Limit for Defendants' Motion to Dismiss (ECF 123) and the type-size limits in Local Rule 7.1(a).

I certify that the aforementioned memorandum contains 1,249 words.

Dated: June 26, 2025

By: */s/ James W. Whalen*
James W. Whalen