| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>        Plaintiffs,<br>v.<br><br><br>REALPAGE, INC., *et al.*,<br><br>        Defendants. | Case No. 1:24-cv-00710-WO-JLW<br><br>**DEFENDANT WILLOW BRIDGE PROPERTY COMPANY, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

Defendant Willow Bridge Property Company, LLC ("Willow Bridge") submits this reply in support of its Motion to Dismiss [Dkt. 132]. For all of the reasons set forth in the Defendants' Joint Motion to Dismiss, as well as the reasons below, Plaintiffs' Amended Complaint ("FAC") should be dismissed.

As set out in Willow Bridge's Memorandum in support of its Motion to Dismiss [Dkt. 139] ("Mem."), the FAC's specific allegations do not support Plaintiffs' claims against Willow Bridge. Mem. at 3–7. Plaintiffs cannot rely on group pleading. *Id.* at 4 n.2; Memorandum in support of Customer Defendants' Motion to Dismiss ("Defs.' Mem.") at 13. Willow Bridge is

1

entitled to know how it allegedly conspired, as well as with whom, when, and for what purpose. Defs.' Mem. at 13-14, Customer Defendants' Reply ("Defs.' Reply") at 4-5 [Dkt. 148]. Plaintiffs do not allege facts that plausibly demonstrate either that *Willow Bridge* agreed to (1) share its detailed lease transaction information via RealPage with competitors (Count 1) or (2) align prices with competitors using RealPage's RMS (Count 2). Without such Willow Bridge-specific factual allegations, or any plus factors from which an agreement can be inferred, Plaintiffs' claims against Willow Bridge must be dismissed.

## **Count 1 Fails as to Willow Bridge**

No factual allegations tie *Willow Bridge* to any agreement to "share its detailed transactional data" with other Customer Defendants, as alleged in Count 1 of the FAC. Pls.' Opposition ("Opp'n") at 49. Instead, Plaintiffs rely on two generic paragraphs claiming that *all Defendants* – and indeed *all* property managers – agreed to exchange their information at an undisclosed time, presumptively when they licensed RealPage's software, even though that occurred at various undisclosed times over years. Opp'n at 49-50 (citing FAC ¶¶

2

257, 260, 263). This is not enough. Plaintiffs neither allege specific facts to support an agreement between Willow Bridge and any revenue management software ("RMS") customer, nor do they allege any plausible agreement based on inferences or plus factors. *See* Defs.' Reply at 7–15.

Rather, Plaintiffs point to a single paragraph alleging Willow Bridge knew that transactional data was pooled. Opp'n at 50 (citing FAC ¶ 19). But that paragraph cannot establish an agreement between any other RMS customer and Willow Bridge. At most, that paragraph relates to Willow Bridge's contractual agreement with RealPage. And regardless, Plaintiffs acknowledge that RMS customers do not "get to see" another customer's "individual [] data" and customers only see information that is "pooled" with their own data. Opp'n at 5.

Without more, the receipt of pooled data is not an antitrust violation, and Plaintiffs allege no additional facts that plausibly support an agreement between Willow Bridge and any other RMS customer, let alone the other Customer Defendants. Opp'n at 7–8; *see also* Defs.' Reply at 9.

Finally, Plaintiffs ask the Court to infer an agreement to share Willow Bridge's detailed transactional data via RealPage based on the allegation that it "shared confidential information through meetings with other landlords." Opp'n at 50 (citing ¶¶ 26, 88, 97, 109, 110). Upon closer inspection, however, these allegations at most show: (1) unilateral business advice to one of Willow Bridge's owners (FAC ¶ 26); (2) a request for a call with other RMS users that Plaintiffs do not allege ever happened (FAC ¶ 88); and (3) discussion in user group meetings of market trends, none of which plausibly create the inference of an agreement among the participants. *Id*. ¶¶ 97, 109-10.

Further, Plaintiffs do not allege that in any of the exchanges Willow Bridge shared its "detailed transactional data." In fact, none of these allegations tie *Willow Bridge* to any agreement, let alone an unlawful agreement to share such data or collude on rental rates via RealPage. *See* Defs.' Reply at 7-10, 13-14.

**Count 2 Fails as to Willow Bridge**

Plaintiffs claim they do not rely on Willow Bridge's license of RealPage software as the required underlying

4

agreement needed to sustain a violation of Section One of the Sherman Act. Opp'n at 70-71. Instead, they argue that the FAC alleges that "Willow Bridge agreed to use the RealPage software as intended and, therefore, it agreed to align pricing processes, strategies, and responses." Opp'n at 71 (citing FAC ¶¶ 28, 272).[1]

Plaintiffs' wishful and conclusory thinking, however, cannot survive scrutiny under *Twombly.* As set forth in the Customer Defendants' Reply, these paragraphs rely on an unwarranted and unsupported conclusion about the implications of Willow Bridge's use of RealPage's RMS and are insufficient to allege any agreement that Willow Bridge entered into with any other RMS customers. *See* Defs.' Reply at 21-25.

In an effort to avoid Count 2's fatal flaws, Plaintiffs rely on two paragraphs in the FAC, but these reflect only Willow Bridge's unilateral business advice to owners regarding how AIRM and YieldStar recommend prices and do not plausibly allege even the inference of a vertical agreement to align prices, or pricing processes, for that matter, with

---

[1] As explained in the Customer Defendants' Reply [Dkt. 148], Plaintiffs pivot to recast Count 2 as challenging vertical agreements to "align pricing processes." Defs.' Reply at 3, 25. But this pivot does not save their claim.

5

RealPage. Opp'n at 71 (citing FAC ¶¶ 33, 122). Likewise, Plaintiffs' reference to Paragraph 272 of the FAC in their Opposition cannot save Count 2, as it neither sets forth any agreement of any kind nor includes any specific allegation regarding Willow Bridge.

Because the only agreement alleged in Count 2 is Willow Bridge's license of RealPage's RMS software – a widely available and customizable commercial product that left Willow Bridge with pricing discretion – it must be dismissed. Mem. at 6.[2] The mere license of RealPage's RMS software is simply not enough. Defs.' Reply at 20–23; *see Gibson v. Cendyn Grp., LLC*, No. 2:23-cv-00140-MMD-DJA, 2024 WL 2060260, at *6 (D. Nev. May 8, 2024).

## Conclusion

Plaintiffs' Willow Bridge-specific allegations in both Counts 1 and 2 do not state valid claims against Willow Bridge. Both must be dismissed.

This 26th day of June 2025.

---

[2] Even Plaintiffs admit the Customer Defendants overrode prices suggested by RealPage's RMS more than half the time. Opp'n at 35 (citing FAC ¶ 73).

6

# I.   CERTIFICATE OF WORD COUNT

Counsel certifies that this brief is 1,027 words in compliance with Local Rule 7.3(d)(1). Counsel understands that Defendants' briefing cumulatively is under 11,000 words, as agreed with Plaintiffs and ordered by the Court.

*/s/ Eric Steven Goodheart*
Eric Steven Goodheart
North Carolina Bar No. NC-53476
DLA PIPER LLP (US)
4141 Parklake Avenue, Suite 300
Raleigh, North Carolina 27612-2350
eric.goodheart@us.dlapiper.com
Tel: (919) 786-2012
Fax: (919) 591-0412

*/s/ Gregory J. Casas*
Gregory J. Casas
(LR 83.1(d) Counsel)
DLA PIPER LLP (US)
303 Colorado Street, Suite 3000
Austin, Texas 78701
greg.casas@us.dlapiper.com
Tel: (512) 457-7290
Fax: (512) 721-2390

Carsten M. Reichel
(LR 83.1(d) Counsel)
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
carsten.reichel@us.dlapiper.com
Tel: (202)799-4640

7

Fax: (202)799-5640

Becky L. Caruso
(LR 83.1(d) Counsel)
DLA Piper LLP (US)
51 John F. Kennedy Parkway,
Suite 120
Short Hills, NJ 07078-2704
becky.caruso@us.dlapiper.com
Tel: (973) 520-2550
Fax: (973) 520-2551

**ATTORNEYS FOR WILLOW BRIDGE
PROPERTY COMPANY, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June 2025, I filed the foregoing document titled **DEFENDANT WILLOW BRIDGE PROPERTY COMPANY, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** using the Court's CM/ECF system which will send notification to all counsel of record.

*/s/ Eric Steven Goodheart*
Eric Steven Goodheart