**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No.: 1:24-CV-00710-WO-JLW**

UNITED STATES OF AMERICA; STATE OF NORTH CAROLINA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF ILLINOIS; COMMONWEALTH OF MASSACHUSETTS; STATE OF MINNESOTA; STATE OF OREGON; and STATE OF TENNESSEE,

Plaintiffs,

v.

REALPAGE, INC.; CAMDEN PROPERTY TRUST; CORTLAND MANAGEMENT, LLC; CUSHMAN & WAKEFIELD, INC.; GREYSTAR REAL ESTATE PARTNERS, LLC; LIVCOR, LLC; PINNACLE PROPERTY MANAGEMENT SERVICES, LLC; and WILLOW BRIDGE PROPERTY COMPANY, LLC

Defendants.

**PINNACLE PROPERTY MANAGEMENT SERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................... 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................ 1, 4, 8

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
92 F.4th 381 (2d Cir. 2024) ............................. 5

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ...................... 2, 7, 9

*Falk v. Brennan*,
414 U.S. 190 (1973) .................................... 3

*Gibson v. Cendyn Group LLC*,
No. 23-cv-00140, 2024 WL 2060260 (D. Nev. May 8, 2024) .................................................. 8

*Hall v. United Air Lines, Inc.*,
296 F. Supp. 2d 652 (E.D.N.C. 2003) ..................... 6

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ........................... 4

*Just Puppies, Inc. v. Brown*,
123 F.4th 652 (4th Cir. 2024) ........................... 6

*Krehl v. Baskin-Robbins Ice Cream Co.*,
664 F.2d 1348 (9th Cir. 1982) ........................... 5

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) .................................... 4

**Page(s)**

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ..........................2-3

In response to Cushman & Wakefield, Inc. ("Cushman") and Pinnacle Property Management Services, LLC's ("Pinnacle") motion to dismiss, Plaintiffs agreed to dismiss Cushman & Wakefield, Inc. Stipulation Regarding Dismissal of Cushman Without Prejudice, ECF No.144. As to Pinnacle, however, Plaintiffs have neither dismissed it nor provided a plausible basis for retaining it.

Plaintiffs' claim that any company that uses RealPage's software automatically joins an illegal conspiracy is unsupported by law or logic, as Defendants' joint brief explains. The Court cannot infer a conspiracy from alleged use of RealPage software because using RealPage is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Bell Atlantic v. Twombly*, 550 U.S. 544, 554 (2007). The Complaint acknowledges many reasons why a landlord would use RealPage's software regardless of whether other landlords use it. Am. Compl. ("Compl.") ¶¶47, 49, 54, 169-72, ECF No. 47. These independent reasons for using the software make the conspiracy claim implausible. *Twombly*, 550 U.S. at 566 ("there is no reason to infer that the companies

had agreed among themselves to do what was only natural anyway").

The Complaint is particularly deficient as to Pinnacle. Plaintiffs fail to identify "circumstances pointing toward a meeting of the minds" between Pinnacle and other RealPage users as required. *SD3 v. Black & Decker (U.S.)*, 801 F.3d 412, 430 (4th Cir. 2015). Under *Dickson v. Microsoft*, a meeting of the minds requires plausible allegations of a conspiracy among all defendants, not just individual agreements with a single supplier. 309 F.3d 193, 203-04 (4th Cir. 2002). Rather than explaining how the allegations against Pinnacle or other defendants meet *Dickson*'s requirements, Plaintiffs assert *Dickson* conflicts with Supreme Court precedent. Pls.' Resp. in Opp. to Defs.' Mots. to Dismiss ("Opp.") at 66-67, ECF No. 145. But *Dickson* is binding precedent.

The allegations that Pinnacle joined a landlord conspiracy to use RealPage is especially implausible because Pinnacle is not a landlord. Plaintiffs argue that does not matter because the Complaint defines "landlord" to include non-landlords and "extrinsic factual inquiries" would be

required to distinguish property managers like Pinnacle. Opp. at 46-47. But the Fourth Circuit has made clear that "a plaintiff… cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group." *SD3*, 801 F.3d at 422. Simply labeling Pinnacle a landlord and assuming the allegations about landlords apply to Pinnacle is conclusory and entitled to no weight. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (courts should not "credit a complaint's conclusory statements without reference to its factual context"). Moreover, in assessing plausibility, courts must draw on "experience and common sense." *Iqbal*, 556 U.S. at 679. As the Supreme Court has recognized, "it is clear" that "the business of [a property manager] is not the sale of a product (the rental of realty) but a sale of professional management services." *Falk v. Brennan*, 414 U.S. 190, 200 (1973).

Plaintiffs also argue that Pinnacle being a different type of company from other defendants does not matter because not "every conspirator need[s] to harbor the exact same motive or behave identically for liability to attach." Opp. at 47. But a plaintiff must plausibly allege specific facts

suggesting that each defendant had a "conscious commitment to a common scheme," *Monsanto v. Spray-Rite Serv.*, 465 U.S. 752, 768 (1984), and "factual context suggesting agreement" rather than independent action, *Twombly*, 550 U.S. at 549. The Complaint fails to do so. Among the deficiencies, the Complaint includes no plausible allegations that Pinnacle as a property manager sets rents or other lease terms, receives rent payments, or decides whether or how to use RealPage revenue management software.

Nor do the few allegations specifically about Pinnacle—most of which do not relate to RealPage at all—plausibly suggest Pinnacle's agreement to a RealPage usage conspiracy. Memo. in Supp. of Defs.' Cushman and Pinnacle's Mot. to Dismiss Pls.' Am. Compl. ("Pinnacle MTD"), ECF No. 138 at 16-21. Irrelevant allegations do not plausibly support a conspiracy. *See, e.g.*, *In re Musical Instruments*, 798 F.3d 1186, 1193 n.5 (9th Cir. 2015) (rejecting claim unsupported by plausible allegations of "who is alleged to have conspired with whom, what exactly they agreed to, and how the alleged conspiracy was organized and carried out"). Plaintiffs ignore these problems and, instead, assert that the Complaint

contains "details about Pinnacle's involvement in regular landlord exchanges of competitively sensitive information." Opp. at 45. But these allegations have nothing to do with RealPage or the alleged RealPage-based conspiracy. Instead, after months of pre-Complaint investigation, Plaintiffs muster only a small handful of allegations that Pinnacle communicated with landlords. That is insufficient to plausibly allege Pinnacle's participation in the alleged ongoing RealPage conspiracy. *See, e.g.*, *Pontiac Police & Fire Ret. Sys. v. BNP Paribas*, 92 F.4th 381, 398-99 (2d Cir. 2024) ("five bilateral chat excerpts" do not plausibly support alleged agreement to "fix hundreds of Treasury auctions"); *Krehl v. Baskin-Robbins*, 664 F.2d 1348, 1357-58 (9th Cir. 1982) ("a dozen isolated communications regarding prices" do not support price fixing conspiracy).

Plaintiffs next assert that Pinnacle encouraged its employees to undertake "'traditional' market surveys" at properties that it manages. Opp. at 48. But, as Pinnacle's motion to dismiss explained, traditional market surveys use public information to gather market intelligence. Pinnacle MTD at 18-19. There is nothing illegal about using public

information, and doing so is fully consistent with lawful independent action. *See, e.g.*, *Hall v. United Air Lines*, 296 F.Supp.2d 652, 670 n.23 (E.D.N.C. 2003) ("The public announcement of a pricing decision cannot be twisted into an invitation or signal to conspire."). Plaintiffs complain that Pinnacle invited the Court to consider the full document that they quoted in support of this allegation, Opp. at 47-48, but the Complaint incorporated this document, Pinnacle appropriately provided the full version, and the Court is entitled to consider it. *See, e.g.*, *Just Puppies v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024). The document the Complaint quotes is a Code of Conduct that explicitly prohibits contact with competitors, contrasts that with market surveys, and identifies public sources to use to conduct market surveys. *See* Decl. of Joseph Kay in Supp. of Cushman and Pinnacle's Mot. to Dismiss the Compl., Ex. A at 1, ECF No.138-2.

Finally, Plaintiffs double-down on their puzzling allegation that Pinnacle's alleged "recognition of the anticompetitive potential of sharing detailed landlord competitor data" somehow supports the alleged conspiracy. Opp. at 48. But by that logic every company with an antitrust

compliance policy could be sued for an industry-wide conspiracy. That is unsupported by the law and would be exceptionally bad policy. Further, this purported "recognition" is based on a Pinnacle employee saying that RealPage does ***not*** provide detailed landlord competitor data. Compl. ¶140. Pinnacle saying RealPage does ***not*** exchange competitively sensitive data cannot plausibly support Pinnacle having a "conscious commitment to a common scheme" to use RealPage to exchange competitively sensitive data.

Plaintiffs also fail to plausibly allege anticompetitive effects from Pinnacle's individual use of RealPage software. Plaintiffs entirely ignore that in *Dickson*, the Fourth Circuit held that a plaintiff must plausibly allege anticompetitive effects from each individual customer agreement and thus that a "failure to allege market share or any other facts demonstrating market power" of an individual customer requires dismissal. 309 F.3d at 208.

The Complaint nowhere alleges market shares for Pinnacle, where Pinnacle manages buildings, or which landlords instruct Pinnacle to use RealPage revenue management software. Pinnacle MTD at 22. Nor does the Complaint allege specific

facts about where Pinnacle allegedly exchanged information, what competitively sensitive information was exchanged, or with whom. Thus, the Complaint does not plausibly suggest that Pinnacle's use of RealPage had anticompetitive effects.

Plaintiffs cannot save their claim against Pinnacle with conclusory assertions that a "software tool designed for pricing unquestionably stifles competition." Opp. at 21. This assertion is not plausible—not all software related to pricing stifles competition—and, again, conclusory allegations are entitled to no weight. *See Twombly*, 550 U.S. at 548-49, 556-57. Indeed, the Complaint itself admits that RealPage's revenue management software offers many features that landlords value. Compl. ¶¶47, 49, 54, 169-72. These features provide independent reasons for landlords to use the software, regardless of what other landlords do. The Complaint also admits that the software could lead to either higher or lower prices and that users do not follow recommendations most of the time. Compl. ¶¶49, 73. Thus, the Complaint admits that RealPage does not "constrain [users'] ability to unilaterally set prices," meaning Plaintiffs have not plausibly alleged a restraint of trade. *See Gibson v.*

*Cendyn*, No. 23-cv-00140, 2024 WL 2060260, at *9 (D. Nev. May 8, 2024).

Nor can Plaintiffs save their claims against Pinnacle with general allegations that the collective "market share" of all "landlords" that use any RealPage product exceeds 30% in some geographic markets. Opp. at 24-26. Again, that contravenes *Dickson*'s requirement to look at each individual customer agreement. 309 F.3d at 208. Further, this "market share" includes non-defendant landlords that use RealPage, as well as property managers, as well as users of RealPage products unrelated to revenue management. This jumbled allegation says nothing about Pinnacle's market position and certainly does not suggest that Pinnacle has market power.

For all these reasons and those in the joint brief, the Complaint against Pinnacle should be dismissed with prejudice.

Respectfully submitted this 26th day of June 2025.

*/s/ Kenneth S. Reinker*
Kenneth S. Reinker
D.C. Bar No. 999958
Jeremy Calsyn
D.C. Bar No. 467737

Cleary Gottlieb Steen and
Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone: (202) 974-1743
Facsimile: (202) 974-1999
E-Mail: kreinker@cgsh.com
E-Mail: jcalsyn@cgsh.com

Joseph Kay
N.Y. Bar No. 5410055
Cleary Gottlieb Steen and
Hamilton LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2745
Facsimile: (212) 225-3999
E-Mail: jkay@cgsh.com

*/s/ Aaron J. Horner*
Aaron J. Horner
N.C. Bar No. 56335
Michael Montecalvo
N.C. Bar No. 24943
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-Mail:
michael.montecalvo@wbd-us.com
E-Mail: aj.horner@wbd-us.com

*Attorneys for Pinnacle Property Management Services, LLC*

## WORD COUNT CERTIFICATION

I certify that this Reply in Support of Defendant Pinnacle Property Management Services, LLC's Motion to Dismiss Plaintiffs' Amended Complaint (the "Brief") complies with the applicable word limits excluding the caption, signature lines, certificate of service, and any cover page or index in accordance with this Court's October 30, 2024 Order extending the word limitation, ECF No. 40, and Local Civil Rule 7.3(d)(1). This certification is made in accordance with Local Civil Rule 7.3(d)(1). The undersigned relied upon the word count feature provided by word-processing software and the Brief contains 1564 words.

This 26th day of June 2025.

*/s/ Aaron J. Horner*

Aaron J. Horner
N.C. Bar No. 56335
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-Mail: aj.horner@wbd-us.com

**CERTIFICATE OF SERVICE**

This is to certify that on June 26, 2025, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Aaron J. Horner*
Aaron J. Horner