# EXHIBIT A

THE UNITED STATES OF
AMERICA, *et al.*,

                    Plaintiffs,

          v.

REALPAGE, INC., *et al.*,

                    Defendants.

Case No. 1:24-cv-00710-LCB-JLW

**PLAINTIFF STATES' FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE RE DEFENDANT GREYSTAR MANAGEMENT SERVICES, LLC**

## FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE

WHEREAS, the States of North Carolina, California, Colorado, Connecticut, Illinois, Minnesota, Oregon, and Tennessee, and the Commonwealth of Massachusetts, acting by and through their respective Attorneys General (collectively, the "Settling States") filed an Amended Complaint on January 7, 2025 against Defendant, Greystar Management Services, LLC, (the "Defendant") (and collectively with the Settling States, the "Parties") in this matter (the "Action");

AND WHEREAS, each Party warrants and represents that it engaged in arms-length negotiations in good faith and that by entering into this Consent Judgment, the Parties intend to effect a good-faith resolution of the Action as to the Parties;

AND WHEREAS, the Parties have agreed to the resolution of the Action and the entry of this Consent Judgment without the taking of testimony, without trial or any finding or admission of wrongdoing or liability of any kind against or by the Defendant;

AND WHEREAS, the Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation;

AND WHEREAS, the Defendant is entering into this Consent Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, regulation, or ordinance of the Settling States, or of any fault, liability or wrongdoing on the part of the Defendant, all of which the Defendant specifically denies;

AND WHEREAS, the Settling States have each determined that this Consent Judgment is in the public interest in their respective states;

AND WHEREAS, the Parties are entering into this Consent Judgment solely for the purpose of compromising and resolving disputed claims and to avoid the expense of further litigation;

AND WHEREAS, the Parties agree that this Consent Judgment may not be used or be admissible in any other administrative, civil or criminal proceeding for any purpose except for the enforcement of this Consent Judgment;

2

AND WHEREAS, the Defendant agrees to undertake certain actions and refrain from certain conduct to remedy the alleged loss of competition alleged in the Amended Complaint;

AND WHEREAS, without any admission of liability or wrongdoing by Defendant, the Parties now mutually consent to the entry of this Consent Judgment and agree to dismissal of the claims against the Defendant with prejudice pursuant to the terms of this Consent Judgment to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

In consideration of the mutual promises, terms, and conditions set forth in this Consent Judgment, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between Defendant and the Settling States, and ordered by the Court, as follows:

The foregoing Recitals are incorporated herein and constitute express terms of this Consent Judgment.

## I. JURISDICTION

The Parties agree that the Court has jurisdiction over the subject matter of this Action and personal jurisdiction over the Defendant. The Amended Complaint asserts a claim for injunctive relief pursuant to 15 U.S.C. § 26 against Defendant under Section 1 of the Sherman Act, 15 U.S.C. § 1, and claims for injunctive relief, civil penalties, and attorney's fees and costs against

3

Defendant under: the North Carolina Unfair and Deceptive Trade Practices Act, N.S.G.S §§ 75-1, 75-2, and 75-15.2; California Unfair Competition Law, U.C.L. §§17203 and 17206; the Colorado Antitrust Act, C.R.S. §§ 6-4-104, 112 and 113; the Connecticut Antitrust Act, Conn. Gen. Stat. §§ 35-34, 35-38, and 35-44a; the Illinois Antitrust Act, 740 ILCS 10/7; the Massachusetts Consumer Protection Act, M.G.L. c. 93A § 4; the Oregon Antitrust Law, ORS 646.760(1); and the Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101, 47-25-106(b). This Consent Judgment shall not be construed or used as a waiver of any jurisdictional defense Defendant may raise in any other proceeding.

## II. DEFINITIONS

As used in this Consent Judgment:

A. "Greystar" or "Defendant" means Defendant Greystar Management Services, LLC, a Delaware limited liability company with its headquarters in Charleston, South Carolina, and all of its direct and indirect subsidiaries, divisions, groups, affiliates, parents, partnerships, and joint ventures engaged in the management or ownership of multifamily rental properties in the United States and its territories, their successors and assigns, and their directors, officers, managers, agents, and employees.

B. "Amended Complaint" means the Amended Complaint filed in this Action on January 7, 2025.

4

C.   "Competitively Sensitive Information" means property-specific data or information (whether past, present, or prospective) which, individually or when aggregated with such data or information from other properties, (1) could be reasonably used to determine current or future rental supply, demand, or pricing at a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, lease terms or lease expirations; (2) relates to the Property Owner's or Property Manager's use of settings or user-specified parameters within Revenue Management Products with respect to such property or properties; or (3) relates to the Property Owner's or Property Manager's rental pricing amount, formula, or strategy, including rental price concessions or discounts, in each case, with respect to such property or properties.

D.   "Effective Date" means the day that this Consent Judgment is entered by the Court.

E.   "External Nonpublic Data" means all Nonpublic Data from any Person other than Greystar. It does not include data from a Greystar Property.

F.   "Greystar Property" means a multifamily rental property, located within the United States and its territories, owned or managed by Greystar or its agents (collectively referred to as "Greystar Properties").

5

G. "Including" means including, but not limited to.

H. "Model Training" means the process of analyzing data, including by machine learning or regression analysis, to create or adjust the parameters of a model or algorithm to improve the accuracy of the model's or algorithm's predictions. Model Training includes the training of a model or algorithm to predict supply or demand at a particular property, which is then used during Runtime Operation.

I. "Nonpublic Data" means any Competitively Sensitive Information that is not Public Data.

J. "Person" means any natural person, corporate entity, partnership, association, joint venture, or trust.

K. "Property Owner(s)" means any Person who (directly or indirectly) owns or controls a multifamily rental property or that Person's agent; multifamily rental properties have the same Property Owner if they are (directly or indirectly) owned or controlled by the same Person.

L. "Property Manager(s)" means any Person who manages a multifamily rental property or that Person's agent.

M. "Pseudocode" means any description of the steps in an algorithm or other software program in plain or natural language.

N. "Public Data" means information on a rental unit's asking price (including publicly offered concessions), amenities, and availability that is readily accessible to the general public,

6

such as on the property's website, at a physical building, in brochures, or on an internet listing service. Public Data includes information on a rental unit's asking price, concessions, amenities, and availability provided by a Property Manager or a Property Owner to any natural person who reasonably presents himself as a prospective renter. Public Data does not include any Competitively Sensitive Information obtained through communications between competitors.

O. "RealPage" means RealPage, Inc., a Delaware corporation with its headquarters in Richardson, Texas.

P. "RealPage Meeting(s)" means RealPage steering committees, RealPage subcommittees, RealPage user groups, RealPage Idea Exchange, or any variation of these meetings. For avoidance of doubt, a RealPage Meeting does not include any communications between Greystar and the Property Owner of a Greystar Property or any other Person providing services to that Greystar Property, or any software feedback provided solely to RealPage that is not otherwise shared by Greystar with other Property Managers or Property Owners.

Q. "Revenue Management Product(s)" means any software or third-party service, including software as a service, that generates rental prices or rental pricing recommendations for multifamily rental properties. For avoidance of doubt, a Revenue

Management Product does not include general purpose spreadsheet software like Microsoft Excel.

R. "Runtime Operation" means any action taken by a Revenue Management Product while it runs, including generating rental prices or rental pricing recommendations for any unit or set of units at a property. Runtime Operation does not include Model Training.

S. "Settled Civil Claims" means any federal or state civil antitrust enforcement claims for injunctive relief and civil penalties by the Settling States alleged in this Action or arising from Defendant's conduct accruing before the Effective Date (including any associated attorney's fees and costs) relating to (1) Revenue Management Products, including RealPage Revenue Management Products that use competitors' Competitively Sensitive Information, as well as (2) communications described by Paragraph VI.A. For avoidance of doubt, "Settled Civil Claims" does not include (1) private rights of action, including for restitution, brought by citizens of Settling States or (2) damages claims brought by the Settling States as *parens patriae*, nor does it include any other claim brought by the Settling States against Third-Parties other than Greystar for similar conduct.

T. "U.S. Proposed Final Judgment" means the Proposed Final Judgment between the United States and Greystar Management Services, LLC, filed in this Action on August 8, 2025 (Doc. #152.)

8

## III. APPLICABILITY

This Consent Judgment applies to Defendant, as defined above.

## IV. MONETARY PAYMENT

A.  Defendant will pay to the Settling States a Monetary Payment in the amount of $7,000,000 (Seven Million Dollars) before the later of (i) thirty (30) days after the Effective Date or (ii) ten (10) days after receiving complete wire instructions and any related verifications from all Settling States. Such payment shall be made via electronic deposit to the State of California, which shall distribute such funds to the Settling States. Such Monetary Payment is provided for the purposes of settlement only and shall be apportioned among the Settling States at the sole discretion of the Settling States as may be agreed upon among them, and Defendant shall have no responsibility for or influence with respect to that allocation. This payment is not a penalty.

B.  The Monetary Payment may be used for any one or more of the following purposes, by the Settling States' Attorneys General as they, in their sole discretion, see fit:

1. antitrust or consumer protection law enforcement, including fees and expenses;

2. for deposit into a state antitrust or consumer protection account (e.g., revolving account, trust account), for use in accordance with the state laws governing that account;

3. for deposit into a fund exclusively dedicated to assisting state attorneys general to enforce the antitrust laws by defraying the costs of a) experts, economists, and consultants in multistate antitrust investigations and litigation, b) training or continuing education in antitrust for attorneys in state attorney general offices, or c) information management systems used in multistate antitrust investigations and litigation; or

4. for any other purpose as the attorneys general deem appropriate, consistent with, or required by, the various states' laws.

## V. USE OF REVENUE MANAGEMENT PRODUCT(S)

A. Beginning April 1, 2026 or 180 days after entry of the Stipulation and Order for the U.S. Proposed Final Judgment, whichever is earlier, Greystar must not, within the Settling States:

1. license or use any Revenue Management Product that: (i) uses External Nonpublic Data (other than Nonpublic Data of the Property Owner of the subject Greystar Property) in its Runtime Operation to generate rental prices or rental pricing

10

recommendations for a Greystar Property; (ii) uses Nonpublic Data from a Greystar Property in its Runtime Operation to generate rental prices or rental pricing recommendations for any other Property Manager or Property Owner (unless the Property Owner of the non-Greystar Property is the same as the Property Owner of the Greystar Property from which the data arises or to which it relates); (iii) discloses in any way Nonpublic Data from a Greystar Property to any other Property Manager or Property Owner (unless the Property Owner of the non-Greystar Property is the same as the Property Owner of the Greystar Property from which the data arises or to which it relates); (iv) pools or combines Nonpublic Data from Greystar Properties that have different Property Owners; or (v) contains or uses a model or algorithm for which Nonpublic Data (other than Nonpublic Data of the Property Owner of the subject Greystar Property) was used during or as a part of Model Training;

2. license or use any commercially available Revenue Management Product that: (i) incorporates a rental price floor or a limit on rental price recommendation decreases (excluding a rental price floor, or limit on rental price decreases, that Greystar or the Property Owner selects and is not based on Nonpublic Data other than Nonpublic Data of the Property Owner of the subject Greystar Property); or (ii) requires Greystar to accept, or provides any economic incentives for Greystar to accept, any recommended rental prices or range of prices; or

11

3. agree (expressly or tacitly) with any other Property Owner or Non-Greystar Property Manager to use a particular Revenue Management Product (or the utilities or functionalities thereof) or require any other Person to use a particular Revenue Management Product (or the utilities or functionalities thereof). Greystar is not prohibited by the preceding sentence from using a particular Revenue Management Product at a particular property pursuant to an agreement with another Person who is the Property Owner or who, along with Greystar, provides services to that particular property on behalf of the Property Owner, provided that the Revenue Management Product complies with Paragraphs V.A.1-2.

B. If management responsibilities or ownership of a property within the Settling States is transferred from another Property Manager or Property Owner to Greystar, then Greystar will have 90 days from the date of transfer to comply with the requirements of Paragraph V.A. for the transferred property.

C. By April 1, 2026 or 180 days after entry of the Stipulation and Order for the U.S. Proposed Final Judgment, Defendant must notify the Settling States, in writing, of any commercially available Revenue Management Product that it licenses or uses at any Greystar Property. Thereafter, if Defendant intends to license or use any other commercially available Revenue Management Product at any Greystar Property, Defendant must first notify the Settling States, in writing, of its intention to license

12

or use such a commercially available Revenue Management Product 30 calendar days prior to licensing or using the commercially available Revenue Management Product.

D. Notwithstanding Paragraph V.A, Greystar may license or use a Revenue Management Product in a Settling State that complies with the terms of an agreed Final Judgment between the United States and RealPage in <u>United States et al. v. RealPage et al.</u> (currently docketed as No. 1:24-cv-00710 in the Middle District of North Carolina) ("RealPage-U.S. Final Judgment") and an agreed Final Judgment between the Settling States and RealPage in <u>United States et al. v. RealPage et al.</u> that is filed with the court ("RealPage-Settling States-Final Judgment") by January 5, 2026 (collectively with RealPage-U.S. Final Judgment, "RealPage Final Judgment"). For the avoidance of doubt, if only a RealPage-U.S. Final Judgment (but not a RealPage-Settling States-Final Judgment) is filed with the court by January 5, 2026, then Greystar may use a Revenue Management Product that complies with a RealPage-U.S. Final Judgment and RealPage Final Judgment as used herein shall mean only a RealPage-U.S. Final Judgment.

E. Beginning April 1, 2026 or 180 days after entry of the Stipulation and Order for the U.S. Proposed Final Judgment:

   1. After entry by the Court of a RealPage Final Judgment, if any, Defendant may license or use a RealPage Revenue

13

Management Product at any Greystar Property without the need to obtain certification as required in this Paragraph V.E.

2. If Defendant licenses or uses a commercially available Revenue Management Product from a Person other than RealPage or a reseller of a RealPage Revenue Management Product at any Greystar Property, or if Defendant licenses or uses a RealPage Revenue Management Product at any Greystar Property after a RealPage Final Judgment, if any, is filed but before entry by the Court, Defendant must secure and submit to the Settling States a certification from the vendor of the Revenue Management Product that the Revenue Management Product complies with the requirements in Paragraphs V.A.1-2 or complies with the requirements for Revenue Management Products established in a RealPage Final Judgment.

3. If Defendant licenses or uses a RealPage Revenue Management Product at any Greystar Property in the absence of a RealPage Final Judgment, Defendant must provide the Settling States a certification from a Monitor appointed pursuant to Section IX that the RealPage Revenue Management product complies with the requirements in Paragraph V.A.1-2. If the Monitor has not yet been appointed, Defendant will have 90 days following appointment of the Monitor, subject to extension by the United States in its sole discretion, to obtain any certification required pursuant to this Paragraph V.E.

14

F.  In the event that the date(s) for the start of Greystar's obligations in Paragraph IV of the U.S. Proposed Final Judgment are modified, the date(s) for the start of Greystar's corresponding obligations pursuant to Paragraph V(A)-(E) herein shall, without any filing by the parties or the court, be modified and amended to reflect the new dates in the U.S. Proposed Final Judgment.

## VI.  OTHER PROHIBITED CONDUCT

A.  Greystar must not, within the Settling States, as part of setting rental prices or generating rental pricing recommendations for any Greystar Property: (i) disclose Nonpublic Data to any other Property Manager or Property Owner; (ii) solicit External Nonpublic Data from any other Property Manager or Property Owner; or (iii) use External Nonpublic Data obtained from another Property Manager or Property Owner. Nothing in this Paragraph shall apply to communications between Greystar and the Property Owner of a Greystar Property, or any other Person providing services to that Greystar Property for whom the disclosure of Nonpublic Data is necessary to provide such services. For avoidance of doubt, the restrictions set forth in this Paragraph apply to External Nonpublic Data and Nonpublic Data obtained through any form, whether directly or through an intermediary, including call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint

15

documents), industry meetings (e.g., user groups), online fora, private meetings, Revenue Management Product, or information-exchange service.

B.   Defendant will not attend or participate in any RealPage Meetings. If Greystar attends or participates in a RealPage Meeting it will report such meeting within 30 days to the Settling States. Defendant must identify the date, time, and location of the meeting, identify all participants in that meeting, provide a description of the content of the meeting, provide a description of any document shown during the meeting, produce all documents received or provided by Defendant during the meeting, and produce any chats, recordings, or documents associated with the meeting.

C.   Except for the rental prices set at any Greystar Property while that Property used a RealPage Revenue Management Product, Greystar must not, within the Settling States, use or access, as part of setting rental prices or generating pricing recommendations for any Greystar Property, any Nonpublic Data (other than Nonpublic Data of the Property Owner of the subject Greystar Property), or data derived from RealPage that used or relied on such Nonpublic Data, in Greystar's possession, custody, or control as of entry of this Consent Judgment, acquired through any means. Within 30 days of entry of this Consent Judgment, Defendant must identify to the Settling States in writing the existence and location of any structured data set containing such

16

data. For avoidance of doubt, the proscriptions in this Paragraph do not apply to data for Greystar Properties maintained in OneSite.

## VII. ANTITRUST COMPLIANCE

A. Within 30 days of entry of this Consent Judgment, Defendant must submit to the Settling States a written antitrust compliance policy that complies with the obligations set forth in the U.S. Proposed Final Judgment.

B. Within 30 days of entry of this Consent Judgment, Defendant must identify its antitrust compliance officer to the Settling States, who is responsible for implementing and enforcing Defendant's antitrust compliance policy and annual training required by Paragraph VI.A of the U.S. Proposed Final Judgment. Defendant must identify to the Settling States the antitrust compliance officer's name, business address, telephone number, and email address. Within forty-five (45) days of a vacancy in Defendant's antitrust compliance officer position, Defendant must appoint a replacement and must identify to the Settling States the replacement's name, business address, telephone number, and email address. Defendant is responsible for all costs and expenses related to the antitrust compliance officer.

C. Defendant shall submit to the Settling States a copy of all reports and certifications or other documentation required to be submitted to the Antitrust Division of the U.S. Department of Justice under Paragraph VI.C. of the U.S. Proposed Final Judgment

17

within 10 business days of providing those materials to the Antitrust Division of the U.S. Department of Justice.

  D. In the event that any of the reports, certifications or other documentation required to be submitted to the Antitrust Division of the U.S. Department of Justice under Section VI of the U.S. Proposed Final Judgment are not submitted to the Antitrust Division of the U.S. Department of Justice for any reason, the Defendant's obligations to provide those same reports, certifications or other documentation will run directly to the Settling States on the same terms and conditions as set forth in Section VI of the U.S. Proposed Final Judgment.

## VIII. COOPERATION

  A. After the Effective Date, the Settling States shall have a right to receive and participate in any cooperation Defendant provides to the United States pursuant to Section VII of the U.S. Proposed Final Judgment.

  B. Nothing in Section VIII of this Consent Judgment affects Defendant's obligation to respond to any formal discovery requests in separate litigation or in a civil investigative demand issued by any of the Settling States.

## IX. APPOINTMENT OF MONITOR

  If the United States seeks and the Court appoints a Monitor for the Defendant pursuant to Section VIII of the U.S. Proposed Final Judgment, the Monitor must contemporaneously provide to the

18

Settling States copies of any reports it submits to the United States in this Action.

## X. COMPLIANCE INSPECTION

After the Effective Date, the Defendant must contemporaneously provide the Settling States with any information, documents, or materials provided by the Defendant to the United States pursuant to Section IX of the U.S. Proposed Final Judgment, subject to applicable limitations agreed to with the United States. The Settling States will also have the right to participate in any compliance inspection or interview of Defendant's officers, employees, or agents conducted by the United States in this Action. Defendant is not obligated to provide the Settling States with compliance inspection rights, interview rights, or materials beyond that requested by and provided by the Defendant to the United States. If the Settling States do not participate in a compliance inspection or interview conducted by the United States in this Action, the Settling States will have the right to obtain any information provided by the Defendant to the United States pursuant to a compliance inspection or interview.

## XI. PUBLIC DISCLOSURE

A. No information or documents obtained pursuant to any provision of this Consent Judgment, including reports the Monitor provides pursuant to Section IX, may be divulged by the Settling States or the Monitor to any person other than an authorized

19

representative of the Office of the Attorney General of each Settling State, except in the course of legal proceedings to which either Settling State is a party, including grand-jury proceedings, or as otherwise required by state or federal law.

B.   In the event that the Monitor should receive a subpoena, court order, or other court process seeking production of information or documents obtained pursuant to any provision in this Consent Judgment, including reports the Monitor provides to the United States or the Settling States in this Action, the Monitor must notify Defendant immediately and prior to any disclosure, so that Defendant may address such potential disclosure and, if necessary, pursue alternative legal remedies, including intervention in the relevant proceedings.

C.   In the event of a request by a third party, pursuant to applicable public records laws for the Settling States, for disclosure of information obtained pursuant to any provision of this Consent Judgment, the Settling States will act in accordance with their public records statutes as interpreted by their respective state courts.

## XII. RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Consent Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Consent Judgment, to modify any of its

20

provisions, to enforce compliance, and to punish violations of its provisions.

**XIII.    ENFORCEMENT OF CONSENT JUDGMENT**

A.    The Settling States retain and reserve all rights to enforce the provisions of this Consent Judgment, including the right to seek an order of contempt from the Court. Defendant agrees that in a civil contempt action, a motion to show cause, or a similar action brought by a Settling State relating to an alleged violation of this Consent Judgment, the Settling States may establish a violation of this Consent Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

B.    This Consent Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the Settling States allege was harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of this Consent Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Consent Judgment should not be construed against any party as the drafter.

21

C. In an enforcement proceeding in which the Court finds that Defendant has violated this Consent Judgment, the Settling States may apply to the Court for an extension of this Consent Judgment, together with other relief that may be appropriate. In connection with a successful effort by the Settling States to enforce this Consent Judgment against Defendant, whether litigated or resolved before litigation, Defendant agrees to reimburse the Settling States for the fees and expenses of their attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Consent Judgment, including in the investigation of the potential violation.

D. For a period of four years following the expiration of this Consent Judgment, if the Settling States have evidence that Defendant violated this Consent Judgment before it expired, any Settling State may file an action against Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Consent Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure Defendant complies with the terms of this Consent Judgment; and (4) fees or expenses as called for by this Section.

## XIV. EXPIRATION OF CONSENT JUDGMENT

Unless the Court grants an extension, this Consent Judgment will expire 5 years from the date of entry of the U.S. Proposed

22

Final Judgment, except that after two years from the date of its entry, if the U.S. Proposed Final Judgment is terminated pursuant to its Section XIII, Greystar may petition the Settling States to consider terminating this Consent Judgment. Under that circumstance, each Settling State, in their respective sole discretion, may determine to keep, amend, or terminate the Consent Judgment as they deem appropriate. This Consent Judgment may be terminated or amended, as enforceable by a Settling State, upon notice by that Settling State to the Court and Defendant that the continuation of this Consent Judgment is no longer necessary or in the public interest.

## XV. RESERVATION OF RIGHTS

The Consent Judgment relates only to the resolution of the Settled Civil Claims. The Settling States reserve all rights for any other claims against Defendant that may be presently pending or may be brought in the future. Nothing in this Consent Judgment shall be construed to create, waive or limit any private right of action or any damages claim brought by any Settling State as *parens patriae*.

## XVI. DISMISSAL WITH PREJUDICE AND RELEASES

Without limitation and to the extent specified herein, as of the date of entry of this Consent Judgment, the Defendant is hereby released from any and all Settled Civil Claims, and the Settled

23

Civil Claims are hereby dismissed with prejudice against the Defendant.

The Parties acknowledge, and the Court finds, that this section is an integral part of the Consent Judgment and shall govern the rights and obligations of all participants in the settlement. Any modification of those rights and obligations may be made based only on a writing signed by all affected Parties and approved by the Court.

## XVII.   COSTS AND FEES

The Parties will bear their own costs and attorneys' fees, except as otherwise provided in this Consent Judgment.

## XVIII.   NO ADMISSION OF LIABILITY

Defendant is consenting to this Consent Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing in the Settling States, all of which Defendant expressly denies. Defendant does not admit that it engaged in any antitrust violation and Defendant does not admit that it engaged in any wrongdoing that was or could have been alleged in the Amended Complaint. No part of this Consent Judgment shall constitute evidence of any liability, fault, or wrongdoing by Defendant.

24

Date: _____

                                    _____
                                    United States District Judge

25

**APPROVED, AGREED TO AND PRESENTED BY:**

**FOR PLAINTIFF STATE OF NORTH CAROLINA:**

JEFF JACKSON
Attorney General of North Carolina

DANIEL P. MOSTELLER
Associate Deputy Attorney General


*/s/ Kunal J. Choksi*
KUNAL J. CHOKSI
Senior Deputy Attorney General
N.C. Bar. No. 55666
ASA C. EDWARDS IV
Special Deputy Attorney General
N.C. Bar No. 46000
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27603
Telephone: 919-716-6000
Email: kchoksi@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

26

**FOR PLAINTIFF STATE OF CALIFORNIA:**

ROB BONTA
Attorney General of California

PAULA L. BLIZZARD
Senior Assistant Attorney General

NATALIE S. MANZO
Supervising Deputy Attorney General

*/s/ Pamela Pham*
DOAN-PHUONG (PAMELA) PHAM
QUYEN TOLAND
Deputy Attorneys General
Office of the Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6000
Email: Pamela.Pham@doj.ca.gov

*Attorneys for Plaintiff State of California*

27

**FOR PLAINTIFF STATE OF COLORADO:**

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Elizabeth W. Hereford*
ELIZABETH W. HEREFORD
Assistant Attorney General
BRYN A. WILLIAMS
First Assistant Attorney General
Colorado Department of Law
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Elizabeth.Hereford@coag.gov

*Attorneys for the Plaintiff State of Colorado*

**FOR PLAINTIFF STATE OF CONNECTICUT:**

WILLIAM TONG
Attorney General of Connecticut

JEREMY PEARLMAN
Associate Attorney General

NICOLE DEMERS
Deputy Associate Attorney General

*/s/ Julián A. Quiñones Reyes*
JULIÁN A. QUIÑONES REYES
Assistant Attorney General
Office of the Connecticut Attorney General
165 Capitol Avenue
Hartford, CT 06106
Telephone: (860) 808-5030
Email: julian.quinones@ct.gov

*Attorney for Plaintiff State of Connecticut*

28

**FOR PLAINTIFF COMMONWEALTH OF MASSCHUSETTS:**

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Katherine W. Krems*
KATHERINE W. KREMS
Assistant Attorney General
JENNIFER E. GREANEY
Deputy Chief
Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place
18th Floor
Boston, Massachusetts 02108
(617) 963-2189
Katherine.Krems@mass.gov
Jennifer.Greaney@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

**FOR PLAINTIFF STATE OF MINNESOTA:**

KEITH ELLISON
Attorney General of Minnesota

JAMES CANADAY
Deputy Attorney General

*s/Katherine A. Moerke*
KATHERINE A. MOERKE
ELIZABETH ODETTE
SARAH DOKTORI
Assistant Attorneys General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
katherine.moerke@ag.state.mn.us
Telephone: (651) 757-1288
elizabeth.odette@ag.state.mn.us
Telephone: (651) 728-7208
sarah.doktori@ag.state.mn.us
Telephone: (651) 583-6694

*Attorneys for Plaintiff State of Minnesota*

**FOR PLAINTIFF STATE OF OREGON**

Dan Rayfield
Attorney General of Oregon

_/s/ Timothy D. Smith_
Timothy D. Smith
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St, Portland OR 97201
503.798.3297 | tim.smith@doj.oregon.gov

_Attorneys for Plaintiff State of Oregon_

**FOR PLAINTIFF STATE OF TENNESSEE:**

JONATHAN SKRMETTI
Attorney General of Tennessee

David McDowell
Deputy Attorney General

*/s/ Daniel Lynch*
Daniel Lynch
Assistant Attorney General
S. Ethan Bowers
Senior Assistant Attorney General
Sophie Assadnia
Assistant Attorney General
Consumer Protection Division
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
daniel.lynch@ag.tn.gov
615.532.5732
ethan.bowers@ag.tn.gov
615.837.5582
sophie.assadnia@ag.tn.gov
615.532.4208

*Attorneys for Plaintiff State of Tennessee*

31

**FOR PLAINTIFF STATE OF ILLINOIS**

KWAME RAOUL
Attorney General of Illinois

*/s/  Daniel R. Betancourt*
DANIEL BETANCOURT, Assistant Attorney General
JENNIFER M. CORONEL, Assistant Attorney General
PAUL J. HARPER, Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St., Floor 23
Chicago, IL 60603
Tel: (312) 415-7945
Daniel.betancourt@ilag.gov
Paul.harper@ilag.gov
Jennifer.coronel@ilag.gov

*Attorneys for Plaintiff State of Illinois*

32

**FOR DEFENDANT**
**GREYSTAR MANAGEMENT SERVICES, LLC:**

 /s/ James P. McLoughlin
James P. McLoughlin
N.C. Bar No. 13795
Moore & Van Allen PLLC
100 North Tryon Street
Charlotte, NC 28202
Phone: (704) 331-1000
Fax: (704) 331-1159
mcloughlinj@mvalaw.com

Karen Hoffman Lent
(LR 83.1(d) Counsel)
Boris Bershteyn
(LR 83.1(d) Counsel)
Evan Kreiner
(LR 83.1(d) Counsel)
Sam Auld
(LR 83.1(d) Counsel)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 1001-8608
Telephone: (212) 735-3000
Fax: (212) 735-2000
Email:
karen.lent@skadden.com
boris.bershteyn@skadden.com
evan.kreiner@skadden.com
sam.auld@skadden.com