# EXHIBIT A

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>LivCor, LLC,<br><br>　　　　　Defendant. | **No. 1:24-cv-00710-WLO-JLW**<br><br>**PLAINTIFF STATES' FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE RE DEFENDANT LIVCOR, LLC** |

## FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE

WHEREAS, the States of North Carolina, California, Colorado, Connecticut, Illinois, Minnesota, Oregon, and Tennessee, and the Commonwealth of Massachusetts, acting by and through their respective Attorneys General (collectively, the "Settling States") filed an Amended Complaint on January 7, 2025, against Defendant, LivCor, LLC, as defined below (collectively, with the Settling States, the "Parties") in this matter (the "Action");

AND WHEREAS, each Party warrants and represents that it engaged in arms-length negotiations in good faith and that by entering into this Consent Judgment, the Parties intend to effect a good-faith resolution of the Action as to the Parties;

AND WHEREAS, the Settling States and Defendant have

1

consented to entry of this Consent Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, without any finding or admission of wrongdoing or liability of any kind against or by Defendant, and without this Consent Judgment constituting any evidence against or admission by any Party relating to any issue of fact or law;

AND WHEREAS, the Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation;

AND WHEREAS, Defendant is entering into this Consent Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, regulation, or ordinance of the Settling States, or of any fault, liability, or wrongdoing on the part of Defendant, all of which Defendant specifically denies;

AND WHEREAS, the Settling States have each determined that this Consent Judgment is in the public interest in their respective states;

AND WHEREAS, the Parties are entering into this Consent Judgment solely for the purpose of compromising and resolving disputed claims and to avoid the expense of further litigation;

AND WHEREAS, the Parties agree that this Consent Judgment may not be used or be admissible in any other administrative,

2

civil or criminal proceeding for any purpose except for the enforcement of this Consent Judgment;

AND WHEREAS, Defendant agrees to undertake certain actions and refrain from certain conduct to remedy the alleged loss of competition alleged in the Amended Complaint;

AND WHEREAS, Defendant represents that the relief required by this Consent Judgment can and will be made and that Defendant will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Consent Judgment;

AND WHEREAS, without any admission of liability or wrongdoing by Defendant, the Parties now mutually consent to the entry of this Consent Judgment and agree to dismissal of the claims against Defendant with prejudice pursuant to the terms of this Consent Judgment to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

In consideration of the mutual promises, terms, and conditions set forth in this Consent Judgment, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between Defendant and the Settling States, and ordered by the Court, as follows:

The foregoing Recitals are incorporated herein and constitute express terms of this Consent Judgment.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of, and each of the Parties to, this Action. The Amended Complaint asserts a claim for injunctive relief and costs of suit pursuant to 15 U.S.C. § 26 against Defendant under Section 1 of the Sherman Act, 15 U.S.C. § 1, and claims for injunctive relief, civil penalties, monetary relief, and attorney's fees and costs against Defendant pursuant to: the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S §§ 75-14, 75-15.2, and 75-16.1; California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17203 and 17206; the Colorado Antitrust Act, C.R.S. §§ 6-4-104, 112 and 113; the Connecticut Antitrust Act, Conn. Gen. Stat. §§ 35-34, 35-38, and 35-44a; the Illinois Antitrust Act, 740 ILCS 10/7; the Massachusetts Consumer Protection Act, M.G.L. c. 93A § 4; the Oregon Antitrust Law, ORS 646.760, 646.770, and 646.775; and the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-106. This Consent Judgment shall not be construed or used as a waiver of any jurisdictional defense Defendant may raise in any other proceeding.

## II. DEFINITIONS

As used in this Consent Judgment:

A. "Defendant" means Defendant LivCor, LLC, a Delaware corporation with its headquarters in Chicago, Illinois, its successors and assigns, and all of its subsidiaries,

4

divisions, groups, affiliates, parents, partnerships, and joint ventures engaged in the management or ownership of multifamily rental properties in the United States and its territories, and their directors, officers, managers, agents, and employees.

B. "Effective Date" means the date that this Consent Judgment is entered on the docket in the Action as an Order of the Court.

C. "Competitively Sensitive Information" means, in this Consent Judgment, property-specific data or information (whether past, present, or prospective) which, individually or when aggregated with such data or information from other properties, (1) could be reasonably used to determine current or future rental supply, demand, or pricing at a property or of any property's units, including but not limited to executed rents, rental price concessions or discounts, guest traffic, guest applications, occupancy or vacancy, lease terms, or lease expirations; (2) relates to the Property Owner's or Property Manager's use of settings or user-specified parameters within Revenue Management Products with respect to such property or properties; or (3) relates to the Property Owner's or Property Manager's rental pricing amount, formula, or strategy, including rental price concessions or discounts with respect to such property or properties.

D.    "Cooperation Subject Matter" means the claims alleged in United States et al. v. RealPage et al. (currently docketed as No. 1:24-cv-00710 in the Middle District of North Carolina).

E.    "External Nonpublic Data" means all Nonpublic Data from any Third-Party. It does not include data for a Defendant Property.

F.    "Defendant Property" means a multifamily rental property, located within the United States or its territories, for which Defendant provides revenue management or related reporting or consulting services (collectively referred to as "Defendant Properties"). Defendant Property does not include student housing, affordable housing, age-restricted or senior housing, or military housing.

G.    "Defendant Revenue Management Product" means Defendant's proprietary Revenue Management Product.

H.    "Nonpublic Data" means any Competitively Sensitive Information that is not Public Data.

I.    "Person" means any natural person, corporate entity, partnership, association, joint venture, limited liability company, fund, investment vehicle, or any other legal entity or trust.

J.    "Property Manager(s)" means any Person, or the Person's agent, who manages a multifamily rental property.

K.    "Property Owner(s)" means any Person who

6

(directly or indirectly) owns or controls a multifamily rental property or that Person's agent; multifamily rental properties have the same Property Owner if they are (directly or indirectly) owned or controlled by the same Person.

L.   "Pseudocode" means any description of the steps in an algorithm or other software program in plain or natural language.

M.   "Public Data" means information on a rental property or unit's asking rental price (including publicly offered rental price concessions), amenities, availability, and other information that is readily accessible to the general public, including but not limited to, on the property's website, physical building, brochures, or on an internet listing service. Public Data includes information on a rental property or unit's asking price, concessions, amenities, and availability provided by a Property Manager or a Property Owner to any natural person who reasonably presents himself as a prospective renter. Public Data does not include any Competitively Sensitive Information obtained through communications between competitors, unless such information is also readily accessible to the general public.

N.   "RealPage" means RealPage, Inc., a Delaware

7

corporation with its headquarters in Richardson, Texas.

O. "Revenue Management Product(s)" means any software or service, including software as a service, that generates rental prices or rental pricing recommendations for multifamily housing rentals. For avoidance of doubt, a Revenue Management Product does not include general purpose spreadsheet software like Microsoft Excel.

P. "Runtime Operation" means any action taken by a Revenue Management Product while it runs, including generating rental prices or pricing recommendations for any units or set of units at a property. Runtime Operation does not mean training demand and supply models.

Q. "Settled Civil Claims" means any federal or state civil antitrust enforcement claims for injunctive relief and civil penalties by the Settling States alleged in this Action or arising from Defendant's conduct accruing before the Effective Date (including any associated attorney's fees and costs) relating to (1) Revenue Management Products, including RealPage Revenue Management Products that use competitors' Competitively Sensitive Information, as well as (2) communications described by Paragraph VII.A. For avoidance of doubt, "Settled Civil Claims" does not include: (i) private rights of action, including for restitution, brought by

8

citizens of the Settling States; (ii) damages claims brought by the Settling States as *parens patriae* and/or under statutory authority; or (iii) any other claim brought by the Settling States against Third-Parties for similar conduct to that alleged against Defendant (the "Other Claims").

R.    "Third-Party" means any Person other than Defendant or a Defendant affiliate.

S.    "U.S. PFJ" means the Proposed Final Judgment between the United States and Defendant, filed in this Action on December 23, 2025, (Doc. #164) and attached hereto as Exhibit A.

**III.  APPLICABILITY**

This Consent Judgment applies to Defendant, as defined above.

**IV.  MONETARY PAYMENT**

A.    Defendant will pay to the Settling States a Monetary Payment in the amount of $7,000,000 (Seven Million Dollars) before the later of: (i) thirty (30) days after the Effective Date or (ii) ten (10) days after receiving complete wire instructions and any related verifications from all Settling States. Such payment shall be made via electronic deposit to the State of California, which shall distribute such funds to the Settling States. Such Monetary Payment is provided for the purposes of settlement only and shall be apportioned among the

9

Settling States at the sole discretion of the Settling States as may be agreed upon among them, and Defendant shall have no responsibility or influence with respect to that allocation. This payment is not a penalty.

B. The Monetary Payment may be used for any one or more of the following purposes, by the Settling States' Attorneys General as they, in their sole discretion, see fit:

1. antitrust or consumer protection law enforcement, including fees and expenses;

2. for deposit into a state antitrust or consumer protection account (e.g., revolving account, trust account), for use in accordance with the state laws governing that account;

3. for deposit into a fund exclusively dedicated to assisting state attorneys general to enforce the antitrust laws by defraying the costs of (a) experts, economists, and consultants in multistate antitrust investigations and litigation, (b) training or continuing education in antitrust for attorneys in state attorney general offices, or (c) information management systems used in multistate antitrust investigations and litigation; or

4. for any other purpose as the attorneys general deem appropriate, consistent with, or required by, the various states' laws.

10

## V. USE OF PROPRIETARY REVENUE MANAGEMENT PRODUCT(S)

A.    Defendant Revenue Management Product must not, during its Runtime Operation, generate rental prices or rental pricing recommendations for a Defendant Property located within the Settling States using (1) External Nonpublic Data in any way, or (2) Nonpublic Data from one Defendant Property for another Defendant Property with a different Property Owner by pooling or combining Nonpublic Data from Defendant Properties that have different Property Owners.

B.    Defendant must not train, for use in the Settling States, any Defendant Revenue Management Product model (1) using External Nonpublic Data in any way, or (2) by pooling or combining rental pricing, concessions, discounts, occupancy rates or capacity, or other rental pricing terms from Defendant Properties with different Property Owners. For the avoidance of doubt, Defendant is not prohibited from training Defendant's supply and demand models using pooled or combined Nonpublic Data from across all Defendant Properties that does not incorporate rental pricing, concessions, discounts, occupancy rates or capacity, or other rental pricing terms.

C.    Defendant Revenue Management Product must not, within the Settling States, disclose in any way Nonpublic Data from a Defendant Property to any Third-Party Property Manager

11

or Third-Party Property Owner (other than a Third-Party Property Owner of Defendant Property from which the data arises or to which it relates, or to a Third-Party Property Manager that provides services to Defendant Properties).

D. Except as provided in Paragraph VI.A, pursuant to Section IV of the U.S. PFJ, within 30 days of the Effective Date, Defendant must cease all direct or indirect use of Third-Party Revenue Management Products used as part of setting rental prices or generating rental pricing recommendations for any Defendant Property.

E. Except as provided in Paragraph VI.A, pursuant to Section IV of the U.S. PFJ, if, during the term of this Consent Judgment, revenue management responsibilities or ownership of a property located within the Settling States is transferred from a Third-Party Property Manager or a Third-Party Property Owner to Defendant, Defendant will have 90 days from the date of transfer to discontinue use of any Third-Party Revenue Management Product for that property and transition the transferred property to Defendant Revenue Management Product.

## VI. RESTRICTIONS CONCERNING USE OF THIRD-PARTY REVENUE MANAGEMENT PRODUCT(S)

A. Notwithstanding Paragraphs V.D and V.E, pursuant to Section V of the U.S. PFJ, Defendant may license or use a

12

Third-Party Revenue Management Product for a Defendant Property before the expiration of this Consent Judgment as long as Defendant does not, within the Settling States:

1. license or use, for any Defendant Property, any Third-Party Revenue Management Product that: (1) uses External Nonpublic Data in any way to generate rental prices or rental pricing recommendations for a Defendant Property; (2) uses Nonpublic Data from a Defendant Property (other than Nonpublic Data of the Property Owner of the subject Defendant Property) in any way to generate rental prices or rental pricing recommendations for any Defendant Property with different Property Owners or for a non-Defendant Property; (3) discloses in any way Nonpublic Data from a Defendant Property to any Third-Party Property Manager or Third-Party Property Owner (other than a Third-Party Property Owner of Defendant Property from which the data arises or to which it relates, or to a Third-Party Property Manager that provides services to Defendant Properties); (4) pools or combines Nonpublic Data from Defendant Properties that have different Property Owners; or (5) contains or uses a pricing algorithm that has been trained using Nonpublic Data (other than Nonpublic Data of the Property Owner of the subject Defendant Property); or

2. license or use any Third-Party Revenue Management Product that: (1) incorporates a rental price floor

13

or a limit on rental price recommendation decreases (excluding a rental price floor, or limit on rental price decreases, that Defendant manually selects and is not based on Nonpublic Data other than Nonpublic Data of the Property Owner of the subject Defendant Property); or (2) requires Defendant to accept, or provides financial rewards for Defendant to accept, any recommended rental prices.

B.    Defendant may not, within the Settling States, agree, whether expressly or implicitly, with any Third-Party Property Owner or Third-Party Property Manager to license or use a particular Third-Party Revenue Management Product (or the utilities or functionalities thereof) or require any other Third-Party to license or use a particular Third-Party Revenue Management Product (or the utilities or functionalities thereof), except that Defendant is not prohibited from licensing or using a particular Revenue Management Product at a particular Defendant Property pursuant to an agreement with a Third-Party Property Owner of such Defendant Property or a Third-Party Property Manager who provides services to such Defendant Property, provided that the Revenue Management Product complies with Paragraph VI.A.

C.    Before licensing or using a Third-Party Revenue Management Product, Defendant must first notify the Settling States, in writing, of its intention to license or use a

14

Third-Party Revenue Management Product 30 calendar days prior to using a Third-Party Revenue Management Product.

D.   Notwithstanding Paragraphs V.A-C and VI.A, pursuant to Section V.D of the U.S. PFJ, Defendant may license or use a Revenue Management Product in a Settling State that complies with the terms of a Final Judgment between the United States and RealPage and entered in United States et al. v. RealPage et al. (currently docketed as No. 1:24-cv-00710 in the Middle District of North Carolina) ("RealPage Final Judgment").

E.   If Defendant elects to license or use a Third-Party Revenue Management Product:

1.   After entry by the Court of a RealPage Final Judgment, Defendant may license or use a RealPage Revenue Management Product at any Defendant Property without the need to obtain certification as required in this Paragraph VI.E.

2.   If Defendant licenses or uses a Third-Party Revenue Management Product from a Person other than RealPage or a reseller of a RealPage Revenue Management Product at any Defendant Property, or if Defendant licenses or uses a RealPage Revenue Management Product at any Defendant Property after a proposed RealPage Final Judgment is filed but before entry by the Court, Defendant must secure and submit to the Settling States a certification from the vendor of the Revenue Management Product that the Revenue Management

15

Product complies with the requirements in Paragraph VI.A or complies with the requirements for Revenue Management Products established in a proposed RealPage Final Judgment.

    3. If Defendant licenses or uses a RealPage Revenue Management Product at any Defendant Property in the absence of a proposed RealPage Final Judgment, Defendant must provide to the Settling States a certification from a Monitor appointed pursuant to Section IX of the U.S. PFJ that the RealPage Revenue Management Product complies with the requirements in Paragraph VI.A. If the Monitor has not yet been appointed, Defendant will have 90 days following appointment of the Monitor, subject to extension by the Settling States, to obtain any certification required pursuant to this Paragraph VI.E.

## VII. OTHER PROHIBITED CONDUCT

A. Defendant must not, within the Settling States, directly or indirectly, as part of setting rental prices or generating rental pricing recommendations for any Defendant Property (1) disclose Nonpublic Data to any Third-Party Property Manager or Third-Party Property Owner (except to a Third-Party Property Owner of the particular Defendant Property from which the data arises or to which it relates, or a Third-Party Property Manager that provides services to Defendant Properties); (2) solicit External Nonpublic Data from any

16

Third-Party Property Manager or Third-Party Property Owner (except from a Third-Party Property Owner of the particular Defendant Property from which the data arises or to which it relates, or from a Third-Party Property Manager that provides services to Defendant Properties); or (3) use External Nonpublic Data obtained from any Third-Party Property Manager or Third-Party Property Owner (except from a Third-Party Property Owner of the particular Defendant Property from which the data arises or to which it relates, or from a Third-Party Property Manager that provides services to Defendant Properties). For the avoidance of doubt, the restrictions set forth in this Paragraph include Nonpublic Data obtained through any means, whether directly or through an intermediary, including call arounds or market surveys, in-person meetings, calls, text messages, chat communications, emails, surveys, spreadsheets, shared documents (e.g., Google documents and SharePoint documents), industry meetings (e.g., user groups), online fora, private meetings, Revenue Management Products, or information-exchange services.

B. Notwithstanding Paragraph VII.A, a Defendant employee may (1) disclose or solicit Nonpublic Data about a particular property for the purpose of evaluating or effectuating a bona fide sale or purchase of the property, as long as any Nonpublic Data received is not used to set rental prices or generate

17

rental pricing recommendations, or (2) disclose Nonpublic Data about a particular Defendant Property between a departing Property Manager and replacement Property Manager as part of a bona fide transfer of management responsibilities for that property.

C.   Defendant must not, within the Settling States, use or access, as part of setting rental prices or generating rental pricing recommendations for any Defendant Property, any External Nonpublic Data, including such data derived from any RealPage Revenue Management Product, in Defendant's possession, custody, or control as of the Effective Date, acquired through any means. Within 30 days of the Effective Date, Defendant must identify to the Settling States in writing the existence and location of any structured data set containing such External Nonpublic Data. For the avoidance of doubt, the proscriptions in this Paragraph do not apply to data for Defendant Properties maintained in OneSite or other property management software.

## VIII. ANTITRUST COMPLIANCE

A.   Within 30 days of the Effective Date, Defendant must submit to the Settling States a written antitrust compliance policy that complies with the obligations set forth in Section VII of the U.S. PFJ.

B.   Within 30 days of the Effective Date, Defendant must identify to the Settling States its antitrust compliance officer,

who is responsible for implementing and enforcing Defendant's antitrust compliance policy and facilitating annual training required by Paragraph VII.A. of the U.S. PFJ. Defendant must identify to the Settling States the antitrust compliance officer's name, business address, telephone number, and email address. Within forty-five (45) days of a vacancy in Defendant's antitrust compliance officer position, Defendant must appoint a replacement and must identify to the Settling States the replacement's name, business address, telephone number, and email address. Defendant is responsible for all costs and expenses related to the antitrust compliance officer.

C.    Defendant shall submit to the Settling States a copy of all reports and certifications or other documentation required to be submitted to the Antitrust Division of the U.S. Department of Justice under Section VII of the U.S. PFJ within 10 business days of providing those materials to the Antitrust Division of the U.S. Department of Justice.

D.    In the event that any of the reports, certifications or other documentation required to be submitted to the Antitrust Division of the U.S. Department of Justice under Section VII of the U.S. PFJ are not submitted to the Antitrust Division of the U.S. Department of Justice for any reason, then Defendant's obligations to provide those same reports, certifications or other

19

documentation will run directly to the Settling States on the same terms and conditions as set forth in Section VII of the U.S. PFJ.

## IX.  COOPERATION

A.  As of the Effective Date, Defendant must cooperate fully and truthfully with each of the Settling States in any civil investigation or civil litigation a Settling State has brought relating to the Cooperation Subject Matter. Unless otherwise agreed to by Defendant and a Settling State, whenever possible, Defendant's cooperation obligation under this Paragraph IX.A shall be (i) coordinated so as to avoid unnecessary duplication and expense and (ii) satisfied contemporaneously with Defendant's cooperation obligation under Section VIII of the U.S. PFJ. Defendant must use its best efforts to ensure that all current and former officers, directors, employees, and agents also fully and promptly cooperate with each Settling State in any civil investigation or civil litigation the Settling States have brought relating to the Cooperation Subject Matter. Defendant's cooperation must include:

1.  making up to 10 employees available upon reasonable notice at the request of a Settling State for voluntary interviews relating to the Cooperation Subject Matter for up to 40 hours total, collectively for all Settling States and/or the United States pursuant to Paragraph VIII.A.1 of the

20

U.S. PFJ and considering reasonable requests for interviews of additional employees;

2.     providing full and truthful written or oral testimony in deposition, trial, or other proceeding relating to the Cooperation Subject Matter and making witnesses available to the Settling State(s) upon reasonable notice before any such testimony;

3.     providing proffers, which may be made by counsel for Defendant, describing Defendant's knowledge of, and evidence relating to, the Cooperation Subject Matter;

4.     within 30 days of receiving a written request (whether formal or informal) from a Settling State for documents, information, or other material relating to the Cooperation Subject Matter (or whatever additional time the Settling State grants in its sole discretion), produce to the Settling States all responsive documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of Defendant, as well as a log of any responsive documents, information, or other materials that were not provided, including an explanation of the basis for withholding such materials, and authenticating or otherwise assisting with establishing the evidentiary foundation of any documents Defendant produced or produces to the Settling

21

States; and

5. taking all steps necessary to preserve all documents, information, and other materials relating to the Cooperation Subject Matter until the Settling States provide written notice to Defendant that its obligation to do so has expired.

D. Nothing in Section IX of this Consent Judgment affects Defendant's obligation to respond to any formal discovery requests in litigation or in a civil investigative demand issued by any of the Settling States.

## X. APPOINTMENT OF MONITOR

If the United States seeks and the Court appoints a Monitor for Defendant pursuant to Section IX of the U.S. PFJ, the Monitor must contemporaneously provide to the Settling States copies of any reports it submits to the United States in this Action. In the event, however, that (i) the United States elects in writing not to seek appointment of a Monitor for the Defendant pursuant to Section IX of the U.S. PFJ or otherwise; (ii) a Monitor appointed pursuant to the U.S. PFJ is discontinued for any reason; (iii) the United States elects for any reason to forego or waive enforcement of the monitoring terms set forth in Section IX of the U.S. PFJ; or (iv) the U.S. PFJ is not finally approved by the Court by December 23, 2026, then the Settling States, collectively or individually or in

22

any combination, will be entitled to seek appointment of a Monitor pursuant to all of the terms and conditions set forth in Section IX of the U.S. PFJ, which are incorporated herein as if set forth in full. Further, Defendant hereby covenants that it will not oppose the enforcement by any Settling State of Section IX of the U.S. PFJ through appointment of a Monitor on those same terms and conditions as set forth in Section IX of the U.S. PFJ.

## XI.  COMPLIANCE INSPECTION

A.  As of the Effective Date, Defendant must contemporaneously provide the Settling States with any information, documents, or materials provided by Defendant to the United States pursuant to Section X of the U.S. PFJ, subject to applicable limitations agreed to with the United States. The Settling States will also have the right to participate in any compliance inspection or interview of Defendant's officers, employees, or agents conducted by the United States in this Action. Defendant is not obligated to provide the Settling States with compliance inspection rights, interview rights, or materials beyond that requested by and provided by Defendant to the United States. If the Settling States do not participate in a compliance inspection or interview conducted by the United States in this Action, the Settling States will have the right to obtain any information

23

provided by Defendant to the United States pursuant to a compliance inspection or interview.

B.   In the event that the U.S. PFJ is not finally approved by the Court by December 23, 2026, the Settling States shall, collectively, have all the same rights as the Antitrust Division of the U.S. Department of Justice that are described in Section X of the U.S. PFJ.

## XII. PUBLIC DISCLOSURE

A.   No information or documents obtained pursuant to any provision of this Consent Judgment, including reports the Monitor provides pursuant to Section X, may be divulged by the Settling States or the Monitor to any person other than an authorized representative of the Office of the Attorney General of each Settling State, except in the course of legal proceedings to which a Settling State is a party, including grand-jury proceedings, or as otherwise required by any state or federal law.

B.   In the event that the Monitor should receive a subpoena, court order, or other court process seeking production of information or documents obtained pursuant to any provision in this Consent Judgment, including reports the Monitor provides to the Antitrust Division of the U.S. Department of Justice or the Settling States in this Action, the Monitor must notify Defendant immediately and prior to any

24

disclosure, so that Defendant may address such potential disclosure and, if necessary, pursue alternative legal remedies, including intervention in the relevant proceedings.

C.    In the event of a request by any Person under the applicable public records laws of the Settling States for disclosure of information obtained pursuant to any provision of this Consent Judgment or the U.S. PFJ, the Settling States will act in accordance with their public records statutes as interpreted by their respective state courts.

## XIII. RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any Party to this Consent Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Consent Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.  ENFORCEMENT OF CONSENT JUDGMENT

A.    The Settling States retain and reserve all rights to enforce the provisions of this Consent Judgment, including the right to seek an order of contempt from the Court. Defendant agrees that in a civil contempt action, a motion to show cause, or a similar action brought by a Settling State relating to an alleged violation of this Consent Judgment, the Settling States may establish a violation of this Consent Judgment and the

25

appropriateness of a remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

B.    This Consent Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the Settling States allege was harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of this Consent Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Consent Judgment should not be construed against any Party as the drafter.

C.    In an enforcement proceeding in which the Court finds that Defendant has violated this Consent Judgment, the Settling States may apply to the Court for an extension of this Consent Judgment, together with other relief that may be appropriate. In connection with a successful effort by the Settling States to enforce this Consent Judgment against Defendant, whether litigated or resolved before litigation, Defendant agrees to reimburse the Settling States for the fees and expenses of their attorneys, as well as all other costs including experts'

26

fees, incurred in connection with that effort to enforce this Consent Judgment, including in the investigation of the potential violation.

D.   For a period of four years following the expiration of this Consent Judgment, if any of the Settling States have evidence that Defendant violated this Consent Judgment before it expired, any Settling State may file an action against Defendant in this Court requesting that the Court order: (i) Defendant to comply with the terms of this Consent Judgment for an additional term of at least four years following the filing of the enforcement action; (ii) all appropriate contempt remedies; (iii) additional relief needed to ensure Defendant complies with the terms of this Consent Judgment; and (iv) fees or expenses as called for by this Section.

## XV.   EXPIRATION OF CONSENT JUDGMENT

Unless the Court grants an extension, this Consent Judgment will expire four years from the date of its entry, except that after two years from the date of its entry, if the U.S. PFJ is terminated pursuant to its Section XIV, Defendant may petition the Settling States to consider terminating this Consent Judgment. Under that circumstance, each Settling State, in their respective sole discretion, may determine to keep, amend, or terminate the Consent Judgment as they deem appropriate. This Consent Judgment may be terminated or amended

27

as to a Settling State upon notice given by that Settling State to the Court, Defendant, and all other Settling States that, the terminating or amending Settling State has found, in its sole discretion, that the continuation of this Consent Judgment is no longer necessary or in the public interest.

## XVI. RESERVATION OF RIGHTS

This Consent Judgment relates only to the resolution of the Settled Civil Claims. The Settling States reserve all rights for any other claims against Defendant that may be presently pending or may be brought in the future. Nothing in this Consent Judgment shall be construed to create, waive or limit any private right of action or any damages claim brought by any Settling State as *parens patriae* and/or under statutory authority.

## XVII. DISMISSAL WITH PREJUDICE AND RELEASES

Without limitation and to the extent specified herein, as of the date of entry of this Consent Judgment, Defendant is hereby released from any and all Settled Civil Claims, and the Settled Civil Claims are hereby dismissed with prejudice against Defendant.  Any Other Claims alleged in this Action are dismissed without prejudice against Defendant.  The Settling States covenant not to commence, in any capacity, any action, suit, or other proceeding against Defendant arising from Defendant's conduct alleged in this Action or accruing before

28

the Effective Date relating to (1) Revenue Management Products, including RealPage Revenue Management Products that use competitors' Competitively Sensitive Information, as well as (2) communications described by Paragraph VII.A. The Parties acknowledge, and the Court finds, that this Section XVII is an integral part of the Consent Judgment and shall govern the rights and obligations of all participants in the settlement. Any modification of those rights and obligations may be made based only on a writing signed by all affected Parties and approved by the Court.

## XVIII. COSTS AND FEES

The Parties will bear their own costs and attorneys' fees, except as otherwise provided in this Consent Judgment.

## XIX. NO ADMISSION OF LIABILITY

Defendant is consenting to this Consent Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing in the Settling States, all of which Defendant expressly denies. Defendant does not admit that it engaged in any antitrust violation and Defendant does not admit that it engaged in any wrongdoing that was or could have been alleged in the Amended Complaint. No part of this Consent Judgment shall constitute

29

evidence of any liability, fault, or wrongdoing by Defendant.

Date: _____

_____
United States District Judge