**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No.: 1:24-cv-00710**

**UNITED STATES OF AMERICA; STATE OF NORTH CAROLINA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF ILLINOIS; COMMONWEALTH OF MASSACHUSETTS; STATE OF MINNESOTA; STATE OF OREGON; STATE OF TENNESSEE; and STATE OF WASHINGTON,**

**Plaintiffs,**

**v.**

**REALPAGE, INC.; CAMDEN PROPERTY TRUST; CORTLAND MANAGEMENT, LLC; CUSHMAN & WAKEFIELD, INC.; GREYSTAR REAL ESTATE PARTNERS, LLC; LIVCOR, LLC; PINNACLE PROPERTY MANAGEMENT SERVICES, LLC; WILLOW BRIDGE PROPERTY COMPANY, LLC,**

**Defendants.**

# DEFENDANT REALPAGE, INC.'S RESPONSE TO THE COURT'S AUGUST 25, 2026 ORDER[1]

[1] Unless specified otherwise, all citations omit internal quotation marks, internal citations, and original alterations and emphases, and all alterations and emphases are added.

The Court's August 25, 2026 Order directed the parties to advise the Court whether, beyond the motions identified on page 3 of such Order, they contend there are other "specific motion[s] *or claim[s]* at issue" that a party believes are moot and, if so, to identify "the specific document said to render it moot, and the basis for that contention." Dkt. 209. Defendant RealPage, Inc. ("RealPage") respectfully makes this submission to describe why the Court's May 14, 2026 entry of final judgment resolving the United States' claims against RealPage, *see* Dkt. 194 (the "Final Judgment"), renders moot the States' (i) identical federal Sherman-Act claims against RealPage, and (ii) claims for injunctive relief against RealPage based on state law, which claims are likewise all based on the same allegations as the Sherman Act claims resolved by the Final Judgment. Thus, while all of the States' claims should be dismissed for the reasons in RealPage's Motion to Dismiss, *see* Dkts. 73-74, 122, which is "ripe for adjudication," Dkt. 209, the States' Sherman Act claims and state-law requests for injunctive relief should also be dismissed for mootness.

**ARGUMENT**

"The U.S. Constitution limits the power of federal courts to adjudicating Cases and Controversies." *In re Capitol Broad. Co., Inc.*, 19 F.4th 385, 390 (4th Cir. 2021). "One aspect of this limitation requires that the Court assure itself that a live dispute exists between the parties." *Id.* A claim is moot where there is no "reasonable expectation that the [alleged] wrong will be repeated." *Incumaa v. Ozmint*, 507 F.3d 281, 288 (4th Cir. 2007). No such expectation exists here, where the Final Judgment bars the conduct alleged in the Amended Complaint. Indeed, it is a matter of public record that the States were consulted closely by the United States in connection with the Final Judgment. *See* Dkt.

162. And, unlike in other matters where they genuinely believe the United States' proposed relief is incomplete, here the States raised no concerns about the adequacy of the Final Judgment despite ample opportunity to do so, including in the statutory notice and comment period that preceded its entry by the Court. Any effort to do so belatedly now in response to this submission would be contrived and unfounded.

***I. The Final Judgment moots the States' Sherman Act claims against RealPage.*** The United States and the States asserted their Sherman Act claims collectively, relying on the same alleged conduct and seeking the same prohibitions on it. *See* Am. Compl. ¶¶ 259–89, 332. They sought a declaration that the conduct underlying those claims is unlawful and an injunction prohibiting it. *Id.* ¶ 332. To present a live dispute, declaratory relief requires a dispute "of sufficient immediacy and reality." *Lancaster v. Sec'y of Navy*, 109 F.4th 283, 289–90 (4th Cir. 2024). Injunctive relief requires a reasonable expectation that an alleged wrong will occur. *Incumaa*, 507 F.3d at 288.

Neither requirement is satisfied here because the Final Judgment enjoins the challenged conduct for years, further imposing a Monitor requirement on RealPage. As the United States explained in its Competitive Impact Statement, the proposed Final Judgment was "designed to remedy" the Section 1 claims "by significantly limiting RealPage from sharing competitively sensitive, nonpublic information . . . with competing landlords, and from offering software features that would align pricing between competing landlords," and the Section 2 claims "by enabling competing revenue management software that does not illegally use confidential, competitively sensitive data to more effectively compete against RealPage's software." Dkt. 160 at 10. The Final Judgment

accomplishes these outcomes. Section IV addresses the core of Plaintiffs' Sherman Act claims by, among other things, barring RealPage from using Unaffiliated Property Data in the runtime operation of its RMS products, Final Judgment § IV.A.1, and prohibiting RealPage from sharing or making accessible in its RMS products any such data to licensees regardless of form, aggregation, anonymization, or age. *Id.* § IV.B. In turn, Section V addresses the specific software features that Plaintiffs allege facilitated pricing alignment. For example, it requires that Auto Accept parameters be individually set by each user, *id.* § V.A.1, and it requires users to set parameters that permit recommendations to go below a Pricing Floor to the same extent such pricing recommendations can exceed a Pricing Ceiling. *Id.* § V.B. Section VI prohibits Pricing Advisors from sharing Unaffiliated Property Data and limits what RealPage may discuss at RMS Meetings with customers. *Id.* § VI.A–B. Finally, Section VII authorizes a monitor to ensure RealPage's compliance with the Final Judgment. *Id.* § VII. Given these limitations, there is no "reasonable expectation" that RealPage will engage in the alleged conduct targeted in the States' Amended Complaint. *Incumaa*, 507 F.3d at 288.

The States' inability to overcome this subject-matter jurisdiction bar is not surprising. The public record shows that they actively participated in the Final Judgment's negotiations, with RealPage "providing information to . . . the co-Plaintiff State AGs . . . and . . . respon[ding] to . . . [their] questions," while the United States worked to "address [their] concerns as part of any eventual settlement." Dkt. 162 at 1–2. Given this process and the strict terms of the Final Judgment, not a single State has ever hinted that the Final judgment comes up short in any respect, either during the 60-day public comment period

under the Antitrust Procedures and Penalties Act (the "Tunney Act") or otherwise. *See* Dkt. 169. Their silence in this regard speaks volumes. The States know how to voice concerns under the Tunney Act, and they do not hesitate to do so when they believe a settlement falls short. For example, just last year, seven of the nine States submitted a comment in a different antitrust case urging the district court to "reject" a proposed settlement as "against the public interest" because, in their view, it "fail[ed] to address the harms alleged by the DOJ." *United States v. Hewlett Packard Enter. Co.*, No. 5:25-cv-00951 (N.D. Cal.), Dkt. 236-2. And just weeks ago, seven of the nine States told yet another court they had "significant concerns" that a proposed settlement "is not in the public interest" because "the proposed terms appear to be insufficient." *United States v. Live Nation Entm't, Inc.*, No. 1:24-cv-03973 (S.D.N.Y.), Dkt. 1558.

The only other relief the States request on their Sherman Act claims is costs, including reasonable attorneys' fees, but an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990).

***II. The Final Judgment also moots the States' requests for injunctive relief under their state-law claims.*** The States' injunction claims under their state-law analogues to the Sherman Act fare no better. Each State based its state-law claim on the same alleged conduct as the Sherman Act claims. *See* Am. Compl. ¶¶ 290–325. The injunctive relief available to the States is thus limited to the alleged conduct underlying those claims. *See Lancaster*, 109 F.4th at 289. The Final Judgment already eliminates any "reasonable expectation" that the alleged wrong will continue or recur. *Incumaa*, 507 F.3d at 288. As

noted, despite a well-established process for doing so, not a single State raised concern or suggested the Final Judgment's remedies were inadequate. Dkt. 169. The States' requests for injunctive relief under their state law analogues to the Sherman Act are thus moot.

The States' requests for other forms of relief, such as civil penalties and other monetary remedies, do not save their requests for an injunction because "mootness hinges on the type of relief sought." *Lancaster*, 109 F.4th at 289. The States therefore cannot use their requests for other forms of relief to shield their moot requests for injunctive relief. *See, e.g.*, *Ohio Valley Envtl. Coal., Inc. v. Hobet Mining*, LLC, 2008 WL 5377799, at *6–10 (S.D. W. Va. Dec. 18, 2008) (dismissing requests for declaratory and injunctive relief as moot notwithstanding pending claims for civil penalties).

Nor can the States salvage their moot requests for injunctive relief by speculating that the Final Judgment is not a broad enough injunction. "Mootness analysis is predicated on the contents of [the plaintiff's] complaint," *Lancaster*, 109 F.4th at 289, not on "imagined possibilities beyond those requested in the complaint." *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 62 F. Supp 3d. 1, 5 (D.D.C. 2014). Courts thus reject attempts to expand the requested relief beyond the complaint's allegations once mootness is raised. *See WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1190–91 (10th Cir. 2012). The States' requests for injunctive relief under state law are thus bound by the conduct alleged in the Amended Complaint, which the Final Judgment already enjoins based on their previous substantial input provided to the United States.

In sum, the States' Sherman Act claims and state-law requests for injunctive relief against RealPage are moot and should be dismissed under Rule 12(b)(1).

This 1st day of September, 2026.

/s/ Adam K. Doerr

Adam K. Doerr
N.C. Bar No. 37807
adoerr@robinsonbradshaw.com
Caroline H. Reinwald
N.C. Bar No. 58053
creinwald@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Suite 2300
Charlotte, NC 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000

Stephen Weissman
(*LR 83.1(d) Counsel*)
sweissman@gibsondunn.com
Michael J. Perry
(*LR 83.1(d) Counsel*)
mjperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036-4504
Telephone: (202) 955-8500

Ben A. Sherwood
(*LR 83.1(d) Counsel*)
bsherwood@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-2671

Daniel G. Swanson
(*LR 83.1(d) Counsel*)
dswanson@gibsondunn.com
Jay P. Srinivasan
(*LR 83.1(d) Counsel*)

jsrinivasan@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000

Chris Whittaker
(*LR 83.1(d) Counsel*)
cwhittaker@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: (949) 451-4337

*Attorneys for Defendant RealPage, Inc.*